LAWRENCE BASS (CA NO. 60527)
FAEGRE & BENSON LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO  80203-4532
Telephone:  303-607-3500
Facsimile:  303-607-3600
Email:  lbass@faegre.com

EDWARD T. WAHL (MN NO. 15409X)
STEPHEN M. MERTZ (MN NO.  212131)
THERESA H. DYKOSCHAK (MN NO. 0349999)
(*PRO HAC VICE APPLICATIONS TO BE FILED*)
FAEGRE & BENSON LLP
90 South Seventh Street, Suite 2200
Minneapolis, Minnesota  55402-3901
Telephone:  612.766.7000
Facsimile:  612.766.1600
Email:  ewahl@faegre.com
Email:  smertz@faegre.com
Email:  tdykoschak@faegre.com

Attorneys for Wells Fargo Bank, National Association, in its
capacity as Trustee for the holders of Medical Provider
Financial Corporation III Series I and Series II Notes and
Medical Provider Funding Corporation V Series I Notes

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| 1 | Case No. **SACV09-818 DOC (RNBX)** |
| 2 | SECURITIES AND EXCHANGE COMMISSION, |
| 3 | Plaintiff, **MEMORANDUM OF WELLS FARGO BANK, NATIONAL** |
| 4 | v. **ASSOCIATION IN LIMITED OPPOSITION TO TEMPORARY** |
| 5 | MEDICAL CAPITAL HOLDINGS, INC.; MEDICAL CAPITAL CORPORATION; **RESTRAINING ORDER, PRELIMINARY INJUNCTION** |
| 6 | MEDICAL PROVIDER FUNDING CORPORATION VI; SIDNEY M. FIELD; AND **AND APPOINTMENT OF A PERMANENT RECEIVER** |

SECURITIES AND EXCHANGE
COMMISSION,

                          Plaintiff,

     v.

MEDICAL CAPITAL HOLDINGS, INC.;
MEDICAL CAPITAL CORPORATION;
MEDICAL PROVIDER FUNDING
CORPORATION VI; SIDNEY M. FIELD; AND
JOSEPH J. LAMPARIELLO,

                     Defendants..

Case No. **SACV09-818 DOC (RNBX)**

**MEMORANDUM OF WELLS FARGO BANK, NATIONAL ASSOCIATION IN LIMITED OPPOSITION TO TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION AND APPOINTMENT OF A PERMANENT RECEIVER**

## INTRODUCTION

       Wells Fargo Bank, National Association ("Wells Fargo or the "Trustee") files this Limited Opposition pursuant to the Court's August 3 Temporary Restraining Order.[1]

       The Trustee supports the appointment of the Receiver as the receiver for Medical Capital Corporation, Inc. ("MCC") and Medical Tracking Services, Inc. ("MTS") and also supports a preliminary injunction on the assets of MCC and MTS.  The Trustee takes no position on the appointment of the Receiver over MCC's or MTS's parent corporation or affiliates, other than MPF III and MPF V.

       Wells Fargo objects to the appointment of a Receiver over Medical Provider Financial Corporation III ("MPF III") and Medical Provider Funding Corporation V ("MPF V") or a freeze of their assets.  The scope and authority of the Receiver should be narrowly defined to avoid duplication of the protection of these assets and to avoid interference with the duties and authority of the Trustee.  Allowing the Receiver to take any other course risks inefficiency, inconsistency and interference in the interests of innocent holders of notes issued by MPF III and MPF V.

---

[1] Wells Fargo submits this Memorandum pursuant to the Court's August 3, 2009 order, which authorizes submissions in support of or in opposition to the entry of a preliminary injunction and appointment of a permanent receiver.  (Order at 13.)

Indeed, unless the Court clarifies its order, thousands of noteholders will be wrongfully denied access to legitimate distributions to which they are entitled.

<u>FACTS</u>

1.    <u>The Parties.</u>

    a.    **Medical Capital Holdings.**

    Medical Capital Holdings, Inc. ("MCHI") is the parent of Medical Capital Corporation ("MCC"), Medical Tracking Services, Inc. ("MTS"), and six special purpose vehicles ("SPVs"). These SPVs include: Medical Provider Financial Corporation I, Medical Provider Financial Corporation II, Medical Provider Financial Corporation III ("MPF III"), Medical Provider Financial Corporation IV, Medical Provider Funding Corporation V ("MPF V"), and Medical Provider Funding Corporation VI ("MPF VI"). (Compl. ¶ 6-15.) Sidney M. Field is the CEO and director of MCHI and its subsidiaries, and Joseph J. Lampariello is the president and COO and a director of MCHI and its subsidiaries. (Compl. ¶ 9, 10.)

