MICHAEL A. PIAZZA (SBN 235881)
Email: piazzam@gtlaw.com
ALAN A. GREENBERG (SBN 150827)
Email: greenbergal@gtlaw.com
GREENBERG TRAURIG, LLP
3161 Michelson Drive, Suite 1000
Irvine, California 92612
Telephone: (949) 732-6500
Fax:         (949) 732-6501

Attorneys for Defendants SIDNEY M. FIELD and
JOSEPH J. LAMPARIELLO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>MEDICAL CAPITAL HOLDINGS, INC.; MEDICAL CAPITAL CORPORATION; MEDICAL PROVIDER FUNDING CORPORATION VI; SIDNEY M. FIELD; and JOSEPH J. LAMPARIELLO,<br><br>Defendants. | CASE NO. 09CV-818 DOC (RNBx)<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR ORDER PERMITTING CHAPTER 11 BANKRUPTCY FILINGS UNDER NEW MANAGEMENT** |

I.  **THE SEC'S OPPOSITION DOES NOT ADDRESS THE KEY ISSUES.**

The SEC's opposition papers provide no answers to the critical issues presented by the ex parte application (the "Application"). The Application very specifically set forth key issues which make it plain that the Receiver is destroying the value of the assets, and

was very specific in showing that the Receiver's (unsigned) report contains material inaccuracies. The Opposition does absolutely nothing to clear up any of these issues. Instead, the SEC just asks the Court to trust that the Receiver is doing a great job, and engages in further baseless character assassination of the Defendants.[1]

As discussed below, the Receiver is not handling the Receivership in a competent or capable manner, and nothing in the SEC's Opposition refutes this.

In fact, as set forth in the Declaration of Thomas R. Fazio, the Receiver has even shut down his own ability to receive funds from clients and payors, and has failed to even let them know how to communicate with him or to send him funds.

The Receiver still has failed to provide the court with an accounting of the assets of each of the entities under his receivership, which the court expressly required him to do in Section VII.E. of the August 3 Order. The 10-day report does not set forth any list of the assets of each entity.

The Receiver plainly has no idea what he is doing, and is causing further harm every day he remains in office. He should be removed immediately.

Furthermore, the SEC's arguments against Chapter 11 are baseless. The suggestion that the Defendants want to terminate the Receivership because they have something to hide is illogical. The Receiver already took images of the computer systems, and has had almost three weeks to look at anything he wanted to look at. And this is in addition to the year-long investigation by the SEC.

The facts of this case will come out eventually, and indeed, it is the Defendants who have been pushing the SEC and the Receiver to get the truth out as quickly as possible. The Defendants are being dragged through the mud on the basis of supposition and innuendo. If the Defendants had done even a fraction of the things the SEC and the Receiver now imply, then the SEC's Complaint in this matter (after a year-long investigation) would have been a very different one, and not based on such narrow

---

[1] The vacuity of the SEC's latest attacks on the Defendants, and on the proposed Executive Committee members, is discussed herein.

allegations about a single SPC.

## II. THE RECEIVERSHIP IS A DISASTER.

The Receiver's inability or unwillingness to perform his critical job functions is staggering – it has now come to light that the Receiver has not made adequate provisions to receive funds from clients and payors on receivables. One client, Transfac, tried to wire funds to MCC and the funds were rejected because the account was frozen. Transfac also could not email its weekly and monthly compliance reports – the emails were returned. (Fazio Declaration, ¶¶2-4, Exh. "A"). While Transfac has now been referred to the Receiver's website, and hopefully was able to get the Receiver's attention to accept funds and emails, this client's experience is emblematic of this disastrous Receivership, and one wonders how many other clients and payors will work as hard as Transfac did to find out how to send their money to MCC.

