1  DAVID R. ZARO (BAR NO. 124334)
   MICHAEL R. FARRELL (BAR NO. 173831)
2  EDWARD G. FATES (BAR NO. 227809)
   ALLEN MATKINS LECK GAMBLE
3     MALLORY & NATSIS LLP
   515 South Figueroa Street, Ninth Floor
4  Los Angeles, California 90071-3309
   Phone: (213) 622-5555
5  Fax: (213) 620-8816
   E-Mail: dzaro@allenmatkins.com
6         mfarrell@allenmatkins.com
          tfates@allenmatkins.com
7
   Attorneys for Receiver
8  THOMAS A. SEAMAN

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                   SOUTHERN DIVISION

12  SECURITIES AND EXCHANGE          Case No. SA CV09-0818 DOC (RNBx)
    COMMISSION,
13                                   RECEIVER'S SECOND REPORT TO
                  Plaintiff,         THE COURT
14
          v.
15
    MEDICAL CAPITAL HOLDINGS,
16  INC.; MEDICAL CAPITAL
    CORPORATION; MEDICAL
17  PROVIDER FUNDING
    CORPORATION VI; SIDNEY M.
18  FIELD; and JOSEPH J.
    LAMPARIELLO,
19
                  Defendants.
20

21       Thomas A. Seaman ("Receiver"), the court-appointed Permanent Receiver for

22  Medical Capital Holdings, Inc., Medical Capital Corporation, Medical Provider

23  Funding Corporation VI, and their subsidiaries and affiliates (collectively the

24

25

26

27

28

1  "Receivership Entities"), submits herewith the Receiver's Second Report to the

2  Court.

3

4  Dated:  September  8, 2009                    ALLEN MATKINS LECK GAMBLE
                                                  MALLORY & NATSIS LLP
5

6                                                By:
7                                                    MICHAEL R. FARRELL
                                                     Attorneys for Receiver
8                                                    THOMAS A. SEAMAN

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION


SECURITIES AND EXCHANGE COMMISSION

vs.

MEDICAL CAPITAL HOLDINGS, INC;
MEDICAL CAPITAL CORPORATION;
MEDICAL CAPITAL PROVIDER FUNDING CORPORATION VI;
SIDNEY M. FIELD; and JOSEPH LAMPARIELLO


RECEIVER'S SECOND REPORT
For the Honorable David O. Carter

Thomas Seaman, CFA
Thomas Seaman Company
3 Park Plaza, Suite 550
Irvine, California 92614
Tel: (949) 222-0551
Fax: (949) 222-0661
tom@thomasseaman.com

837354.02/LA

-3-

I.    INTRODUCTION ........................................................................................... 4

II.   MATTERS RAISED AT AUGUST 24TH HEARING ............................................. 4

    A.   Accounts Were Not Closed.......................................................................... 4

    B.   Actions Taken to Collect Accounts Receivable and Other Loans .......................... 5

    C.   Retention of Key Personnel ...................................................................... 6

    D.   The Receiver Is Not Liquidating Assets ....................................................... 7

III.  INVENTORY OF KEY ASSETS ...................................................................... 7

IV.   FORENSIC ACCOUNTING STATUS................................................................. 7

V.    RECEIVER'S ACCOUNTING AS OF SEPTEMBER 5, 2009 ................................. 8

**EXHIBITS**

Exhibit A – Medical Capital Receivership Inventory of Significant Assets
Exhibit B – MPFC 6 Sources and Uses From Inception Through July 2009
Exhibit C – Financial Statements for the Receivership Estate Through September 5, 2009

# I.    INTRODUCTION

This report was prepared by Thomas Seaman, Permanent Receiver ("Receiver") for Medical Capital Holdings, Inc. ("MCH"), Medical Capital Corporation ("MCC"), Medical Provider Funding Corporation VI ("MPFC VI"), and their subsidiaries and affiliates (collectively, the "Receivership Entities" or "Medical Capital"). At the hearing on August 24, 2009, the Court ordered that the Receiver submit a further report to address the status of the receivership estate and its assets.[1] The Receiver submits this report per the Court's order.

# II.    MATTERS RAISED AT AUGUST 24TH HEARING

## A.    Accounts Were Not Closed

Defendants Joseph Lampariello and Sidney Field (collectively, "Defendants") assert that the Receiver closed bank accounts belonging to the Receivership Entities, thereby cutting off the ability to receive payments from clients and payors. Defendants' assertion is not accurate.

The Receiver did not close any accounts. In fact, after his appointment, the Receiver promptly confirmed that all accounts that were frozen in accordance with the Court's Order could accept incoming deposits (including all lock box accounts through which collections were made). Under the Court's Order, the Receiver took possession of 136 accounts. However, in one instance, Bank of America initially rejected payment by a borrower entity named Transfac, LLC, a non-accounts receivable borrower. The Receiver immediately remedied the situation, providing Tranfac incoming wiring instructions to the appropriate receivership estate account and funds in the amount of $40,687.50 were received on August 24, 2009. No funds went uncollected as a result.

No funds relating to any other debt or receivable have gone uncollected by the Receiver due to accounts being frozen. The Receiver confirmed that there was only one other borrower, Velocity-Mail.com, which had an arrangement similar to that of Transfac and the Receiver is collecting these funds without interruption. To date, the Receiver has taken possession of or collected approximately $3,348,705.14 for the estate, which can be broken down as follows:

|  |  |
|---|---|
| Cash turned over or seized: | $1,974,389.31 |
| Loan Collections: | $164,687.50 |
| Accounts Receivables Collections: | $167,420.27 |

---

[1]    The Receiver was unable to attend the hearing, as he was addressing time sensitive matters relating to two important receivership estate assets (the Trace radioactive isotope facility in Texas and the NHBC benefits claims manager offices in Arizona).

|                                  |                 |
|----------------------------------|-----------------|
| NHBC Revenue:                    | $1,042,208.06   |
| Total Cash Collected by Receiver: | $3,348,705.14  |

It should be noted that the Receiver does intend to close certain <u>inactive</u> lock box accounts into which receivables payments are no longer being deposited. The Receiver estimates that MCH was paying between $19,000 and $30,000 per month to maintain each of these obsolete accounts. Closing such accounts will provide significant cost savings without any risk of lost payments.

## B.    Actions Taken to Collect Accounts Receivable and Other Loans

All known persons and entities with valid debts to Medical Capital were given notice of the Receiver's appointment. The Receiver has contacted each accounts receivable debtor to confirm notice of the appointment of the Receiver and seek collection of the amounts owing to the Receivership Entities. The Receiver has mailed approximately 1,067 letters to Providers, borrowers, payors, banks and others relating to the collection efforts, and followed up with telephone calls to all known debtors on verified accounts receivable. Several payors have sent letters to the Receiver confirming their obligation, and their understanding of the Receiver's role.

Defendants' assertions regarding the Receiver's activities are inaccurate and not based on fact. The Receiver has maintained the accounts and successfully communicated with Providers and payors.

It should be noted that, in recent years, Medical Capital acted primarily as a lender. As such, the Receiver's primary duty in managing the assets has been and will be to collect and recover money from borrowers. The Receiver has moved expeditiously to collect funds owing to the Receivership Entities. Within days of his August 3rd appointment, the Receiver sent specific notices to insurers and Providers, alerting them to his appointment and advising of his right to collect monies due to Medical Capital. In particular, the Receiver provided notices that any and all diversion of Medical Capital funds was enjoined by this Court.

In addition, the Receiver and his staff have entered into discussions with numerous debtors with significant balances owing to Medical Capital, including IHHI, Parkway Hospital, Valley Healthcare, Spherios, Peoples Community, Concept One Academies, Trace Life Sciences, Mail.com, Crown Plaza Development and New Life Centers.

Finally, as described more fully below, the Receiver retained sufficient key personnel to preserve and collect the receivables and other assets without unduly burdening the receivership estate with administrative expense.

## C.     Retention of Key Personnel

At the time of the Receiver's August 3rd appointment, MCC had not purchased new medical receivables since early May 2009, and had ceased raising funds from investors. Accordingly, many of the MCC employees involved in fund raising, business development, sales and new loan diligence, had nothing to do. In making employment decisions, the Receiver's primary objective was to retain the appropriate employees who could most efficiently assist the Receiver and his staff in collecting outstanding receivables and loans and managing and preserving the other assets.

Upon his appointment, the Receiver interviewed or otherwise evaluated all company personnel at the Tustin office. After interviewing the principals and senior managers of MCC, the Receiver determined that their services would not be required, and he terminated their employment. With respect to the remaining MCC employees, the Receiver retained ten of the former employees who are performing accounts receivable collections, collection of non-accounts receivable debts, accounting, information technology and note holder services. Collectively, these former employees have over 75 years of experience at MCC.

At the time of his initial appointment on July 20, 2009, the Receiver also had discussions with Joe Lampariello. The Receiver also met the former CFO, Alan Meister, MCC's General Counsel, Thomas Fazio and Judy Begley, assistant to Joe Lampariello. The Receiver called Sid Field who declined to speak with the Receiver saying he wanted his counsel on the line and but did not call back.

As to Medical Tracking Services, Inc. ("MediTrak"), located in Las Vegas, Nevada, the Receiver determined that MediTrak's primary function had been the reporting and reconciliation of funds collected rather than the actual collection of the funds. As of the date of the Receiver's appointment, August 3rd, MediTrak had reduced the number of its employees from 19 to approximately 6. The Receiver therefore decided that the limited function MediTrak was providing as of August 3rd could be performed by the former MCC employees in Tustin that he had retained. The Receiver then secured the Las Vegas office of MediTrak, took possession of, and made images of, MediTrak's computers and servers and transferred the functions being performed by MediTrak to the Tustin office.

As to National Health Benefits Corporation ("NHBC"), after interviewing its President, the Receiver determined that the company was a potentially profitable, stand-alone business that was experiencing income growth accompanied by declining costs. Therefore, the Receiver did not terminate any of NHBC's employees.