    MCC and the affiliated SPVs provide financing to physicians, hospitals, and other medical providers by purchasing their medical receivables, and they have also purchased or financed other assets, including health care related entities and real estate. (Defs.' Opp. at 3.) MCC and the SPVs raise funds to purchase the receivables and other assets through the sale of notes in the SPVs. (*Id.*) MCC alleges that it and the affiliated SPVs have raised more than $2 billion from investors since 1994 and have invested these funds in receivable and non-receivable assets. (*Id.*) The administration and servicing of the SPVs' assets is performed by MCC and MTS, and not by the SPVs themselves. (Affidavit of Edward T. Wahl, dated August 10, 2009 ("Wahl Aff."), Ex. D ASA at 1, Ex. F, Servicing Agmt. § 2.01.)

    b.    **The SEC.**

    On June 16, 2009, The Securities and Exchange Commission ("SEC") sued defendants in this case, alleging violations of securities laws and seeking the appointment of a receiver.

  c.  **The Receiver.**

   On August 3, 2009, the Court entered a Temporary Restraining Order ("TRO") and order appointing Thomas A. Seaman as the temporary receiver ("Receiver") for MCHI, MCC, MPF VI, and their related affiliates and subsidiaries.  (Order at 5.)

  d.  **Wells Fargo Bank.**

   Wells Fargo Bank, National Association ("Wells Fargo" or "Trustee") acts as Trustee for the holders of notes issued by MPF III and MPF V under the Note Issuance and Security Agreement dated June 27, 2005[2], the First Supplemental Note Issuance and Security Agreement dated April 10, 2007, and the Note Issuance and Security Agreement dated October 8, 2007, respectively (collectively, the "NISA").  (Wahl Aff., Exh. A, B, and C, respectively.)

  e.  **The Noteholders.**

   The noteholders ("Noteholders") are over 5,400 individual investors who purchased notes issued by MPF III and MPF V.  (Affidavit of Elizabeth Walker, dated August 10, 2009 ("Walker Aff.") ¶ 2.)  The Noteholders hold significant interests in the collateral and rely on monthly distributions from the Trust Accounts in the ordinary course of business.

2.  **The Transaction Documents.**

  a.  **Note Issuance and Security Agreements.**

   To raise money to purchase receivables and other assets, MPF III and MPF V sold notes to investors.  (Defs' Opp. at 3.)  MPF III issued two series of notes (Series I and Series II) and MPF V issued one series of notes, Series I.  The MPF III Series I notes were issued under the Note Issuance and Security Agreement between MPF III and Wells Fargo, as Trustee, dated June 27, 2005 ("MPF III Series I NISA"). (Wahl Aff., Ex. A)  The MPF III Series II notes were issued under the First Supplemental Note Issuance and Security Agreement between MPF III and Wells Fargo, as Trustee, dated April 10, 2007 ("MPF III Series II NISA"). (Wahl Aff., Ex. B.)  The MPF V Series I notes were issued under the Note Issuance and Security Agreement between MPF

---

[2] All provisions of the NISAs referenced in this Limited Opposition are substantially identical. For convenience, all references to sections of the agreements are to the June 27, 2005 NISA.

1   V and Wells Fargo, as Trustee, dated October 8, 2007 ("MPF V Series I NISA", and together

2   with the MPF III Series I NISA and MPF III Series II NISA, the "NISAs"). (Wahl Aff., Ex. C.)

3          **b.      Administrative Services Agreement.**

4          On June 27, 2005, MPF III and MCC entered into an Administrative Services Agreement

5   ("ASA"), under which MCC agreed to administer the receivables and proceeds of the receivables

6   relating to the MPF III Series I and Series II notes and provide "administrative, management and

7   underwriting services, [and] make[] available its offices, personnel, facilities, equipment and

8   services" to MPF III.  (Wahl Aff., Ex. D, ASA at 1.)  MPF V also entered into an ASA, dated

9   October 8, 2007, with MCC, under which MCC agreed to provide the same services, offices,

10  personnel, facilities and equipment to MCF V.  (Wahl Aff., Ex. E.)

11         **c.      Servicing Agreement.**

12         Also on June 27, 2005, MPF III entered into a Master Service Agreement ("Servicing

13  Agreement") with MTS, under which MTS agreed to provide services relating to the servicing

14  and tracking of receivables for MPF III.  MPF V also entered into a Servicing Agreement with

15  MTS, dated October 8, 2007, for the performance of the same services for MPF V receivables.

16  (Wahl Aff., Ex. F and G.)

17         Under the ASAs and Servicing Agreements, MCC and MTS provide all servicing related

18  to the monitoring, servicing, collection and enforcement of the receivable and non-receivable

19  assets owned by the SPVs.