Millions of dollars are at stake, and the lack of tracking these receivables is going to cause an accounting nightmare. MCC employed 19 employees at Medical Tracking Services, Inc. in Las Vegas to track and post receivables activity. The Receiver has failed to retain <u>any</u> of these employees, and the Las Vegas operation was immediately shut down by the Receiver. While the SEC states that a small handful of employees were retained in Tustin, the SEC does not say who they are or what is their job function. None of them were involved in tracking receivables, which was done out of Las Vegas. None of them have knowledge that would enable the Receiver to administer the companies' complex assets.[2]

The SEC's Opposition failed to respond in any meaningful way to the issue raised in the Application that the Receiver's precipitous rush to shut down operations has jeopardized the recovery on the assets. The Receiver came in and fired the employees (or

---

[2] Notably, the Receiver has tied both hands behind his back by failing to even ask Joseph Lampariello or Sidney Field for information regarding the companies' assets, or the status of negotiations, workouts, and other ongoing transactions with clients, borrowers, foreclosed assets, etc.

failed to retain or pay them and left them hanging),[3] ceased all tracking of receivables, shut down the company website for several days only then to restart it (albeit still with no information about the receivership even as of today), and has generally failed to communicate with the clients and payors. The Receiver came in with no plan on how to raise any funds to finance the receivership, and as far as anyone can tell, still has no plan – at least not one he appears willing to disclose to the Court or the investors.

The SEC's discussion of HFMA reveals ignorance of what the Receiver is supposed to be doing, making the facile argument that: "It is disingenuous for Field and Lampariello to claim the Receiver is mismanaging an asset that had already failed." (Opp., 7:13-14). Even if HFMA's office was closed and even if it had been operating at a loss, that does not mean that it is acceptable to ignore the remaining HFMA assets. These assets (including receivables and fees for collection of client receivables) need to be administered and collected. To ignore them is contrary to the Receiver's preservation function.

The SEC's discussion of Trace Life Sciences also reveals abject ignorance. The lawsuit by MP III has nothing to do with the point at hand, which is that legitimate receivables remain to be collected. The allegation in the Trace lawsuit that Trace's business operations and generation of new receivables was insufficient to sustain itself (and meet its debt to MP III) is completely consistent with the fact that MP VI acquired valid, viable, and legitimate Trace receivables from previous SPCs. These were recent receivables for which MP VI paid no more and no less than fair value (80% of remaining ENR). The SEC seems to think that Trace's financial difficulties have some bearing on the collectability of the receivables, but the receivables were not <u>due</u> from Trace – they are medical receivables due from outside payors who owed Trace money. If the SEC and

---

[3] While the SEC notes that the Receiver kept open NHBC, it is important to note that NHBC is an entirely separate business operation that has nothing to do with the collection of assets by MCC and the SPCs.

the Receiver misunderstand such a fundamental issue which is central to the entire business model of MCC and the SPCs, then there is no hope that they are ever going to succeed in collecting the receivables.[4]

Castle Hill is another critical asset which the SEC's Opposition does not address in any meaningful way. This was a pending escrow to sell a distressed asset for $14.4 million. The transaction was to have closed by now. The comment that the SEC "has learned that the Receiver has taken steps to preserve the transaction," without more information, is hardly reassuring. And the broadside attack on the transaction is disingenuous at best. The SEC has been well aware for a year of MCC's efforts to sell Castle Hill. The borrower had listed the asset at $34 Million, so the $30 Million valuation was reasonable at the time. The SEC does not seem to understand that there has been a recession in this country that has affected real estate and business valuations. Contrary to the SEC's suggestion, MCC has kept the trustee, the noteholders, and the SEC fully apprised on a regular basis regarding the value and efforts to sell Castle Hill.

Another critical asset to which the SEC pays short shrift is Southwest Hospital in Atlanta, Georgia. This hospital, which is dormant but is quite valuable, has licenses and certifications to reopen, and contains millions of dollars worth of equipment. The SEC claims that a single employee has been retained there, but no details are given regarding what that employee is doing, or how the Receiver is safeguarding and preserving this asset.