The Receiver also employed sufficient personnel to preserve and maintain valuable assets. With respect to Trace Life Science, the Receiver retained the staff of 4 necessary to maintain both the facility and the license issued by the Texas Department of State Health Services. As to the Legacy Medical Center in Georgia, on which MPFC IV had foreclosed, the Receiver immediately sent a staff member to the facility and retained

both a full-time maintenance person and a part-time person (as needed) to preserve the facility. Finally, with respect to the 118' yacht owned by an MCH subsidiary, the Receiver retained the boat's captain to maintain the boat until it can be sold.

### D.    The Receiver Is Not Liquidating Assets

Contrary to Defendants' assertions, the Receiver is not liquidating assets of the Receivership Entities. No assets have been liquidated to date. Rather, the Receiver has taken appropriate steps to preserve the value of assets, including, but not limited to, ascertaining the actual interest of the receivership estate in each asset; funding of critical expenses to protect assets from losing value; and consulting with professionals to assist the Receiver in determining the value of the assets.

Given the nature of this business and the perishable, deteriorating and/or unstable nature of certain assets, it will be necessary for the Receiver to move quickly to sell or establish a basis for retaining the assets for a period of time. In doing so, the Receiver will obtain the approval of the Court. For example, the Receiver intends to seek Court approval to engage brokers to sell real property (including the Tustin, CA office building), as well as the yacht. In the case of the building, it is the subject of a foreclosure action. On the other hand, the yacht is costly to maintain and serves no purpose. In addition, the Receiver intends to seek Court approval to sell the Castle Hill retirement facility in Thousand Oaks, California, which was in escrow at the time of the Receiver's appointment.

## III.    INVENTORY OF KEY ASSETS

Exhibit A provides an inventory of some of the largest and most significant assets of the Receivership Entities, together with individual summaries more fully describing each asset, how it was acquired, its status as of the Receiver's appointment on August 3, 2009, and its current status as of September 5, 2009.

## IV.    FORENSIC ACCOUNTING STATUS

The Receiver is analyzing the sources and uses of investor funds to find additional assets and identify potential claims to recover funds for the benefit of investor-victims. The Receiver has completed a Sources and Uses of Funds Analysis for MPFC VI, which is attached hereto as Exhibit B. This analysis indicates that MPFC VI raised $74.4 million from investors, bought assets from earlier MPFC entities in the amount of $41.7 million, has paid investors $3.5 millon in interest, and has returned no principal to investors. Net administrative fees of $24.4 million were paid to MCC.

The Receiver is close to completing similar analyses for the other MPFC entities, however these have not been fully reconciled. While these numbers are preliminary, estimates can now be provided for the total amount raised from investors through the six MPFC entities, the total amount taken in administrative fees net of amounts returned to the entities, and the principal amount owing to investors.

|  | (in $ Billions) |
|---|---|
| Amount Raised by MPFC 1-6 | $1.773 |
| Net Administrative fees taken | $.268 |
| Principal owing to investors | $1.079 |

## V.    <u>RECEIVER'S ACCOUNTING AS OF SEPTEMBER 5, 2009</u>

Exhibit C provides financial statements for the receivership estate through September 5, 2009. An Income and Expense Statement, Balance Sheet and General Ledger are provided. To date, the estate has received funds in the amount of $3,348,705.14 as discussed above. The Receiver disbursed funds in amount of $818,764.26 for operating expenses of the receivership estate. The Receiver is holding funds in the amount of $2,529,940.88. No professional fees have been paid.

Dated: September 7, 2009          Respectfully submitted


                                  _Thomas h. Seaman_
                                  THOMAS A. SEAMAN, as Receiver for
                                  MEDICAL CAPITAL HOLDINGS,
                                  INC., et al.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Exhibit "A"

# EXHIBIT A

## Medical Capital Receivership
## Inventory of Significant Assets

| Asset | Description | (in $ millions)<br>Amount owed<br>to or invested<br>in by MedCap | Exhibit A<br>Page |
|---|---|---|---|
| Acct. Rec. Loans | Accounts receivable loans to medical care providers | 82.4 | 10 |
| Trace Life Sciences | Radiochemical and pharmaceutical company | 28.6 | 12 |
| NHBC | Large employer claims processing manager | n/a | 14 |
| IHHI | Non-performing loans for four hospitals | 81.4 | 15 |
| Legacy Medical Center | Non-operating hospital and medical office bldg in Atlanta | 36.6 | 16 |
| Parkway Hospital | Non-operating hospital in New York | 65.0 | 17 |
| Castle Hill | Fee ownership of an assisted living facility | 25.2 | 18 |
| Perfect Game | Completed film ready for distribution | 18.1 | 19 |
| Home Stretch | 118' yacht in Newport Beach, California | 4.5 | 20 |
| Red Hill, LLC | Tustin, California office building | 7.8 | 21 |
| Valley Health Care | Accounts Receivable | 22.8 | 22 |
| Other Assets | Variety of loans and investments in non-medical ventures | 35.2 | 23 |

## Medical Accounts Receivable

| Medical Capital Stated Value of A/R Accounts | 104 Accounts | $625,332,141.00[2] |
|---|---|---|
| **Verifiable Accounts Receivable** | **42 Accounts** | **$80,637,383.00** |
| –    A/R aged under 180 days | 6 Accounts | 6,114,233.00 |
| –    A/R aged more than 180 days | 39 Accounts | 74,523,150.00 |
| **Non-Existent Accounts Receivable** | **53 Accounts** | **$ 542,894,528.00** |
| –    Accounts that no longer exist | 46 Accounts | 450,987,914.00 |
| –    Accounts with a negative balance | 3 Accounts | 1,597,491.00 |
| –    Accounts with collateral transferred to term loans | 4 Accounts | 90,209,123.33 |
| **Judgments on Accounts Receivable** | **9 Accounts** | **$1,800,230.00** |

> o    The Receiver has identified and contacted all these Providers who are parties to
> an active medical receivable Purchase Agreement.  In each case the Receiver has
> ascertained the status of the Purchase Agreement and payment due thereunder.
> Demand has been made for payments where due and collections are proceding
> using re-hired employees of Medical Capital.

Significant obstacles to collections of accounts receivable exist.

> o    Some Providers are diverting collections in order to survive following MCC's
> cessation of receivables purchases under its Purchase Agreement and several
> Providers are now defunct or insolvent.

> o    Of the 104 medical accounts receivable clients listed on the various NCCR reports
> by Medical Capital, 53 of these accounts no longer exist (totaling $542,894,528).
> It appears these were valid accounts at one time many years ago, but the external
> reporting has been manipulated to leave out the age of the batch.  In some cases,
> the actual amount of the batch has been inflated in MCC's records.  There are no
> MediTrak reports to support such accounts as MediTrak reports either indicate
> that the accounts are closed or do not list the accounts at all.  There are no active
> UCC-1 filings for these accounts.  There have been no collections or advances on
> these accounts for many years.  It is unlikely the Receiver will made significant
> collections on these accounts.

---

[2]    The value of assets in the company's financial records is vastly less than the amounts set forth in
the Net Collateral Coverage Ratio report which formed the basis for payment of Administrative fees by the
MPFC trusts to MCC.

o  MCC may have been collecting receivables it did not fund.  MCC ran out of cash in early May 2009, and therefore stopped lending money and purchaing accounts receivable as required under its Purchase Agreement with Providers.  Several Providers are asserting claims for moneys that MCC collected while in default under its Purchase Agreement.

o  Of the verifiable accounts receivable, many Providers have stale and aged receivables.  Of the 104 accounts listed on the various NCCR reports by Medical Capital, 39 have severely aged receivables.  Of the 39 accounts with aged receivables, 31 report that the newest receivable were purchased between 2002 and 2006, totaling $52,055,679.  Only two of these accounts show any accounts receivables purchased in 2008.  There were no batches purchased in 2009 for any of these 39 accounts.  Thirty-three of the accounts were aged well beyond 180 days prior to their subsequent purchase via InterCompany Transfer.  Given the age of those receivables, it is unclear how much, if any, can be collected on these accounts.  Of the $80,637,383 of real accounts receivable, a mere $6,114,233 are under 180 days old and therefore potentially collectible.

## Trace Life Sciences, Inc.

*Description:*

Trace Life Sciences, Inc. ("Trace") is a manufacturer of radiochemicals and radiopharmaceuticals that employee radioactive isotopes for medical purposes, located in Denton, Texas.

*The Receivership Entities' Interest:*

In November of 2006, MPFC II made a term loan to Trace in the amount of $8.6 million, and made a Line of Credit loan to Trace in the maximum amount of $13.4 million, which loans were subsequently amended to expand the line of credit, among other things. The Receiver believes that there is currently $28.3 million due and owing by Trace.

The loans are secured by real property and improvements in Denton, Texas, the personal property of Trace, various Trace accounts and contracts, a pledge of all stock in Trace, and Trace's intellectual property rights. There are various UCC filings reflecting the security interest in the personal property. There is also a guaranty executed by the former owner and President, Darren Brown, as well as a corporate guaranty executed by the corporate stockholders of Trace.

In September of 2008, following Trace's default under the loan agreements, MPFC III exercised certain proxy rights under the Pledge Agreement, and elected a new slate of directors and officers of Trace and the entities that owned Trace's stock. The new officers of Trace replaced the management team and retained NuView Life Sciences to oversee the operations of Trace. MPFC III also filed actions against Trace in Nevada and Texas based on Trace's defaults.

In April of 2009, Trace suspended production operations to assess potential capital improvements, and reduced the on-site staff accordingly. Staff was further reduced in July of 2009 to a "skeleton crew" of four employees necessary to maintain the facility and the sophisticated equipment therein, and to satisfy conditions for the maintenance of the operating license issued by the Texas Department of State Health Services ("TDSHS"). These employees are highly skilled and two of them hold PhDs. While the facility is not actually producing product, there are significant efforts necessary to maintain the equipment, monitor radioactivity and otherwise preserve the viability of the nuclear accelerators.