20         **d.      Forbearance Agreement.**

21         After various defaults under the MPF III Series I and Series II notes, which are described

22  in greater detailed below, MPF III, MCC, MTS, and Wells Fargo entered into a Forbearance

23  Agreement, dated April 9, 2009 ("Forbearance Agreement"), under which Wells Fargo agreed not

24  to exercise any rights or remedies under the MPF III Series I NISA or MPF III Series II NISA

25  before June 30, 2009, or the earlier occurrence of certain events, including additional defaults.

26  (Wahl Aff., Ex. H.)  The Forbearance Agreement applies only to the MPF III Series I and Series

27  II Notes.  In part, it provides that receivables and non-receivable assets securing one series of

28  MPF III notes may be used to pay obligations owed under the other series of MPF III notes once

1   the obligations on the series to which the receivables and assets were originally pledged have

2   been satisfied in full.  (*Id.* § 5(b).)  Significantly, MCC and MTS also agreed to subordinate any

3   amounts owed to them, including Administrative Fees, until the MPF III Series I and Series II

4   notes were paid in full.  (*Id.* § 6(b).)

5   **3.      The Notes.**

6           The notes issued by MPF III and MPF V bear different maturity dates, maturity terms, and

7   interest payment dates based upon the date of issuance, and the notes may have different interest

8   rates or different terms for the frequency of interest payments.  (*See, e.g.,* Wahl Aff., Ex. A, NISA

9   § 2.01(d), (e).)  These differences exist even among notes in the same series. (*Id.*)  As a result, the

10  interest and principal payments due on each series of notes varies from month to month as notes

11  mature, and interest is paid on a monthly, quarterly, or annual basis.  MCC maintains the records

12  relating to the maturity date, interest rate, and timing for interest payments for the MPF III and

13  MPF V notes.  (*See, e.g.,* Wahl Aff., Ex. D, ASA § 1.08.)

14          All of the MPF III Series I notes have matured; some, but not all, of the MPF III Series II

15  notes have matured; and the MPF V Series I notes are scheduled to begin maturing in October

16  2009, at the earliest.  MPF III and MPF V are no longer issuing notes under these series.  The

17  following is a summary of the current principal amount outstanding for the three series of notes:

18

| Series | Principal Outstanding as of August 7, 2009 |
|---|---|
| MPF III Series I | $26,513,000.00 |
| MPF III Series II | $82,928,000.00 |
| MPF V Series I | $401,126,000.00 |

23  (Walker Aff. ¶ 3.)

24          Under the terms of the NISAs, each series of notes issued by MPF III and MPF V is

25  secured by its own set of assets, which include specific receivables and all collections relating to

26  the receivables, among other things. (Wahl Aff., Ex. A,  NISA § 3.01(a).)  MPF III and MPF V

27  also agreed to secure the obligations with non-receivable assets and their related proceeds.  (Wahl

28  Aff., Ex. A, NISA § 3.01(b).)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**4.    Collections on collateral and proceeds of collateral.**

Under the ASAs and Servicing Agreements, MCC and MTS collect amounts related to the receivables and non-receivables assets, which amounts are then required to be transferred to the Trustee for deposit into the Trust Account.  (Wahl Aff., Ex. D., ASA at 1, § 1.15; Ex. F., Servicing Agmt. §§ 2.01, 2.03.)  To the extent that MCC, on behalf of MPF III or MPF V, sold collateral, these amounts were also required to be transferred to the Trustee for deposit into the Trust Account.  (Wahl Aff., Ex. A, NISA §§ 3.04 (b), (c).)

The Trustee maintains a separate Trust Account for each series of notes for the benefit of the Noteholders of that series of notes.  Amounts relating to collateral or proceeds of collateral for a series of notes are deposited into the appropriate Trust Account.  The Trust Account balances as of August 6, 2009 were as follows:

| Series | Trust Account Balance (including Expense Reserve) |
|---|---|
| MPF III Series I | $836,485.95 |
| MPF III Series II | $655,501.09 |
| MPF V Series I | $369,974.54 |

(Walker Aff. ¶ 4.)

**5.    The Trust Account.**

Once funds are deposited into the Trust Accounts, they are under the exclusive control of the Trustee.  (Wahl Aff., Ex. A, NISA § 5.08(a)(ii).)  Neither MCC, MTS, MPF III, nor MPF V have authority to make distributions from the amounts in the Trust Accounts.  The Trustee's authority to make distributions is set forth in the NISAs, subject to certain conditions and an established priority of payment:

> To the extent that funds are available in the Trust Account, the Trustee shall withdraw from the Trust Account and pay…the following amounts in the following order of priority ….
> (A) To pay to the Trustee, the amount of its fee due and payable for performing services under [the] Note Agreement and any supplemental note agreements and expenses incurred in connection therewith relating to the Notes (Series I):
> …
> (C) First, on or prior to each respective Interest Payment Date, to a disbursement account designated by the Debtor in an amount sufficient to make payments to

7

Noteholders the interest then due and payable on their respective Notes and second, … to the Noteholders on the respective Maturity Dates of their Notes or other date set for redemption of Outstanding Notes all principal then due and payable pursuant to the terms of such Notes, [the] Note Agreement, and any applicable supplemental note agreement;

…

(F) To pay the Administrative Fee;

….