With respect to the "Home Stretch," the SEC says that the boat is "safe" and that the Captain has been retained to safeguard it. The SEC calls the Individual Defendants' statement that the boat may be in serious jeopardy "unsupported." The SEC fails to point

---

[4] For some reason, the SEC refers to the Trace receivables as "purported" and "so-called" receivables. The SEC investigated for a year. The Receiver has had all the company records for weeks. The SEC should know by now that these are actual receivables, and if they had evidence to the contrary, they would presumably present it and not use equivocal words to describe the receivables.

out, however, that the Captain was never retained until, if at all, <u>after</u> the Application was filed on August 16, 2009, and presumably in response thereto.

In sum, there is no information provided that would give any assurance to the Court or to any interested parties that the Receivership is anything other than a total disaster. The absence of any declaration from the Receiver on these points is troubling, especially since these key points were ignored in the (unsigned) 10-day report. The Individual Defendants expect to call the Receiver as a witness at the hearing on Monday to answer questions about his work on this case, and his efforts to preserve and collect the assets.

## III. DISAPPOINTINGLY, THE SEC HAS FAILED TO ADDRESS THE ASSERTIONS MADE BY THE RECEIVER.

In the Application, the Individual Defendants pointed out the inaccuracy of several serious, but unfounded accusations, that were contained in the Receiver's 10-Day Report. Unfortunately, the SEC's Opposition does not even address these key issues.

For example, the SEC has not submitted anything to support the Receiver's accusation that the Defendants caused SPCs to sell old and stale receivables to later SPCs for increasing prices. Certainly by now, the SEC and the Receiver must know whether or not the receivables that were sold were viable and performing assets that were sold in reasonable transactions. The silence is deafening, and shows again that the Receiver's Report was unfounded.

Another example is the supposed $324 Million in administrative fees. The Application pointed out that this number is grossly inflated and is inclusive of many pass-through items such as interest to noteholders and broker-dealer commissions, and further includes accrual and book entry items that do not reflect actual cash fees to MCC. Again, the Opposition is silent on the point, implicitly acknowledging the accuracy of the Application in this regard.

Similarly, the Application points out that, notwithstanding the Receiver's attacks, the Trace and EMARK assets of MP VI are actual receivables, and that they were

- 6 -

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR ORDER PERMITTING CHAPTER 11 BANKRUPTCY FILINGS UNDER NEW MANAGEMENT

286,448,630v2  121909.010100

accurately described as such by the Defendants. The SEC's Opposition fails to concede or dispute this point, and again if the SEC had anything to back up its scatter-shot accusations, it would have brought it to the Court's attention.

Instead of focusing on how to maximize and collect the value of the many assets of these entities (which have yet to be listed by the Receiver), the SEC just keeps repeating like a mantra: "Boat, Movie, Hamster. Boat, Movie, Hamster." These non-issues have all been addressed in the Application, but the SEC and Receiver are willfully blind to reality. In any event, the SEC has evidently not looked yet at the Vivavision website, or spoken to any of its many subscribers, to ascertain that there is much more than a hamster there.

**IV. THE SEC MISSES THE POINT ENTIRELY – CHAPTER 11 IS VASTLY SUPERIOR TO THE RECEIVERSHIP.**

The Opposition wastes several pages discussing the court's discretion to appoint a receiver. These pages are wasted because no one disputes that the court has discretion. The point of the Application is that the court, in the exercise of its discretion, should favor Chapter 11 bankruptcy as the preferred vehicle to allow a controlled and planned liquidation or rehabilitation of each entity, while permitting all interested parties to be heard and have due process.

While the SEC correctly points out that this court is well capable of supervising a receivership, there are good reasons why the case law precedents uniformly state that these cases should be placed into the hands of the Bankruptcy Court at the earliest opportunity. Furthermore, the District Court should not be put in a position of baby-sitting such a cumbersome process and making sure the Receiver is doing his job properly. This is what Bankruptcy Court is designed for.