*Status as of August 3, 2009:*

As of August 3rd, Trace was significantly in arrears on many of its obligations. It had suspended operations and had no source of revenues. Moreover, Medical Capital had ceased funding operations. The City of Denton, which provided electricity to the facility, had also threatened to turn off the power for non-payment of invoices totaling approximately $175,000. The skeleton crew, which had not been paid since June 15,

2009, was threatening to shut down the facility, and there were significant accounts payable outstanding, including $650,000 in real estate taxes. According to management and the regulators at TDSGS, either the loss of power (which would degrade the nuclear accelerator) or the departure of the crew would have resulted in the decommissioning of the facility at great cost to Trace, estimated to be $5-8 million.

*Current Status:*

Upon his appointment, the Receiver immediately and successfully negotiated with the City of Denton, the TDSHS and the Trace employees to maintain the status quo and to not shut down or decommission the facility. The Receiver evaluated operations at the facility and made critical payments to keep the facility open and the operating license active. The Receiver has visited the facility, met with the employee and developed a plan to maintain the facility. The Receiver is evaluating a business plan prepared by Nu View for recommencing operations at the facility, whose products are scarce and appear to be in demand. The proposed business plan includes new financial partners. The Receiver has also had preliminary discussions with unrelated parties interested in acquiring Trace.

## National Health Benefits Corporation ("NHBC")

*Description:*

NHBC, located in Scottsdale, Arizona, with a satellite office in Georgia, provides claims management for large employer groups, negotiating discounts from health care providers and earning a percentage of the cost savings.

*The Receivership Entitles' Interest*

NHBC is a wholly owned subsidiary of MCH.

*Status as of August 3, 2009*

NHBC had significant revenues but was experiencing a liquidity crises because Medical Capital had been taking NHBC revenues without paying the company's legitimate operating expenses. The July 31 2009 payroll had not been paid, nor had a significant portion of the July 15, 2009 payroll. None of the July 15 payroll taxes have been paid. Health insurance premiums and 401(k) contributions were not paid even though Medical Capital had taken such deductions from employees' paychecks. Key outside contractors had not ben paid since May 2009. Overall there was an accounts payable balance of approximately $50,000.

Several key Provider networks had terminated NHBC's services due to its failure to pay certain fees for extended time periods. The deterioration of its Provider network relationships made it more difficult for NHBC to sell its services. NHBC also owed client fees of approximately $200,000. The client fees represent revenue sharing which is an essential component of attaining and retaining clients.

Coalition America obtained a judgment of $2.7 million against NHBC in a dispute involving unfair trade practices just before the Receiver's appointment.

*Current Status*

The Receiver immediately evalued the value of NHBC and continued its operations. The Receiver determined that NHBC could be a profitable business going forward if certain issues were addressed. The Receiver has paid the unpaid payroll, procured a new health insurance policy for NHBC employees, paid essential accounts payables, made partial payments to Provider groups and reinstituted service from five Providers, and made partial payments to clients to maintain those client relationships. In the Coalition America litigation, the Receiver negotiated a continuance of the time to file a notice of intent to appeal and began settlement discussions with the judgment creditor. Since August 3, 2009, NHBC's revenues have been $1,042,208, of which the Receiver disbursed $577,977 to NHBC for its operating expenses. NHBC has contributed the remainder to the receivership estate.

## Integrated Healthcare Holdings Inc. ("IHHI")

*Description:*

IHHI owns four operating hospitals located in central Orange County, California.

*The Receivership Entities Interest:*

MPFC I, MPFC II and MPFC III made loans to IHHI and its affiliated operating companies pursuant to several credit facilities. All of the credit facilities are secured by essentially the same collateral: the four Orange County hospitals and all of the equipment, accounts and other assets of IHHI and its affiliated operating companies. The first credit facility is an $80 million loan made by MPFC II, comprised of a $45 million real estate term loan and a $35 million non-revolving line of credit. IHHI currently owes $45.3 million on the real estate term loan and $30 million on the non-revolving line of credit. The second credit facility is a $10.7 million term loan made by MPFC III. IHHI currently owes just over $6 million on this second credit facility. The third credit facility is a $50 million revolving line of credit made by MPFC I. Pursuant to an Intercreditor Agreement among MPFC I, MPFC II and MPFC III, the first credit facility has full payment priority over the second credit facility, and the second credit facility has full payment priority over the third credit facility. IHHI alleges MPFC I is in default under the third credit facility by failing to make line of credit advances to IHHI. IHHI further asserts that MPFC I has misappropriated $12 million of IHHI's funds by "oversweeping" IHHI's accounts receivables from a lockbox account. IHHI has a motion pending seeking to be allowed to file a lawsuit against MCC and other Receivership Entities for breach of contract, conversion and other claims.

*Status as of August 3, 2009*

The sum of the amounts owing on the first two credit facilities is $81 million. There is a zero balance due on the third credit facility and IHHI asserts an offset of at least $12 million. The amount listed on MCC's Net Collateral Coverage Ratio reports prepared for purposes of taking administrative fees in $175.2 million.

*Current Status:*

The Receiver is informed that MCC had been marketing the sale of its IHHI debt to potential Wall Street investors. The Receiver has received inquiries from several potential investors interested in acquiring the first $45 million real estate loan portion of the first credit facility. It appears that there is interest in purchase of that portion of the first credit facility for values ranging from $33.5 million to $45 million. In addition, the Receiver has met twice with senior management and the majority shareholder of IHHI regarding a potential sale of all three of the credit facilities and resolution of each parties' claims against the other. The Receiver is preparing a counter-offer to the proposal from IHHI and its majority shareholder. The sale of any or all of these credit facilities will be subject to an overbid procedure and will be subject to this Court's approval.

## Legacy Medical Center

*Description:*

A non-operating hospital, medical office building and 55 acres of land in Atlanta, Georgia.

*The Receivership Entities Interest:*

In 2007, MCC started foreclosure proceedings and ultimately bought the asset free and clear of liens as a credit bid in connection with a sale under 11 U.S.C. § 363. MCC briefly operated the facility at a significant loss, retaining a third party operator and facilities manager. While these figures have not been verified, the Receiver understands that MCC spent $10 million to renovate and operate the facility. The facility failed to attract sufficient business and in January 2009 operations at the hospital ceased.

*Status as of August 3, 2009*

As of August 3, 2009, the facility had been abandoned and was without security. MCC was allegedly in debt to the property management company in exess of $500,000 and the management company had ceased providing services. To make matters worse, MCC had not paid its electric bills and the utility provided a notice of termination of service. There are deferred maintenance issues involving plumbing, the boiler and electric system. Three doctors are occupying three small offices in the medical office building and the Receiver is collecting their rent. Receivership Entities have loaned at least $36.6 million to the hospital and millions more to hold and operate the facility.

*Current Status:*

After his appointment, the Receiver dispatched an agent to Atlanta to secure the facility. The Receiver hired two key employees and reinstated the property management company in order to secure and preserve the asset. The Receiver also met with brokers and confirmed insurance. The Receiver has been given an offer of $5 million which appears to be far too low. The Receiver understands that there is significant interest in reopening the hospital by members of the community where the hospital is located. The Receiver intends to take into account this strong community interest as he considers how to handle this asset. The Receiver continues to investigate the value of the asset and is considering the best means of disposing of it subject to this Court's approval.

## Parkway Hospital

*Description:*

A non-operating hospital located in Queens, New York.

*The Receivership Entities Interest:*

MPFC III.2 and MPFC IV.2 provided Debtor-in-Possession ("DIP") financing to the hospital in the approximate aggregate amount to allow it to exit bankruptcy. The loans were secured by, among other things, real property, stock in the hospital's operating company and a personal guaranty by the company's owner, Dr. Aquino.

*Status as of August 3, 2009*

The loans were in default, with an outstanding balance of approximately $65 million. It appears the hospital did not take the appropriate action to preserve its operating license during the bankruptcy and is not currently licensed to operate. MCC had retained counsel to assist with getting a new Certificate of Need, which is a prerequisite to operate the hospital. The counsel's fees have not been paid.

*Current Status:*

The Receiver has communicated with all interested parties and secured the hospital. The Receiver is currently investigating how best to maximize the value of this asset, including the possibility of either foreclosing on the collateral or taking a deed in lieu of foreclosure. The Receiver is also investigating whether to resume the application process for the necessary regulatory approvals to re-open the hospital. A changing healthcare environment in New York City, where there is now a shortage of hospitals, may prove beneficial to the value of this asset.

## Castle Hill Assisted Living Facility

*Description:*

Retirement/Senior Living facility located in Thousand Oaks, California.

*The Receivership Entities' Interest:*

MPFC II made a loan in the amount of approximately $30 million to LAV Care Corporation for the acquisition of the Castle Hill facility. After LAV Care defaulted on the loan, MPFC II accepted a deed in lieu of foreclosure and created a special purpose entity, Castle Hill Investors, Inc., to hold title to the property.

*Status as of August 3, 2009*

Castle Hills Investors had executed a Purchase and Sale Agreement with West Living, LLC, with a purchase price of $14.4 million. West Living had deposited $500,000 into escrow However, it appears that they could not have closed this sale based on disputed option agreements with a third party.

There is also an operating lease with Autumn Senior Living, Inc., which lease terminates on October 31, 2009. The current buyer intends to engage a new operator.

*Current Status:*

The Receiver is negotiating an Amended and Restated Purchase and Sale Agreement with West Living, LLC, subject to Court approval. As part of this agreement, the Receiver has proposed an overbid procedure to ensure that the highest and best price is obtained. The Receiver will file a motion seeking approval of the sale and relief from 28 U.S.C. § 2001 to allow for a private sale as proposed in the motion.

## **The Perfect Game**

*Description:*

The Perfect Game is a feature film relating to a Little League team from Mexico that won the Little League World Series in 1957.