(Wahl Aff., Ex. A, NISA § 5.08. )

Distributions are made only on account of the series of notes for which amounts were received into the related Trust Account.  In other words, funds in the MPF III Series I Trust Account are not used to make payments on the MPF V Series I notes.

## 6.    The Administrative Fee.

The circumstances in which an Administrative Fee may be paid to MCC are specifically limited by contract. For example, as listed in the priority of payments above, an Administrative Fee may be paid to MCC, but only to the extent that funds are available after satisfying higher priority obligations.  The Administrative Fee is a fee payable to MCC for the performance of its services under the ASA relating to a series of notes.  (Wahl Aff., Ex. A, NISA at 1.)  As Administrator, MCC requests payment of the Administrative Fee, and either MPF III or MPF V, depending on the series of notes to which the fee relates, must provide or cause MCC to provide a certification to the Trustee that certain financial conditions have been satisfied[3] before the Trustee can release funds from the Trust Account to pay such fees. (Wahl Aff., Ex.A, NISA § 3.05(h).)

In their opposition to the SEC's application for a temporary restraining order, Defendants incorrectly state that "[n]o investments of [funds in the Trust Account], and no payments of expenses, including payment of administrative fees to [MCC], can be made without the approval of the appropriate trustee."  (Opp. at 4:15-18.)  Rather, these payments are based upon a certification provided by MCC that the requirements under the NISA are satisfied and that the Administrative Fee can be distributed.

---

[3] The Collateral Coverage Requirement must be satisfied (after giving effect to the requested disbursement) on the basis of the Net Collateral Coverage Ratio calculated and provided by the SPV to the Trustee on the last day of the preceding month.

If funds are insufficient to meet obligations with a higher priority, such as payment of the Trustee's fees and expenses and interest and principal payments due and payable to Noteholders, or the financial conditions have not been satisfied, then no Administrative Fee may be requested from the Trustee.  (Wahl Aff., Ex. A, NISA § 5.08.)  An additional limitation on payment of the Administrative Fee to MCC from funds on deposit in the MPF III Series I and II Trust Accounts was imposed by the Forbearance Agreement, in which MCC, MTS, and MPF III agreed that no amounts would be paid to MCC or MTS relating to the MPF III Series I or Series II notes until the Series I and Series II obligations were paid in full.  (Wahl Aff., Ex. H, Forbearance Agreement § 6(b).)

**7.    Payment defaults under the NISAs.**

Payment defaults have occurred and are continuing under the NISAs for each series of notes.  First, all MPF III Series I notes have now matured, and due and payable principal obligations total $26,513,000.00.  (Walker Aff. ¶ 5.)  MPF III's failure to make principal payments constitutes a default under the NISA.  (Wahl Aff., Ex. A, NISA § 6.01(a).)

Second, MPF III failed to make the last 4 interest payments due on the MPF III Series II notes, which failure constitutes a default under the NISA.  (Walker Aff., ¶ 6;  Wahl Aff., Ex. A, NISA § 6.01(a).)  In addition, MPF III failed to make principal payments on Series II notes, which constitutes an additional default under the NISA. (Walker Aff., ¶ 6;  Wahl Aff., Ex. A, NISA § 6.01(a).)  Not all Series II notes have matured.

Finally, MPF V failed to make its last two interest payments on the MPF V Series I notes, which were due on June 10, 2009 and July 10, 2009.  (Walker Aff. ¶ 7.)  MPF V's failure to make these interest payments constitutes a default under the NISA.  (Wahl Aff., Ex. A, NISA § 6.01(a).)  The MPF V Series I notes begin maturing in October, 2009, at the earliest.  (Wahl Aff., Ex. C, NISA § 2.01(d).)

8.    **Procedural History of this Proceeding.**

On July 16, 2009, the SEC filed a complaint for violations of federal securities laws, against MCHI, MCC, MPF VI, Field, and Lampariello (collectively, the "Defendants").