This case involves many thousands of creditors, and could involve hundreds of ancillary lawsuits and disputes, all of which would be most efficiently handled as

/ / /

adversary proceedings in Bankruptcy Court.[5] It appears that the first such dispute will be with IHHI, which owes approximately $100 Million to the Medical Capital entities. IHHI has already announced a proposed lawsuit against the Receiver to try to squeeze the Receiver for a discount based on all kinds of spurious allegations. Curiously, although this claim was brought to the SEC and Receiver's attention on August 18, the SEC fails to mention this in the Opposition. In any event, other borrowers, seeing that MCC is in a weakened state and run by a Receiver who has no institutional knowledge of previous negotiations and discussions, no doubt will try similar tactics to evade their obligations to the Medical Capital entities.

While no system is perfect, the bankruptcy system is best equipped to handle the dismantling of assets of MCC and its affiliated entities, and the voluminous ancillary disputes that are sure to arise. This liquidation is not going to be a fast process no matter where it takes place, nor should it be. In order to maximize return to noteholders, this liquidation needs to take place in a thoughtful and planned out manner, not in a race to kill the assets and unload them on the cheap in the midst of the worst economy in 70 years.[6]

## V. THE PROPOSED EXECUTIVE COMMITTEE IS WELL-SUITED TO FILE THESE CHAPTER 11 CASES AND OVERSEE THE DEBTORS IN POSSESSION.

The SEC's cheap shots at the proposed Executive Committee are unwarranted and inappropriate.

---

[5] The SEC misconstrues the intent to include all companies and assets in the Chapter 11 process. The entities that are owned by MCH or the SPCs will certainly be part of the process as they are assets of the Chapter 11 debtors. That does not mean that they have to necessarily file their own Chapter 11 cases.

[6] The DIP financing which would be secured by a second lien on the office building, is appropriate and necessary. The Receiver has no discernable financing, and told the Court on August 17 that he has no funds to pay the electric bill at the Trace linear accelerator facility.

The fact that two members of the proposed committee have some past ties to the Defendants is not at all unusual for Chapter 11 debtors (which are generally managed, at least initially, by the same management team that led the debtor into bankruptcy court). Further, the nature of the ties to the Defendants should not disqualify these individuals from serving, and if anything is a positive to the extent that they have experience and understanding of the assets that will have to be managed in a controlled liquidation.

Richard Block is a very experienced receiver, and merely served as an outside consultant to MCC during 2009, limited to dealing with non-medical receivable assets. He therefore has knowledge and experience in dealing with these critical assets, and would be an invaluable member of the restructuring team.

The Hon. Joseph J. DioGuardi has spent a lifetime in public service. He is a renowned advocate for fiscal reform of the federal government. His ethics are unquestioned after a long career in the public eye. Mr. DioGuardi has served on boards of various companies. With regard to previous involvement with the entities involved in this case, Mr. DioGuardi was an outside director of NHBC and HFMA, as well as some entities that no longer exist. And he was never a director of MCH or MCC, or of any of the currently operating SPCs. He was instrumental in the successful restructuring of a public company in Chapter 11 (Safety Components International, Inc.)[7]

Richard Kipperman is a trustee and receiver of tremendous experience, who would serve as CEO. He has no previous connection at all to the Defendants or any of their affiliated entities.

The suggestion that this committee would cost more than the Receiver is a red herring. The Receiver has no funding and is incapable of preserving and collecting the assets. This committee, with DIP financing, and with their knowledge and experience,

---

[7] The accusation that the Defendants intended to conceal Mr. DioGuardi's ties to the Defendants is disingenuous. There has never been any question that the SEC knows who Mr. DioGuardi is.

would be well-equipped to take these entities through a planned, controlled, and sensible liquidation. With today's electronic communications, and the national scope of the assets in question, the location of the members of the committee is also irrelevant.