*The Receivership Entities' Interest:*

The film is owned by The Perfect Game, LLC ("TPG"). MPFC IV owns an approximate 39.3% economic interest in TPG and holds certain priority rights as to distribution of profits. MCH holds 75% of the voting rights (separate from the economic interest held by MPFC IV) in TPG. MPFC IV also made loans to TPG in the approximate total amount of over $18 million, secured by all of TPG's assets, including its rights in the film.

*Status as of August 3, 2009:*

The film was completed in 2008 and attempts were made to distribute it in the summer of 2008, which did not occur. Various efforts to distribute the film thereafter also failed. Continuing efforts to market and distribute the film had been undertaken by Christian Tureaud and David Salzburg, who are affiliated with High Road Entertainment Group, Inc. (an entity in which Medical Capital also holds a stake). As of August 3rd, various entities and individuals claimed an interest in the film, and/or had claims related to the film. In addition, money was needed to make prints and pay for advertising to facilitate domestic distribution. A Mexican company that had certain distribution rights and possessed copies of the film was threatening to unilaterally release the film in Mexico if it were not paid certain amounts it was owed by TPG, which would likely have had a material adverse effect on the value of domestic distribution rights.

*Current Status:*

The Receiver has communicated with the various parties claiming rights in the film and/or attempting to secure its distribution. An investor was located to pay off the Mexican entity and avoid unilateral distribution in Mexico, thereby preserving the value of the domestic distribution rights, in exchange for foreign distribution rights. The investor entity is also attempting to raise the money needed for prints and advertising necessary for domestic distribution. The Receiver has retained a consultant with extensive experience in the production and distribution of independent films to advise him as to all actions necessary to fully exploit the film and maximize the film's profits.

## Home Stretch

*Description:*

A 118' luxury yacht located in Newport Beach, California

*Receivership Entities Interest:*

Corporate Impressions, LLC is a wholly owned subsidiary of MCH that acquired the vessel through a series of transactions and loans involving Edge Capital, Inc.  It appears Medical Capital invested $4.5 million in the vessel.

*Status as of August 3, 2009:*

The crew of three had not been paid for six weeks, and the boat slip rent was not being paid.

*Current Status:*

The Receiver has secured the vessel, confirmed that it is insured, taken steps to renew the insurance, inquired of the Coast Guard as to status of encumbrances, paid the unpaid payroll, laid off two crew members, reduced the Captain's pay, negotiated the slip rent, and located a broker to sell the vessel.  The Receiver recommends immediately listing the vessel for sale, and is preparing a motion for this Court to approve listing of the vessel for sale.

## 15101 Red Hill, Tustin

*Description:*

Office Building and real property located 15101 Red Hill Avenue, Tustin, California

*The Receivership Entities' Interest:*

MCH purchased the 15101 Red Hill Avenue property and created special purpose entity, 15101 Red Hill Holdings, Inc. to hold title to the property. The purchase was financed with a loan from Loan Oak Fund, LLC. 15101 Red Hill Holdings, Inc. leased the property to MCC.

*Status as of August 3, 2009:*

As of August 3, 2009, 15101 Red Hill Holdings, Inc. was in default on the loan from Loan Oak Fund, LLC. Loan Oak Fund recorded a notice of default, commenced a foreclosure action in Orange County Superior Court and obtained an order appointing a receiver on August 3, 2009.

*Current Status:*

The Receiver has discussed a listing of the property with several brokers. The Receiver has also contacted an auctioneer regarding conducting an auction. The Receiver intends to select a broker and then apply for authority to engage the broker and sell the property.

The company is located in space which is at least five times what is required to operate. In fact, Medical Capital only occupied approximately half of the 48,772 square feet available, inexplicably leaving the balance of the space empty.

The Receiver will relocate to a smaller space. In connection with this move and the sale of the building, the Receiver will propose to auction the furniture, fixtures and equipment located in the office building. The sale will also be subject to Court approval.

## Valley Health Care Medical Group

*Description:*

Accounts receivables and loans secured by personal guarantees and other collateral.

*The Receivership Entities' Interest:*

MPFC VI owns non-performing loans in the amount of $22.8 million.

*Status as of August 3, 2009*

As of August 3, 2009, no payments were being made and collections on accounts receivable were being diverted back to Valley.

*Current Status:*

The Receiver, within days of being appointed, notified the payors that it was inappropriate for Valley to be diverting collections. A number of payors have now resumed making payments to the Receiver as a result of the Receiver's letter and follow up calls.

### Other Assets Under Review

### Edge Capital, Inc.

MPFC V made loans to Edge Capital secured by real property and other collateral.  There is an outstanding balance of approximately $23 million.  Prior MCC efforts to collect this debt, as well as possible insider relationships with prior MCC personnel, are being investigated by the Receiver.

### Emark

MPFC VI made a loan to this internet advertising company, which appears to be generating valid receivables.  The Receiver has found evidence that MCC was allowing payments to be made to an account not controlled by Medical Capital.  Subpoenas to banks have been issued, the documents are  expected shortly and the Receiver's investigation into this asset is ongoing.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Exhibit "B"

# EXHIBIT B

## MPFC 6
### Sources and Uses
### From Inception Through July 2009

**Sources**

| | |
|---|---|
| Investor Notes (remaining principal) | $74,410,861 |
| Interest Income | 4,854 |
| A/R Collections | 7,369,338 |
| Administration Fees Reimbursed | 686,000 |
| Proceeds from Intercompany purchase | -- |
| Non A/R receipts – prin & int | -- |
| | |
| Total Sources | $82,471,053 |

**Uses**

| | |
|---|---|
| Trustee Fees | $35,000 |
| Intercompany Purchases | 41,714,514 |
| A/R Purchases | 11,642,964 |
| Administration Fees | 25,065,319 |
| Interest to Investors | 3,491,949 |
| Servicing Fees | 138,905 |
| General Expenses | 7,227 |
| Non A/R Purchases (Loans) | -- |
| Invetors Notes Paid | -- |
| | |
| Total Sources | $82,095,877 |

| | |
|---|---|
| **Ending Balance** | **$375,176** |
| **Bank Balance as of July 31, 2009** | **$375,176** |

837354.02/LA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

# Exhibit "C"

28

# EXHIBIT C

**Financial Statements for the Receivership Estate
Through September 5, 2009**

3:16 PM
09/07/09
Cash Basis

## Medical Capital Holdings, Inc.
### Profit & Loss by Class
#### January 1 through September 7, 2009

| | Homestretch | MCH & MCC | MPFC 1 | MPFC 3 I | MPFC 3 II | MPFC 5 | MPFC 6 | NHBC | Southwest Atlanta | Trace | Unclassified | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | | | | | | | |
| **Income** | | | | | | | | | | | | |
|   Account Receivable Collection | 0.00 | 0.00 | 41.09 | 250.00 | 49,428.63 | 20,000.00 | 93,108.49 | 0.00 | 0.00 | 0.00 | 4,592.06 | 167,420.27 |
|   Loan Collections | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 164,687.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 164,687.50 |
|   NHBC Revenue | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,042,208.06 | 0.00 | 0.00 | 0.00 | 1,042,208.06 |
|   Turnover/Seizure | 0.00 | 108,944.85 | 0.00 | 836,493.82 | 658,973.52 | 369,977.12 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,974,389.31 |
| **Total Income** | 0.00 | 108,944.85 | 41.09 | 836,743.82 | 708,402.15 | 554,664.62 | 93,108.49 | 1,042,208.06 | 0.00 | 0.00 | 4,592.06 | 3,348,705.14 |
| **Expenses** | | | | | | | | | | | | |
|   Bank Service Charges | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 19.99 | 0.00 | 0.00 | 0.00 | 19.99 |
|   Business Analyst Consulting | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 24,185.49 | 0.00 | 0.00 | 0.00 | 24,185.49 |
|   Client fees | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 24,238.60 | 0.00 | 0.00 | 0.00 | 24,238.60 |
|   Home Stretch Other | 100.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00 |
|   Homestretch Crew | 20,357.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 20,357.00 |
|   Homestretch Slip rental | 11,766.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 11,766.00 |
|   Homestretch Utilities | 830.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 830.00 |
|   Network fees | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 178,873.56 | 0.00 | 0.00 | 0.00 | 178,873.56 |
|   Operating Expenses | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 32,530.00 | 0.00 | 0.00 | 0.00 | 32,530.00 |
|   **Payroll Expenses** | | | | | | | | | | | | |
|     401K | 0.00 | 3,001.08 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5,673.55 | 0.00 | 0.00 | 0.00 | 8,674.63 |
|     Medical Insurance | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 17,511.52 | 0.00 | 0.00 | 0.00 | 17,511.52 |
|     **Payroll and Taxes** | | | | | | | | | | | | |
|       MCC | 0.00 | 111,357.91 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 111,357.91 |
|       NHBC | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 278,643.23 | 0.00 | 0.00 | 0.00 | 278,643.23 |
|       Trace | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 60,356.95 | 0.00 | 60,356.95 |
|     **Total Payroll and Taxes** | 0.00 | 111,357.91 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 278,643.23 | 0.00 | 60,356.95 | 0.00 | 450,358.09 |
|   **Total Payroll Expenses** | 0.00 | 114,358.99 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 301,828.30 | 0.00 | 60,356.95 | 0.00 | 476,544.24 |
|   Postage and Delivery | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 49.19 | 0.00 | 0.00 | 0.00 | 49.19 |
|   Receiver's expenses | 288.59 | 1,481.22 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 406.88 | 1,649.14 | 0.00 | 0.00 | 3,825.83 |
|   Rent Expense | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15,665.40 | 0.00 | 0.00 | 0.00 | 15,665.40 |
|   Utilities | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 29,578.96 | 0.00 | 0.00 | 29,578.96 |
| **Total Expense** | 33,341.59 | 115,840.21 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 577,997.41 | 31,228.10 | 60,356.95 | 0.00 | 818,764.26 |
| **Net Ordinary Income** | -33,341.59 | -6,895.36 | 41.09 | 836,743.82 | 708,402.15 | 554,664.62 | 93,108.49 | 464,210.65 | -31,228.10 | -60,356.95 | 4,592.06 | 2,529,940.88 |
| **Net Income** | -33,341.59 | -6,895.36 | 41.09 | 836,743.82 | 708,402.15 | 554,664.62 | 93,108.49 | 464,210.65 | -31,228.10 | -60,356.95 | 4,592.06 | 2,529,940.88 |