Also on July 16, 2009, the SEC filed its *ex parte* application for a temporary restraining order and requested an order freezing the assets of MCHI, MCC, and MP VI and appointing a temporary receiver over MCHI, MCC, and MP VI.  The SEC's request is based on the Defendants' alleged misappropriation of MPF VI investor proceeds to pay MCC's Administrative Fee and alleged misrepresentations in MPF VI offering documents regarding defaults under the other note series.  (Application at 1-2.)  In its application for TRO, the SEC did not seek to freeze the assets of the subsidiaries and affiliates of the Defendants.

On August 3, 2009, this Court entered a TRO that placed an immediate freeze on all monies and assets held in the name of, or for the benefit of, the Defendants <u>or any entity affiliated with any of them</u>, and appointed the Receiver over all of the Defendants <u>and of their subsidiaries and affiliates</u>.  (Order §§ VI, VII.) (emphasis added).  The TRO enjoined all persons from doing any act to interfere with taking control by the temporary receiver of assets owned, controlled or managed by or in the possession of the Defendants or any of their subsidiaries and affiliates. (Order § X.)

Immediately after entry of the order, the Trustee received a letter from the Receiver, requesting that all funds in the MPF III Series I, MPF III Series II, and MPF V Series I Trust Accounts be turned over to the Receiver.  (Wahl Aff., Ex. I, August 3, 2009 letter.)

## LEGAL ARGUMENT

I.    <u>Wells Fargo supports the appointment of a Receiver for Medical Capital Corporation and Medical Tracking Services, Inc.</u>

On August 3, this Court granted the SEC's application and appointed a temporary receiver for MCHI, MCC, MPF VI, and their subsidiaries and affiliates to prevent immediate and irreparable harm to investors and to the general public (Order at 1.)  Wells Fargo supports the appointment of a receiver over MCC and MTS to prevent the abuses alleged by the SEC.

By appointing a receiver over MCC and MTS, the Court has taken control out of the hands of the entities who took the inappropriate actions alleged by the SEC and fulfills the needs raised in the SEC's application with respect to the MPF VI Noteholders. (Order § VII.) In so doing, the Court addressed the narrow scope of the issues raised in the SEC's application, i.e., to prevent misappropriation of assets and misrepresentations to investors. In addition, the appointment of a receiver for MCC and MTS will protect the MPF III and MPF V Noteholders, because MCC and MTS administer the notes and service the collateral that secures more than $510 million in outstanding notes issued by MPF III and MPF V. MCC also performs all registrar, paying agent, and bookkeeping services relating to payments on the notes. (Wahl Aff., Ex. A, ASA § 1.08.) Because of the roles that MCC and MTS play with respect to the notes, the appointment of a receiver over MCC and MTS adequately protects the Noteholders by providing necessary oversight of the administration and servicing of the collateral and all payments on account of the notes.

But because MCC and MTS provide all of the operational, servicing, monitoring, and bookkeeping functions for MPF III and MPF V, the Court's order implies that the Receiver's authority extends broadly to MPF III and MPF V. In fact the SEC provided no rationale for extending the Receiver's authority to MPF III and MPF V, and the interests of the public are already amply protected by the Trustee. Thus, there is no reason for the appointment of a receiver for MPF III and MPF V. As outlined in the sections that follow, the Court should modify sections VI and VII of its order to clarify that the Receiver does not have authority over MPF III and MPF V, and to exempt Trust Accounts held at Wells Fargo for MPF III and MPF V from the turnover provisions of the order.

II.    **A Receiver should not be appointed for MPF III or MPF V.**

A.    **The SEC only requested appointment of a Receiver for MCHI, MCC, and MPF VI.**

This Court properly cites the standard for injunctive relief to the SEC: "The SEC must demonstrate: (1) a prima facie case that a violation of the securities laws has occurred and (2) a

1   reasonable likelihood that the violation will be repeated.[4]  *See e.g., S.E.C. Unique Fin. Concepts,*

2   *Inc.,* 196 F.3d 1195, 1199 n.2 (11th Cir. 1999)."  (August 3, 2009 Civil Minute Order ("Civil

3   Minute Order") at 4 [Docket 21].)  The SEC's application for the appointment of a temporary

4   receiver was limited to the appointment of a receiver for MCHI, MCC, and MPF VI, and neither

5   MPF III and MPF V, nor any of the Defendants' related entities or subsidiaries are included in the

6   SEC's request, nor are there securities law violations alleged against them.  (App. at 2.)  Thus, the

7   SEC does not allege facts necessary to justify relief over MPF III and MPF V, and they cannot

8   meet the necessary legal standards for such relief.  (See Civil Minute Order at 4.)  This Court

9   should tailor its injunctions and orders narrowly to address the wrongs alleged, and should not

10  grant relief that has not been requested.  *Storman's, Inc. v. Selecky*, 571 F.3d 960, 990-91 (9th Cir.