The suggestion that the composition of the Executive Committee is designed to permit control by the Individual Defendants is also poorly thought out. In a Chapter 11, there is supervision by the Bankruptcy Court, by the Office of the U.S. Trustee, and by the creditors and by any committees that may be formed. In short, there is more than adequate supervision to ensure that the debtors in possession are managed appropriately. There is no way that the Individual Defendants could control the Chapter 11 debtors. Indeed, the Individual Defendants are not seeking to have any control whatsoever, and are not seeking any compensation whatsoever. They have devoted a large part of their lives to the development of these companies, and do not want to see them ripped apart and destroyed in an unthinking and illogical manner, at such great cost to so many people. The deep economic recession has already caused enough problems for these companies without piling on by putting the company in the hands of this Receiver.

## VI. CONCLUSION.

For the foregoing reasons, and the reasons set forth in the Ex Parte Application and Memorandum in support thereof, the Application should be granted in its entirety, and the Court should enter the Proposed Order.

DATED: August 20, 2009        GREENBERG TRAURIG, LLP


By:  /s/ Alan A. Greenberg
     Michael A. Piazza
     Alan A. Greenberg

     Attorneys for Defendants
     SIDNEY M. FIELD and JOSEPH J.
     LAMPARIELLO

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR ORDER PERMITTING CHAPTER 11 BANKRUPTCY FILINGS UNDER NEW MANAGEMENT

286,448,630v2 121909.010100

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am employed in the aforesaid county, State of California; I am over the age of 18 years and not a party to the within action; my business address is **3161 Michelson Drive, Suite 1000, Irvine, CA 92612.**

On the below date, I electronically filed the **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR ORDER PERMITTING CHAPTER 11 BANKRUPTCY FILINGS UNDER NEW MANAGEMENT** with the Clerk of the United States District Court for the Central District of California, using the CM/ECF System. The Court's CM/ECF System will send an email notification of the foregoing filing to the following parties and counsel of record who are registered with the Court's CM/ECF System:

JOHN B. BULGOZDY
Email: bulgozdyj@sec.gov
NICHOLAS S. CHUNG
Email: chungni@sec.gov
MORGAN B. WARD DORAN
Email: warddoranm@sec.gov
Securities and Exchange Commission
5670 Wilshire Boulevard, 11th Floor
Los Angeles, California 90036-3648
Telephone: (323) 965-3998
Facsimile: (323) 965-3908
Attorneys for Plaintiff

David Zaro, Esq.
Allen Matkins Leck Gamble Mallory & Natsis LLP
515 S. Figueroa Street, 7th Floor
Los Angeles, CA 90071
Email: dzaro@allenmatkins.com
Attorney for Receiver

///

LAWRENCE BASS
FAEGRE & BENSON LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO 80203-4532
Telephone: 303-607-3500
Facsimile: 303-607-3600
Email: lbass@faegre.com

EDWARD T. WAHL
STEPHEN M. MERTZ
THERESA H. DYKOSCHAK
FAEGRE & BENSON LLP
90 South Seventh Street, Suite 2200
Minneapolis, Minnesota 55402-3901
Telephone: 612.766.7000
Facsimile: 612.766.1600
Email: ewahl@faegre.com
Email: smertz@faegre.com

☒ **(BY ELECTRONIC SERVICE VIA CM/ECF SYSTEM)**
In accordance with the electronic filing procedures of this Court, service has been effected on the aforesaid party(s) above, whose counsel of record is a registered participant of CM/ECF, via electronic service through the CM/ECF system.

---

CERTIFICATE OF SERVICE

286,448,630v2  121909.010100

☒ **(FEDERAL)**    I declare under penalty of perjury that the foregoing is true and correct, and that I am employed at the office of a member of the bar of this Court at whose direction the service was made.

Executed on August 20, 2009, at Irvine, California.

                                                          */s/ Alan A. Greenberg*
                                                             Alan A. Greenberg

CERTIFICATE OF SERVICE

286,448,630v2  121909.010100