Page 1

–26–

Page 1

3:18 PM
09/07/09
Cash Basis

# Medical Capital Holdings, Inc.
## Balance Sheet
### As of September 7, 2009

|  | Sep 7, 09 |
|---|---|
| **ASSETS** | |
| **Current Assets** | |
| **Checking/Savings** | |
| CNB | 101,762.06 |
| Comerica | 24,970.71 |
| NHBC_Bank of America | 160,000.30 |
| WF_Operating | 148,141.15 |
| WF_Payroll | 2,969.20 |
| WF_SP III, Series I | 836,493.82 |
| WF_SP III, Series II | 699,661.02 |
| WF_SP_V | 534,664.62 |
| **Total Checking/Savings** | 2,508,662.88 |
| **Total Current Assets** | 2,508,662.88 |
| **Other Assets** | |
| Utility Security Deposit | 21,278.00 |
| **Total Other Assets** | 21,278.00 |
| **TOTAL ASSETS** | **2,529,940.88** |
| **LIABILITIES & EQUITY** | |
| **Equity** | |
| Net Income | 2,529,940.88 |
| **Total Equity** | 2,529,940.88 |
| **TOTAL LIABILITIES & EQUITY** | **2,529,940.88** |

– 27 –

**Medical Capital Holdings, Inc.**
**General Ledger**
**As of September 7, 2009**

3:20 PM
09/07/09
Accrual Basis

| Type | Date | Num | Name | Memo | Split | Amount | Balance |
|------|------|-----|------|------|-------|--------|---------|
| **CNB** | | | | | | | 0.00 |
| Deposit | 9/4/2009 | | | Deposit | -SPLIT- | 101,762.06 | 101,762.06 |
| **Total CNB** | | | | | | 101,762.06 | 101,762.06 |
| **Comerica** | | | | | | | 24,970.71 |
| **Total Comerica** | | | | | | | 24,970.71 |
| **NHBC_Bank of America** | | | | | | | 8,508.74 |
| Deposit | 9/1/2009 | | | Deposit | NHBC Revenue | 215.91 | 8,724.65 |
| Deposit | 9/1/2009 | | | Deposit | NHBC Revenue | 14,121.88 | 22,846.53 |
| Deposit | 9/1/2009 | | | Deposit | NHBC Revenue | 57,371.23 | 80,217.76 |
| Deposit | 9/2/2009 | | | Deposit | NHBC Revenue | 78,070.12 | 158,287.88 |
| Deposit | 9/3/2009 | | | Deposit | NHBC Revenue | 1,819.61 | 160,107.49 |
| Check | 9/3/2009 | 6049 | San Juan Independent | Pre-receiver p... | Client fees | -107.19 | 160,000.30 |
| **Total NHBC_Bank of America** | | | | | | 151,491.56 | 160,000.30 |
| **WF_Operating** | | | | | | | 411,994.88 |
| Deposit | 9/1/2009 | | | VOID: Deposit | NHBC Revenue | 0.00 | 411,994.88 |
| Transfer | 9/2/2009 | | | NHBC- Payroll... | WF_Payroll | -88,149.01 | 323,845.87 |
| Check | 9/2/2009 | 1090 | VIANT-Beechstreet | Nov 2008 - Ju... | Network fees | -16,956.85 | 306,889.02 |
| Check | 9/2/2009 | 1091 | PPO Next | Nov 2008 - Ju... | Network fees | -5,446.00 | 301,443.02 |
| Check | 9/2/2009 | 1092 | Texas True Choice | Nov 2008 - Ju... | Network fees | -17,893.74 | 283,549.28 |
| Check | 9/2/2009 | 1093 | Interplan | Nov 2008 - Ju... | Network fees | -11,395.39 | 272,153.89 |
| Check | 9/2/2009 | 1094 | Primary Health HPO... | Nov 2008 - Ju... | Network fees | -1,565.77 | 270,588.12 |
| Check | 9/2/2009 | 1095 | Jeffrey M. Davey | Professional ... | Homestretch C... | -3,100.00 | 267,488.12 |
| Check | 9/2/2009 | 1096 | The Mary Conlin Co... | Inv # 32077 | Home Stretch ... | -100.00 | 267,388.12 |
| Check | 9/2/2009 | 1097 | Balboa Manor, LLC | September Sli... | Homestretch Sl... | -6,810.00 | 260,578.12 |
| Check | 9/2/2009 | 1098 | Aames Lock & Safe, ... | Inv # 56845 | Receiver's exp... | -434.25 | 260,143.87 |
| Check | 9/2/2009 | 1099 | Homeland Security S... | Inv # 09-0716... | Receiver's exp... | -960.00 | 259,183.87 |
| Check | 9/2/2009 | 1100 | Thomas Seaman Co... | Expense reim... | Receiver's exp... | -86.97 | 259,096.90 |
| Check | 9/2/2009 | 1101 | Craig Kozma | Expense reim... | -SPLIT- | -2,344.61 | 256,752.29 |
| Transfer | 9/3/2009 | | | Trace & MCH... | WF_Payroll | -99,706.51 | 157,045.78 |
| Check | 9/4/2009 | 1102 | Jeffrey M. Davey | Provisions & ... | Homestretch U... | -230.00 | 156,815.78 |
| Transfer | 9/4/2009 | | | 401 K funding... | WF_Payroll | -8,674.63 | 148,141.15 |
| **Total WF_Operating** | | | | | | -263,853.73 | 148,141.15 |
| **WF_Payroll** | | | | | | | 4,742.00 |
| Transfer | 9/2/2009 | | | NHBC- Payroll... | WF_Operating | 88,149.01 | 92,891.01 |
| Check | 9/2/2009 | Debit | ADP - Payroll Depos... | Payroll tax for ... | NHBC | -25,309.49 | 67,581.52 |
| Transfer | 9/3/2009 | | | Trace & MCH... | WF_Operating | 99,706.51 | 167,288.03 |
| Check | 9/3/2009 | Debit | ADP - Payroll Depos... | Trace & MCH... | MCC | -35,246.20 | 132,041.83 |
| Check | 9/3/2009 | 50001 | John Morris | Payroll for PE ... | NHBC | -7,786.25 | 124,255.58 |
| Check | 9/3/2009 | 50002 | Kevin Glass | Payroll for PE ... | NHBC | -1,991.77 | 122,263.81 |
| Check | 9/3/2009 | 50003 | Steven Wicinski | Payroll for PE ... | NHBC | -3,429.78 | 118,834.03 |
| Check | 9/3/2009 | 50004 | Clearinghouse Atlas | Payroll for PE ... | NHBC | -601.13 | 118,232.90 |
| Check | 9/3/2009 | 50005 | Mark Kopchynski | Payroll for PE ... | NHBC | -2,898.81 | 115,334.09 |
| Check | 9/3/2009 | 50006 | Jie Li | Payroll for PE ... | NHBC | -2,082.74 | 113,251.35 |
| Check | 9/3/2009 | 50007 | Donald Paulsen | Payroll for PE ... | NHBC | -1,586.08 | 111,665.27 |
| Check | 9/3/2009 | 50008 | Philip C Raney | Payroll for PE ... | NHBC | -3,541.69 | 108,123.58 |
| Check | 9/3/2009 | 50009 | Andrei Rosdestvenski | Payroll for PE ... | NHBC | -2,724.24 | 105,399.34 |
| Check | 9/3/2009 | 50010 | Victoria Allen | Payroll for PE ... | NHBC | -984.79 | 104,414.55 |
| Check | 9/3/2009 | 50011 | Amy Atherton | Payroll for PE ... | NHBC | -1,252.99 | 103,161.56 |
| Check | 9/3/2009 | 50012 | Beverly Bumgardner | Payroll for PE ... | NHBC | -1,036.57 | 102,124.99 |
| Check | 9/3/2009 | 50013 | Cathy Cheney | Payroll for PE ... | NHBC | -1,472.97 | 100,652.02 |
| Check | 9/3/2009 | 50014 | Camille Cook | Payroll for PE ... | NHBC | -2,976.25 | 97,675.77 |
| Check | 9/3/2009 | 50015 | Jennice Denton | Payroll for PE ... | NHBC | -866.82 | 96,808.95 |
| Check | 9/3/2009 | 50016 | Maureen M. Dorn | Payroll for PE ... | NHBC | -1,257.03 | 95,551.92 |
| Check | 9/3/2009 | 50017 | Monica Fife | Payroll for PE ... | NHBC | -1,272.89 | 94,279.03 |
| Check | 9/3/2009 | 50018 | Candiece E. Garcia | Payroll for PE ... | NHBC | -1,096.71 | 93,182.32 |
| Check | 9/3/2009 | 50019 | Susan Gaynor | Payroll for PE ... | NHBC | -1,322.43 | 91,859.89 |
| Check | 9/3/2009 | 50020 | Fern Gold | Payroll for PE ... | NHBC | -1,714.16 | 90,145.73 |
| Check | 9/3/2009 | 50021 | Caryn Grad | Payroll for PE ... | NHBC | -792.59 | 89,353.14 |
| Check | 9/3/2009 | 50022 | Melitta Hauser | Payroll for PE ... | NHBC | -2,744.20 | 86,608.94 |
| Check | 9/3/2009 | 50023 | Linda S. Hayes | Payroll for PE ... | NHBC | -1,425.94 | 85,183.00 |
| Check | 9/3/2009 | 50024 | Rosemary Kelly | Payroll for PE ... | NHBC | -1,535.10 | 83,647.90 |
| Check | 9/3/2009 | 50025 | Constance Loker | Payroll for PE ... | NHBC | -2,001.52 | 81,646.38 |
| Check | 9/3/2009 | 50026 | Jill S. Lopatin | Payroll for PE ... | NHBC | -1,219.96 | 80,426.42 |