11  2009) (preliminary injunction was an abuse of discretion because it was overly broad and not

12  limited to defendants, as requested in the application); *Lamb-Weston, Inc. v. Mc Cain Foods, Ltd.*,

13  941 F.2d 970, 974 (9th Cir. 1991) ("Injunctive relief … must be narrowly tailored to remedy the

14  specific harm alleged.").  But the Court's order reaches beyond this need and provides for the

15  appointment of a Receiver for MCHI, MCC, MPF VI, and all subsidiaries and affiliates.  (Order

16  § VII.)  The SEC has not presented any rationale for why a Receiver is appropriate for either MPF

17  III or MPF V, and a Receiver should not be appointed over these entities.

18      **B.    The Receiver's appointment is overbroad.**

19      The Court's August 3 order exceeds the narrow scope of relief requested by the SEC

20  because it appointed a Receiver over entities – MPF III and MPF V - that do not require a

21  Receiver to prevent them from misappropriating assets or making misrepresentations to investors.

22  Specifically, the Court's order included the subsidiaries and affiliates of the entities that had

23

24  _____

[4] The SEC also fails to meet the requirements for a preliminary injunction, even without securities
25  fraud violations, with respect to MPF III and MPF V.  "The "traditional test" for a preliminary
injunction requires non-governmental plaintiffs to demonstrate (1) a strong likelihood of success
26  on the merits; (2) a significant threat of irreparable injury; (3) greater hardship to Plaintiffs than
Defendants; and (4) that the public interest favors granting the injunction."  (Civil Minute Order
27  at 4, citing *American Mororcyclist Ass'n v. Watt*, 714 F.2d 962, 965 (9th Cir. 1983.)  Here, the
SEC made no allegations against MPF III or MPF V in its application for a preliminary
28  injunction, and fails to meet the requirements even under the "traditional test."

allegedly taken the actions alleged by the SEC.  (Order at 5-6.)  Thus, the broad scope of the order appears to include MPF III and MPF V.  But these entities cannot commit the types of abuses alleged by the SEC about the other entities because they provide no servicing or administrative functions with respect to the notes or the collateral.  Indeed, MPF III and MPF V cannot act: they have no employees or operations and rely on the Administrative Services Agreement and Servicing Agreements with MCC and MTS for offices, personnel, facilities, equipment, and services to fulfill their obligations under the NISAs.  (Wahl Aff., Ex. A, ASA at 1, Ex. F, Servicing Agreement at 1.)  And no additional notes will be issued by either of MPF III or MPF V, eliminating the risk of misrepresentations in offering documents.  Therefore, no additional protection is provided with the appointment of a receiver for these entities.

Moreover, the appointment is overbroad because any necessary residual protection for the MPF III and MPF V Noteholders is provided by the Receiver who has already been appointed for MCC and MTS – the entities that actually pose a risk of misappropriation of collateral or improper administration of the notes.  As described above, MCC and MTS administer the notes, service the collateral, and provide the registrar, paying agent, and bookkeeping services for the notes.  Thus, the need to appoint a receiver over MPF III and MPF V is eliminated because of the control the Receiver exerts over MCC and MTS.

### C.    The Trustee provides adequate protection over the Trust Accounts.

The Receiver need not have authority over the Trust Accounts because such authority is redundant relative to the Trustee's authority, and risks interfering with funds that belong to thousands of innocent Noteholders and do not belong to the Defendants.

The Trustee has sole control of the Trust Accounts and, under the terms of the NISAs, it is only authorized to make distributions from the Trust Accounts in certain specified circumstances.  Based on these protections, therefore, the investing public is protected and a receiver is not required for MPF III or MPF V to prevent misappropriation of assets.[5]  Significantly, there are

---

[5] As described in more detail below, an additional check that no Trust Account funds will be misappropriated is the Receiver's involvement in any distributions to Noteholders.  Because principal and interest payments were made at the direction of MCC, acting on behalf of MPF III

(Footnote continues on next page.)

multiple protections in place to prevent the only abuse cited by the court relating to the Trustee – theft of Administrative Fees. (Civil Minute Order at 5.) As things stand, there is no risk of improper payments of an Administrative fee. For example, Section 5.08(a)(ii) of the NISAs describes the order in which funds may be distributed from the Trust Accounts. (Wahl Aff., Ex. A, NISA § 5.08.) But if there are interest and principal defaults, (as there are here) Trust Account funds may not be used to pay obligations lower in payment priority, such as the Administrative Fee. (Wahl Aff., Ex. A, NISA § 5.08(a)(ii)(C), (F).) The interest and principal defaults also prohibit MPF III and MPF V from directing the purchase of additional receivables or non-receivable assets. (Wahl Aff., Ex. A, NISA § 5.08(a)(ii)(E).)[6] In addition, MCC is barred from receiving any Administrative Fees from the Trust Account relating to the MPF III notes because it explicitly agreed in the Forbearance Agreement to subordinate the payment of any Administrative Fees unless all amounts due on the MPF III notes were paid in full. Thus, there is no need to appoint a receiver over MPF III and MPF V based upon a risk of misappropriation of assets or Administrative Fees because the Trustee controls the Trust Accounts and cannot pay an Administrative Fee.