Page 1

**3:20 PM**

**09/07/09**

**Accrual Basis**

## Medical Capital Holdings, Inc.
## General Ledger
### As of September 7, 2009

| Type | Date | Num | Name | Memo | Split | Amount | Balance |
|------|------|-----|------|------|-------|--------|---------|
| Check | 9/3/2009 | 50027 | Lorraine Martinez | Payroll for PE ... | NHBC | -951.06 | 79,475.36 |
| Check | 9/3/2009 | 50028 | Cathy Nason | Payroll for PE ... | NHBC | -1,027.48 | 78,447.88 |
| Check | 9/3/2009 | 50029 | Terry O'Rielly | Payroll for PE ... | NHBC | -1,867.21 | 76,580.67 |
| Check | 9/3/2009 | 50030 | Bhavani Prasad | Payroll for PE ... | NHBC | -1,119.38 | 75,461.29 |
| Check | 9/3/2009 | 50031 | Amber Sabol | Payroll for PE ... | NHBC | -1,281.09 | 74,180.20 |
| Check | 9/3/2009 | 50032 | Lisa Tsosie | Payroll for PE ... | NHBC | -944.14 | 73,236.06 |
| Check | 9/3/2009 | 50033 | Kathryn M. Wakefield | Payroll for PE ... | NHBC | -1,246.28 | 71,989.78 |
| Check | 9/3/2009 | 50034 | Courtney Marie Whe... | Payroll for PE ... | NHBC | -1,158.45 | 70,831.33 |
| Check | 9/3/2009 | 50035 | Wendy Jo Wilson | Payroll for PE ... | NHBC | -1,206.09 | 69,625.24 |
| Check | 9/3/2009 | 50036 | Deborah A. Wolff | Payroll for PE ... | NHBC | -872.93 | 68,752.31 |
| Check | 9/4/2009 | 1119 | John Hancock USA | Client # 3277... | -SPLIT- | -8,674.63 | 60,077.68 |
| Check | 9/4/2009 | 1120 | Estelita Ledda | Payroll for PE ... | MCC | -1,322.80 | 58,754.88 |
| Check | 9/4/2009 | 20000 | William J. Courtney | Payroll for PE ... | Trace | -3,207.39 | 55,547.49 |
| Check | 9/4/2009 | 20001 | William J. Courtney | Payroll for PE ... | Trace | -2,957.40 | 52,590.09 |
| Check | 9/4/2009 | 20002 | William J. Courtney | Payroll for PE ... | Trace | -2,164.79 | 50,425.30 |
| Check | 9/4/2009 | 20003 | William J. Courtney | Payroll for PE ... | Trace | -2,957.39 | 47,467.91 |
| Check | 9/4/2009 | 20004 | Ian M. Horn | Payroll for PE ... | Trace | -4,180.99 | 43,286.92 |
| Check | 9/4/2009 | 20005 | Ian M. Horn | Payroll for PE ... | Trace | -3,931.00 | 39,355.92 |
| Check | 9/4/2009 | 20006 | Ian M. Horn | Payroll for PE ... | Trace | -2,653.65 | 36,702.27 |
| Check | 9/4/2009 | 20007 | Ian M. Horn | Payroll for PE ... | Trace | -3,931.00 | 32,771.27 |
| Check | 9/4/2009 | 20008 | Kerry D. Sowder | Payroll for PE ... | Trace | -2,576.95 | 30,194.32 |
| Check | 9/4/2009 | 20009 | Kerry D. Sowder | Payroll for PE ... | Trace | -2,326.96 | 27,867.36 |
| Check | 9/4/2009 | 20010 | Kerry D. Sowder | Payroll for PE ... | Trace | -1,403.91 | 26,463.45 |
| Check | 9/4/2009 | 20011 | Kerry D. Sowder | Payroll for PE ... | Trace | -2,326.95 | 24,136.50 |
| Check | 9/4/2009 | 20012 | Leslie E. White | Payroll for PE ... | Trace | -2,669.53 | 21,466.97 |
| Check | 9/4/2009 | 20013 | Leslie E. White | Payroll for PE ... | Trace | -2,419.54 | 19,047.43 |
| Check | 9/4/2009 | 20014 | Leslie E. White | Payroll for PE ... | Trace | -1,589.07 | 17,458.36 |
| Check | 9/4/2009 | 20015 | Leslie E. White | Payroll for PE ... | Trace | -2,419.53 | 15,038.83 |
| Check | 9/4/2009 | 20016 | Mabel Barnes | Payroll for PE ... | MCC | -2,444.79 | 12,594.04 |
| Check | 9/4/2009 | 20017 | Howard Castner | Payroll for PE ... | MCC | -3,842.62 | 8,751.42 |
| Check | 9/4/2009 | 20018 | Kim Pham | Payroll for PE ... | MCC | -2,100.51 | 6,650.91 |
| Check | 9/4/2009 | 20019 | Susan Shenouda | Payroll for PE ... | MCC | -1,777.85 | 4,873.06 |
| Check | 9/4/2009 | 20020 | Tracey R. Marcyan | Payroll for PE ... | MCC | -3,690.48 | 1,182.58 |
| Check | 9/4/2009 | 20021 | Thomas Cofer | Payroll for PE ... | MCC | -840.41 | 342.17 |
| Check | 9/4/2009 | 20022 | Thomas Cofer | Payroll for PE ... | MCC | -1,840.41 | -1,498.24 |
| Check | 9/4/2009 | 20023 | Brooks Viceral | Payroll for PE ... | MCC | -1,572.20 | -3,070.44 |
| Check | 9/4/2009 | 20024 | Diane Miller | Payroll for PE ... | MCC | -1,368.03 | -4,438.47 |
| Check | 9/4/2009 | 20025 | Roxana Y. Valle | Payroll for PE ... | MCC | -1,266.96 | -5,705.43 |
| Transfer | 9/4/2009 | | | 401 K funding... | WF_Operating | 8,674.63 | 2,969.20 |
| **Total WF_Payroll** | | | | | | **-1,772.80** | **2,969.20** |
| **WF_SP I** | | | | | | | **0.00** |
| Total WF_SP I | | | | | | | 0.00 |
| **WF_SP II** | | | | | | | **0.00** |
| Total WF_SP II | | | | | | | 0.00 |
| **WF_SP III, Series I** | | | | | | | **836,493.82** |
| Total WF_SP III, Series I | | | | | | | 836,493.82 |
| **WF_SP III, Series II** | | | | | | | **699,661.02** |
| Total WF_SP III, Series II | | | | | | | 699,661.02 |
| **WF_SP IV, Series I** | | | | | | | **0.00** |
| Total WF_SP IV, Series I | | | | | | | 0.00 |
| **WF_SP IV, Series II** | | | | | | | **0.00** |
| Total WF_SP IV, Series II | | | | | | | 0.00 |
| **WF_SP_V** | | | | | | | **534,664.62** |
| Total WF_SP_V | | | | | | | 534,664.62 |
| **WF_SP_VI** | | | | | | | **0.00** |
| Total WF_SP_VI | | | | | | | 0.00 |

**Page 2**

**3:20 PM**

**Medical Capital Holdings, Inc.**

**09/07/09**

**General Ledger**

**Accrual Basis**

**As of September 7, 2009**

| Type | Date | Num | Name | Memo | Split | Amount | Balance |
|------|------|-----|------|------|-------|--------|---------|
| **Accumulated Depreciation** | | | | | | | 0.00 |
| Total Accumulated Depreciation | | | | | | | 0.00 |
| **Furniture and Equipment** | | | | | | | 0.00 |
| Total Furniture and Equipment | | | | | | | 0.00 |
| **Utility Security Deposit** | | | | | | | 21,278.00 |
| Total Utility Security Deposit | | | | | | | 21,278.00 |
| **Payroll Liabilities** | | | | | | | 0.00 |
| Total Payroll Liabilities | | | | | | | 0.00 |
| **Capital Stock** | | | | | | | 0.00 |
| Total Capital Stock | | | | | | | 0.00 |
| **Dividends Paid** | | | | | | | 0.00 |
| Total Dividends Paid | | | | | | | 0.00 |
| **Opening Balance Equity** | | | | | | | 0.00 |
| Total Opening Balance Equity | | | | | | | 0.00 |
| **Retained Earnings** | | | | | | | 0.00 |
| Total Retained Earnings | | | | | | | 0.00 |
| **Account Receivable Collection** | | | | | | | -65,658.21 |
| Deposit | 9/4/2009 | | CNB | Deposit | CNB | -6,800.97 | -72,459.18 |
| Deposit | 9/4/2009 | | | Deposit | CNB | -1,852.60 | -74,311.78 |
| Deposit | 9/4/2009 | | | Deposit | CNB | -93,108.49 | -167,420.27 |
| Total Account Receivable Collection | | | | | | -101,762.06 | -167,420.27 |
| **Commission Income** | | | | | | | 0.00 |
| Total Commission Income | | | | | | | 0.00 |
| **Loan Collections** | | | | | | | -164,687.50 |
| Total Loan Collections | | | | | | | -164,687.50 |
| **NHBC Revenue** | | | | | | | -890,609.31 |
| Deposit | 9/1/2009 | 6426 | NHBC | Transfer of fu... | WF_Operating | 0.00 | -890,609.31 |
| Deposit | 9/1/2009 | | | Deposit | NHBC_Bank of... | -215.91 | -890,825.22 |
| Deposit | 9/1/2009 | | | Deposit | NHBC_Bank of... | -14,121.88 | -904,947.10 |
| Deposit | 9/1/2009 | | | Deposit | NHBC_Bank of... | -57,371.23 | -962,318.33 |
| Deposit | 9/2/2009 | | | Deposit | NHBC_Bank of... | -78,070.12 | -1,040,388.45 |
| Deposit | 9/3/2009 | | | Deposit | NHBC_Bank of... | -1,819.61 | -1,042,208.06 |
| Total NHBC Revenue | | | | | | -151,598.75 | -1,042,208.06 |
| **Services Income** | | | | | | | 0.00 |
| Total Services Income | | | | | | | 0.00 |
| **Turnover/Seizure** | | | | | | | -1,974,389.31 |
| Total Turnover/Seizure | | | | | | | -1,974,389.31 |
| **Advertising and Promotion** | | | | | | | 0.00 |
| Total Advertising and Promotion | | | | | | | 0.00 |
| **Automobile Expense** | | | | | | | 0.00 |
| Total Automobile Expense | | | | | | | 0.00 |
| **Bank Service Charges** | | | | | | | 19.99 |
| Total Bank Service Charges | | | | | | | 19.99 |
| **Business Analyst Consulting** | | | | | | | 24,185.49 |
| Total Business Analyst Consulting | | | | | | | 24,185.49 |
| **Business Licenses and Permits** | | | | | | | 0.00 |
| Total Business Licenses and Permits | | | | | | | 0.00 |