**III.    The Receiver should remit collections on the collateral to the Trust Accounts and the Trustee should be allowed to distribute Trust Account funds under the NISAs.**

The appointment of a receiver does not require that the collection of collateral and proceeds of collateral for the MPF III and MPF V Noteholders cease. The Court has wide discretion in determining how to proceed where there is a receiver, and collections and distributions under the NISAs should continue. *SEC v. Black*, 163 F.3d 188, 198 (3d Cir. 1998)

_____

(Footnote continued from previous page.)

and MPF V, and the Receiver now controls MCC, the Receiver will be directing the payment of principal and interest to MPF III and MPF V Noteholders.

[6] It is possible that Administrative Fees may be paid on the MPF V Series I notes if MPF V cures the current defaults. But because MCC is required to submit certifications, and the Receiver now controls MCC, the Receiver will be responsible for providing any certifications to request Administrative Fees. Wells Fargo assumes that the Receiver will not submit fraudulent certifications.

1    (citing *SEC v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992), *rev'd in part on other grounds*, 998

2    F.2d 922 (11th Cir. 1993)).

3          **A.    Collection of assets should not be frozen.**

4          The Receiver should be directed to continue to perform MCC's and MTS's servicing and

5    collection obligations relating to the collateral and to remit the collection amounts to the Trust

6    Accounts, rather than freezing collections on the MPF III and MPF V Noteholders' collateral.

7    Under the NISAs, all payments, collections, and liquidation proceeds of collateral are required to

8    be deposited into the Trust Account for the series of notes to which the collateral relates.  (Wahl

9    Aff., Ex. A, NISA § 5.08(b); Ex. D, ASA 1.15.)  The Court's August 3 order granted the SEC's

10   request to freeze the assets of MCHI, MCC, MPF VI, and their subsidiaries and affiliates.  (Order

11   § VII.)  This request was presumably intended to prevent the misappropriation of assets.  But

12   because the Receiver was appointed over the entities that administer and receive all funds for the

13   MPF III and MPF V Noteholders relating to the collateral and proceeds, the Receiver already has

14   all the information about the source of all amounts received, and can direct the funds to the

15   correct Trust Account.  *See Black*, 163 F.3d at 196 (asset freeze lifted because defendants did not

16   have control over funds nor could the funds be deemed assets of the defendants).

17          Distributions of Trust Account funds also require the Receiver's involvement, which

18   provides a further guarantee that no Trust Account funds will be misappropriated.  The NISAs

19   authorize the payment, to the extent funds are available, in the following order of payments: the

20   Trustee's fees and expenses, then interest and principal on the notes, and then Administrative

21   Fees.  As Administrator, MCC maintained the list of amounts to be paid and the timing of

22   payments to the MPF III and MPF V Noteholders.  Because of the varying nature of the note

23   maturity dates and timing and amount of interest payments, distributions cannot be made from the

24   Trust Accounts without this information.  The information is now under the Receiver's control,

25   and he will be aware of the destination and amounts of all distributions from the Trust Accounts.

26

27

28

**B.    The Trustee should be authorized to make distributions from the Trust Accounts and the Receiver should be directed to provide necessary information to the Trustee.**

The Trustee also requests that the Court authorize it to continue to distribute funds to Noteholders from the Trust Accounts under the NISAs and direct the receiver to provide necessary information to the Trustee to be able to make monthly interest and principal payments, on a pro rata basis, as funds become available. Because the Receiver now controls MCC and MTS, there is no risk that Trust Account funds will be misappropriated and wind up in the hands of anyone other than those who are legitimately entitled to receive the funds. In addition, there is no reason that legitimate distributions of the Trust Account funds to innocent Noteholders should be stayed. Noteholders rely on monthly interest distributions and have a legitimate expectation that their principal amounts will be repaid. By freezing distributions from legitimate collections of the collateral and receiving payment on their notes, the Court's order needlessly harms the Noteholders by denying them their legitimate distributions.