Page 3

3:20 PM

09/07/09

Accrual Basis

# Medical Capital Holdings, Inc.
## General Ledger
### As of September 7, 2009

| Type | Date | Num | Name | Memo | Split | Amount | Balance |
|------|------|-----|------|------|-------|--------|---------|
| **Client fees** | | | | | | | 24,131.41 |
| Check | 9/3/2009 | 6049 | San Juan Independent | Pre-receiver p... | NHBC_Bank of... | 107.19 | 24,238.60 |
| **Total Client fees** | | | | | | 107.19 | 24,238.60 |
| **Computer and Internet Expenses** | | | | | | | 0.00 |
| Total Computer and Internet Expenses | | | | | | | 0.00 |
| **Continuing Education** | | | | | | | 0.00 |
| Total Continuing Education | | | | | | | 0.00 |
| **Depreciation Expense** | | | | | | | 0.00 |
| Total Depreciation Expense | | | | | | | 0.00 |
| **Dues and Subscriptions** | | | | | | | 0.00 |
| Total Dues and Subscriptions | | | | | | | 0.00 |
| **Home Stretch Other** | | | | | | | 0.00 |
| Check | 9/2/2009 | 1096 | The Mary Conlin Co... | Inv # 32077; ... | WF_Operating | 100.00 | 100.00 |
| **Total Home Stretch Other** | | | | | | 100.00 | 100.00 |
| **Homestretch Crew** | | | | | | | 17,257.00 |
| Check | 9/2/2009 | 1095 | Jeffrey M. Davey | Services 08/1... | WF_Operating | 3,100.00 | 20,357.00 |
| **Total Homestretch Crew** | | | | | | 3,100.00 | 20,357.00 |
| **Homestretch Slip rental** | | | | | | | 4,956.00 |
| Check | 9/2/2009 | 1097 | Balboa Manor, LLC | September Sli... | WF_Operating | 6,810.00 | 11,766.00 |
| **Total Homestretch Slip rental** | | | | | | 6,810.00 | 11,766.00 |
| **Homestretch Utilities** | | | | | | | 600.00 |
| Check | 9/4/2009 | 1102 | Jeffrey M. Davey | Provisions & ... | WF_Operating | 230.00 | 830.00 |
| **Total Homestretch Utilities** | | | | | | 230.00 | 830.00 |
| **Insurance Expense** | | | | | | | 0.00 |
| Total Insurance Expense | | | | | | | 0.00 |
| **Interest Expense** | | | | | | | 0.00 |
| Total Interest Expense | | | | | | | 0.00 |
| **Meals and Entertainment** | | | | | | | 0.00 |
| Total Meals and Entertainment | | | | | | | 0.00 |
| **Network fees** | | | | | | | 125,615.81 |
| Check | 9/2/2009 | 1090 | VIANT-Beechstreet | Nov 2008 - Ju... | WF_Operating | 16,956.85 | 142,572.66 |
| Check | 9/2/2009 | 1091 | PPO Next | Nov 2008 - Ju... | WF_Operating | 5,446.00 | 148,018.66 |
| Check | 9/2/2009 | 1092 | Texas True Choice | Nov 2008 - Ju... | WF_Operating | 17,893.74 | 165,912.40 |
| Check | 9/2/2009 | 1093 | Interplan | Nov 2008 - Ju... | WF_Operating | 11,395.39 | 177,307.79 |
| Check | 9/2/2009 | 1094 | Primary Health HPO... | Nov 2008 - Ju... | WF_Operating | 1,565.77 | 178,873.56 |
| **Total Network fees** | | | | | | 53,257.75 | 178,873.56 |
| **Office Supplies** | | | | | | | 0.00 |
| Total Office Supplies | | | | | | | 0.00 |
| **Operating Expenses** | | | | | | | 32,530.00 |
| Total Operating Expenses | | | | | | | 32,530.00 |
| **Payroll Expenses** | | | | | | | 278,241.29 |
| **401K** | | | | | | | 0.00 |
| Check | 9/4/2009 | 1119 | John Hancock USA | Client # 3277... | WF_Payroll | 3,001.08 | 3,001.08 |
| Check | 9/4/2009 | 1119 | John Hancock USA | Client # 3277... | WF_Payroll | 5,673.55 | 8,674.63 |
| Total 401K | | | | | | 8,674.63 | 8,674.63 |
| **Medical Capital Payroll taxes** | | | | | | | 0.00 |
| Total Medical Capital Payroll taxes | | | | | | | 0.00 |
| **Medical Insurance** | | | | | | | 17,511.52 |
| Total Medical Insurance | | | | | | | 17,511.52 |

**Page 4**

3:20 PM

09/07/09

Accrual Basis

## Medical Capital Holdings, Inc.
## General Ledger
### As of September 7, 2009

| Type | Date | Num | Name | Memo | Split | Amount | Balance |
|------|------|-----|------|------|-------|--------|---------|
| **Payroll and Taxes** | | | | | | | 260,729.77 |
| **MCC** | | | | | | | 54,044.65 |
| Check | 9/3/2009 | Debit | ADP - Payroll Depos... | Trace & MCH... | WF_Payroll | 35,246.20 | 89,290.85 |
| Check | 9/4/2009 | 1120 | Estelita Ledda | Payroll for PE ... | WF_Payroll | 1,322.80 | 90,613.65 |
| Check | 9/4/2009 | 20016 | Mabel Barnes | Payroll for PE ... | WF_Payroll | 2,444.79 | 93,058.44 |
| Check | 9/4/2009 | 20017 | Howard Castner | Payroll for PE ... | WF_Payroll | 3,842.62 | 96,901.06 |
| Check | 9/4/2009 | 20018 | Kim Pham | Payroll for PE ... | WF_Payroll | 2,100.51 | 99,001.57 |
| Check | 9/4/2009 | 20019 | Susan Shenouda | Payroll for PE ... | WF_Payroll | 1,777.85 | 100,779.42 |
| Check | 9/4/2009 | 20020 | Tracey R. Marcyan | Payroll for PE ... | WF_Payroll | 3,690.48 | 104,469.90 |
| Check | 9/4/2009 | 20021 | Thomas Cofer | Payroll for PE ... | WF_Payroll | 840.41 | 105,310.31 |
| Check | 9/4/2009 | 20022 | Thomas Cofer | Payroll for PE ... | WF_Payroll | 1,840.41 | 107,150.72 |
| Check | 9/4/2009 | 20023 | Brooks Viceral | Payroll for PE ... | WF_Payroll | 1,572.20 | 108,722.92 |
| Check | 9/4/2009 | 20024 | Diane Miller | Payroll for PE ... | WF_Payroll | 1,368.03 | 110,090.95 |
| Check | 9/4/2009 | 20025 | Roxana Y. Valle | Payroll for PE ... | WF_Payroll | 1,266.96 | 111,357.91 |
| **Total MCC** | | | | | | 57,313.26 | 111,357.91 |
| **NHBC** | | | | | | | 190,044.22 |
| Check | 9/2/2009 | Debit | ADP - Payroll Depos... | Payroll tax for ... | WF_Payroll | 25,309.49 | 215,353.71 |
| Check | 9/3/2009 | 50001 | John Morris | Payroll for PE ... | WF_Payroll | 7,786.25 | 223,139.96 |
| Check | 9/3/2009 | 50002 | Kevin Glass | Payroll for PE ... | WF_Payroll | 1,991.77 | 225,131.73 |
| Check | 9/3/2009 | 50003 | Steven Wicinski | Payroll for PE ... | WF_Payroll | 3,429.78 | 228,561.51 |
| Check | 9/3/2009 | 50004 | Clearinghouse Atlas | Payroll for PE ... | WF_Payroll | 601.13 | 229,162.64 |
| Check | 9/3/2009 | 50005 | Mark Kopchynski | Payroll for PE ... | WF_Payroll | 2,898.81 | 232,061.45 |
| Check | 9/3/2009 | 50006 | Jie Li | Payroll for PE ... | WF_Payroll | 2,082.74 | 234,144.19 |
| Check | 9/3/2009 | 50007 | Donald Paulsen | Payroll for PE ... | WF_Payroll | 1,586.08 | 235,730.27 |
| Check | 9/3/2009 | 50008 | Philip C Raney | Payroll for PE ... | WF_Payroll | 3,541.69 | 239,271.96 |
| Check | 9/3/2009 | 50009 | Andrei Rosdestvenski | Payroll for PE ... | WF_Payroll | 2,724.24 | 241,996.20 |
| Check | 9/3/2009 | 50010 | Victoria Allen | Payroll for PE ... | WF_Payroll | 984.79 | 242,980.99 |
| Check | 9/3/2009 | 50011 | Amy Atherton | Payroll for PE ... | WF_Payroll | 1,252.99 | 244,233.98 |
| Check | 9/3/2009 | 50012 | Beverly Bumgardner | Payroll for PE ... | WF_Payroll | 1,036.57 | 245,270.55 |
| Check | 9/3/2009 | 50013 | Cathy Cheney | Payroll for PE ... | WF_Payroll | 1,472.97 | 246,743.52 |
| Check | 9/3/2009 | 50014 | Camille Cook | Payroll for PE ... | WF_Payroll | 2,976.25 | 249,719.77 |
| Check | 9/3/2009 | 50015 | Jennice Denton | Payroll for PE ... | WF_Payroll | 866.82 | 250,586.59 |
| Check | 9/3/2009 | 50016 | Maureen M. Dorn | Payroll for PE ... | WF_Payroll | 1,257.03 | 251,843.62 |
| Check | 9/3/2009 | 50017 | Monica Fife | Payroll for PE ... | WF_Payroll | 1,272.89 | 253,116.51 |
| Check | 9/3/2009 | 50018 | Candiece E. Garcia | Payroll for PE ... | WF_Payroll | 1,096.71 | 254,213.22 |
| Check | 9/3/2009 | 50019 | Susan Gaynor | Payroll for PE ... | WF_Payroll | 1,322.43 | 255,535.65 |
| Check | 9/3/2009 | 50020 | Fern Gold | Payroll for PE ... | WF_Payroll | 1,714.16 | 257,249.81 |
| Check | 9/3/2009 | 50021 | Caryn Grad | Payroll for PE ... | WF_Payroll | 792.59 | 258,042.40 |
| Check | 9/3/2009 | 50022 | Melitta Hauser | Payroll for PE ... | WF_Payroll | 2,744.20 | 260,786.60 |
| Check | 9/3/2009 | 50023 | Linda S. Hayes | Payroll for PE ... | WF_Payroll | 1,425.94 | 262,212.54 |
| Check | 9/3/2009 | 50024 | Rosemary Kelly | Payroll for PE ... | WF_Payroll | 1,535.10 | 263,747.64 |
| Check | 9/3/2009 | 50025 | Constance Loker | Payroll for PE ... | WF_Payroll | 2,001.52 | 265,749.16 |
| Check | 9/3/2009 | 50026 | Jill S. Lopatin | Payroll for PE ... | WF_Payroll | 1,219.96 | 266,969.12 |
| Check | 9/3/2009 | 50027 | Lorraine Martinez | Payroll for PE ... | WF_Payroll | 951.06 | 267,920.18 |
| Check | 9/3/2009 | 50028 | Cathy Nason | Payroll for PE ... | WF_Payroll | 1,027.48 | 268,947.66 |
| Check | 9/3/2009 | 50029 | Terry O'Rielly | Payroll for PE ... | WF_Payroll | 1,867.21 | 270,814.87 |
| Check | 9/3/2009 | 50030 | Bhavani Prasad | Payroll for PE ... | WF_Payroll | 1,119.38 | 271,934.25 |
| Check | 9/3/2009 | 50031 | Amber Sabol | Payroll for PE ... | WF_Payroll | 1,281.09 | 273,215.34 |
| Check | 9/3/2009 | 50032 | Lisa Tsosie | Payroll for PE ... | WF_Payroll | 944.14 | 274,159.48 |
| Check | 9/3/2009 | 50033 | Kathryn M. Wakefield | Payroll for PE ... | WF_Payroll | 1,246.28 | 275,405.76 |
| Check | 9/3/2009 | 50034 | Courtney Marie Whe... | Payroll for PE ... | WF_Payroll | 1,158.45 | 276,564.21 |
| Check | 9/3/2009 | 50035 | Wendy Jo Wilson | Payroll for PE ... | WF_Payroll | 1,206.09 | 277,770.30 |
| Check | 9/3/2009 | 50036 | Deborah A. Wolff | Payroll for PE ... | WF_Payroll | 872.93 | 278,643.23 |
| **Total NHBC** | | | | | | 88,599.01 | 278,643.23 |