Under similar circumstances, the court in *Black* lifted an asset freeze over accounts maintained either in client names or with a custodian bank. *Black*, 163 F.3d at 192, 196. Because the defendants did not have control over the accounts, the court reasoned that it lacked power over the funds in the custodian accounts. *Id.* at 196. Moreover, the clients were not implicated as wrongdoers, and the mere fact that the trustee wanted control over the assets to claim recovery from them did not warrant a continued freeze. *Id.* at 196, 198, n.7. The same rationale applies here to continue collections and distributions of funds from the Trust Accounts, where the SEC has not raised allegations of wrongdoing by the Noteholders, the Trust Accounts are under the control of the Trustee, and the Receiver knows the source of all funds received.

To make distributions to the Noteholders, the Trustee needs to receive information on who, what, and when to pay. The Administrator, MCC, was responsible for providing this information to the Trustee before the Receiver's appointment because it maintained the MPF III and MPF V Noteholder list. The Receiver now controls this information. If the Court authorizes the Trustee to continue to make distributions to Noteholders, the Trustee also requests that the

1   Court direct the Receiver to provide Noteholder and distribution information to the Trustee to

2   make distributions to the Noteholders from the Trust Funds.

3   **IV.    Payment of the Receiver's fees and expenses should not come from the MPF III or**
        **MPF V collateral.**

4

5            **A.    Fees for administration cannot be paid under the NISAs until defaults are**
                **cured.**

6            Any request by the Receiver to have his fees and expenses paid from any part of the MPF

7   III or MPF V collateral for services that, but for the receivership, would have been provided by

8   MCC should be denied.  Under the NISAs, the Administrative Fee provides compensation for

9   services rendered by MCC, and this fee cannot be paid until defaults are cured.  (Wahl Aff., Ex.

10  A, NISA at 1, § 5.08(a)(ii)(F).)  Here, there are continuing defaults under all three series of notes,

11  and MCC is not entitled to receive an Administrative Fee.  By his appointment, the Receiver steps

12  into MCC's shoes.  A receiver is not entitled to rights in excess of those held by the entities for

13  which he was appointed.  *Javitch v. First Union Secs., Inc.*, 315 F.3d 619, 625 (6th Cir. 2003)

14  ("The general rule is that a receiver acquires no greater rights in property than the debtor had…").

15  Thus, the Receiver should not be allowed to recover his administration fees from the MPF III and

16  MPF V collateral.

17           **B.    No administrative fees should be paid because MCC and MTS subordinated**
                **their payments.**

18

19           Any attempt by the Receiver to recover fees and expenses for services relating to the MPF

20  III notes that would have been provided by MCC or MTS should also be denied.  Under the

21  Forbearance Agreement, MTS and MCC agreed to subordinate payments owed for administrative

22  fees until the MPF III Series I and Series II notes were paid in full.  The MPF III notes have not

23  been paid in full, and MCC and MTS would not be entitled to receive payment for their services.

24  Again, if MCC or MTS are not entitled to recover Administrative Fees, neither can the person

25  appointed as their receiver.[7]

26  _____

27  [7] To the extent that the Receiver is also appointed for MPF III and MPF V, any request for fees
    and expenses likewise fails because the NISAs, ASA, and Servicing Agreement do not provide
    for the payment of the SPVs' fees and expenses.

28

17

1

**CONCLUSION**

2

3        For the reasons stated here, the Court should clarify in section VI and VII of its order that

4   the Receiver does not have authority over MPF III and MPF V and that Trust Fund accounts at

5   Wells Fargo for MPF III and MPF V are exempt from the order.  In addition, the Court should

6   order the Receiver to remit collections to the Trust Accounts and should authorize the Trustee to

7   distribute Trust Fund monies to the Noteholders in the ordinary course of business and subject to

8   the terms of the NISAs.  Finally, the Court should clarify that the Receiver's fees should not be

9   paid out of MPF III or MPF V collateral.

10

11

Dated: August 10, 2009                FAEGRE & BENSON LLP

12

13                                             By:_____
                                               LAWRENCE BASS (CA NO. 60527)
14                                             3200 Wells Fargo Center
                                               1700 Lincoln Street
15                                             Denver, CO  80203-4532
                                               Telephone:  303-607-3500
16                                             Facsimile:  303-607-3600
                                               Email:  lbass@faegre.com
17
                                               EDWARD T. WAHL (MN NO. 15409X)
18                                             STEPHEN M. MERTZ (MN NO. 212131)
                                               THERESA H. DYKOSCHAK (MN NO.
19                                             0349999)
                                               90 South Seventh Street, Suite 2200
20                                             Minneapolis, Minnesota  55402-3901
                                               Telephone:  612.766.7000
21                                             Facsimile:  612.766.1600
                                               Email:  ewahl@faegre.com
22                                             Email:  smertz@faegre.com
                                               Email:  tdykoschak@faegre.com
23
                                               Attorneys for Wells Fargo Bank, National
24                                             Association

25   fb.us.4265347.10

26

27

28