3:20 PM

09/07/09

Accrual Basis

## Medical Capital Holdings, Inc.
## General Ledger
### As of September 7, 2009

| Type | Date | Num | Name | Memo | Split | Amount | Balance |
|------|------|-----|------|------|-------|--------|---------|
| **Trace** | | | | | | | 16,640.90 |
| Check | 9/4/2009 | 20000 | William J. Courtney | Payroll for PE ... | WF_Payroll | 3,207.39 | 19,848.29 |
| Check | 9/4/2009 | 20001 | William J. Courtney | Payroll for PE ... | WF_Payroll | 2,957.40 | 22,805.69 |
| Check | 9/4/2009 | 20002 | William J. Courtney | Payroll for PE ... | WF_Payroll | 2,164.79 | 24,970.48 |
| Check | 9/4/2009 | 20003 | William J. Courtney | Payroll for PE ... | WF_Payroll | 2,957.39 | 27,927.87 |
| Check | 9/4/2009 | 20004 | Ian M. Horn | Payroll for PE ... | WF_Payroll | 4,180.99 | 32,108.86 |
| Check | 9/4/2009 | 20005 | Ian M. Horn | Payroll for PE ... | WF_Payroll | 3,931.00 | 36,039.86 |
| Check | 9/4/2009 | 20006 | Ian M. Horn | Payroll for PE ... | WF_Payroll | 2,653.65 | 38,693.51 |
| Check | 9/4/2009 | 20007 | Ian M. Horn | Payroll for PE ... | WF_Payroll | 3,931.00 | 42,624.51 |
| Check | 9/4/2009 | 20008 | Kerry D. Sowder | Payroll for PE ... | WF_Payroll | 2,576.95 | 45,201.46 |
| Check | 9/4/2009 | 20009 | Kerry D. Sowder | Payroll for PE ... | WF_Payroll | 2,326.96 | 47,528.42 |
| Check | 9/4/2009 | 20010 | Kerry D. Sowder | Payroll for PE ... | WF_Payroll | 1,403.91 | 48,932.33 |
| Check | 9/4/2009 | 20011 | Kerry D. Sowder | Payroll for PE ... | WF_Payroll | 2,326.95 | 51,259.28 |
| Check | 9/4/2009 | 20012 | Leslie E. White | Payroll for PE ... | WF_Payroll | 2,669.53 | 53,928.81 |
| Check | 9/4/2009 | 20013 | Leslie E. White | Payroll for PE ... | WF_Payroll | 2,419.54 | 56,348.35 |
| Check | 9/4/2009 | 20014 | Leslie E. White | Payroll for PE ... | WF_Payroll | 1,589.07 | 57,937.42 |
| Check | 9/4/2009 | 20015 | Leslie E. White | Payroll for PE ... | WF_Payroll | 2,419.53 | 60,356.95 |
| Total Trace | | | | | | 43,716.05 | 60,356.95 |
| **Payroll and Taxes - Other** | | | | | | | 0.00 |
| Total Payroll and Taxes - Other | | | | | | | 0.00 |
| Total Payroll and Taxes | | | | | | 189,628.32 | 450,358.09 |
| **Payroll Expenses - Other** | | | | | | | 0.00 |
| Total Payroll Expenses - Other | | | | | | | 0.00 |
| Total Payroll Expenses | | | | | | 198,302.95 | 476,544.24 |
| **Postage and Delivery** | | | | | | | 49.19 |
| Total Postage and Delivery | | | | | | | 49.19 |
| **Printing and Reproduction** | | | | | | | 0.00 |
| Total Printing and Reproduction | | | | | | | 0.00 |
| **Professional Fees** | | | | | | | 0.00 |
| Total Professional Fees | | | | | | | 0.00 |
| **Receiver's expenses** | | | | | | | 0.00 |
| Check | 9/2/2009 | 1098 | Aames Lock & Safe, ... | Inv # 56845; ... | WF_Operating | 434.25 | 434.25 |
| Check | 9/2/2009 | 1099 | Homeland Security S... | Inv # 09-0716... | WF_Operating | 960.00 | 1,394.25 |
| Check | 9/2/2009 | 1100 | Thomas Seaman Co... | Expense reim... | WF_Operating | 86.97 | 1,481.22 |
| Check | 9/2/2009 | 1101 | Craig Kozma | Expense reim... | WF_Operating | 1,649.14 | 3,130.36 |
| Check | 9/2/2009 | 1101 | Craig Kozma | Expense reim... | WF_Operating | 267.94 | 3,398.30 |
| Check | 9/2/2009 | 1101 | Craig Kozma | Expense reim... | WF_Operating | 20.65 | 3,418.95 |
| Check | 9/2/2009 | 1101 | Craig Kozma | Expense reim... | WF_Operating | 31.88 | 3,450.83 |
| Check | 9/2/2009 | 1101 | Craig Kozma | Expense reim... | WF_Operating | 375.00 | 3,825.83 |
| Total Receiver's expenses | | | | | | 3,825.83 | 3,825.83 |
| **Rent Expense** | | | | | | | 15,865.40 |
| Total Rent Expense | | | | | | | 15,865.40 |
| **Telephone Expense** | | | | | | | 0.00 |
| Total Telephone Expense | | | | | | | 0.00 |
| **Travel Expense** | | | | | | | 0.00 |
| Total Travel Expense | | | | | | | 0.00 |
| **Utilities** | | | | | | | 29,578.96 |
| Total Utilities | | | | | | | 29,578.96 |
| **Ask My Accountant** | | | | | | | 0.00 |
| Total Ask My Accountant | | | | | | | 0.00 |

**Page 6**

3:20 PM

09/07/09

Accrual Basis

# Medical Capital Holdings, Inc.
## General Ledger
### As of September 7, 2009

| Type | Date | Num | Name | Memo | Split | Amount | Balance |
|------|------|-----|------|------|-------|--------|---------|
| No accnt | | | | | | | 0.00 |
| Total no accnt | | | | | | | 0.00 |
| **TOTAL** | | | | | | **0.00** | **0.00** |