# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

O

### CIVIL MINUTES – GENERAL

Case No. SACV 09–0818 DOC (RNBx)　　　　　　　　　　　　　　Date: July 1, 2014

Title: SECURITIES AND EXCHANGE COMMISSION V. MEDICAL CAPITAL HOLDINGS, ET AL.

---

PRESENT:　　THE HONORABLE DAVID O. CARTER, JUDGE

　　　　Julie Barrera　　　　　　　　　　　　　　　　Not Present
　　　Courtroom Clerk　　　　　　　　　　　　　　Court Reporter

ATTORNEYS PRESENT FOR　　　　　　ATTORNEYS PRESENT FOR
　　　　PLAINTIFF:　　　　　　　　　　　　　　　　DEFENDANT:

　　　None Present　　　　　　　　　　　　　　　　None Present

---

**PROCEEDINGS (IN CHAMBERS):　ORDER GRANTING MOTION FOR LIEN PRIORITY [1010]**

　　Before the Court is Inamax Medical Staffing, Inc.'s ("Inamax") Motion for Lien Priority (Dkt. 1010). Inamax seeks priority over the liens of Medical Provider Financial Corporation IV ("MPFC-IV") and The Bank of New York Mellon ("BNYM") with respect to the proceeds from the sale of real estate owned by Georgia Medical Provider Financial Corporation ("GMPFC"). Having considered Inamax's Motion for Lien Priority, the Receiver's Opposition (Dkt. 1048), and Inamax's Reply (Dkt. 1053), the Court GRANTS Inamax's Motion for Lien Priority.

## I. BACKGROUND

　　On January 11, 2008, Inamax and GMPFC entered into a written contract for staffing services. Motion for Lien Priority 3. Inamax performed its obligations under the contract, but GMPFC failed to pay for all of the services rendered. *Id*. On January 21, 2009, GMPFC sent a letter to Inamax acknowledging its indebtedness. Fountain Decl., Ex. B. Inamax filed a lawsuit against GMPFC and obtained a default judgment on July 8, 2009. *Id.*, Ex. C.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 09–0818 DOC (RNBx)                                Date: July 1, 2014
                                                                                                         Page 2

      On July 13, 2009, before the default judgment was recorded, GMPFC granted MPFC-IV a security interest in its real estate. *Id.*, Ex. D. The Deed provided that the security interest was given to "further secure" GMPFC's obligation under a $19.71 million loan given by MPFC-IV to GMPFC on August 28, 2007. Mot. for Lien Priority 3–4. The Deed stated that ten dollars was given as consideration by MPFC-IV. *Id.* at 4.

      Immediately thereafter, also on July 13, 2009, MPFC-IV assigned the security interest to BNYM, trustee for the Series II Noteholders. *Id.* The Assignment similarly indicated that it was "to further secure obligations to the Series II Noteholders under the Note Agreement." *Id.* A payment of ten dollars was stated as consideration. *Id.*

      On August 6, 2009, when GMPFC could no longer appeal the default judgment against it, Inamax filed a general lien against all of GMPFC's property. *Id.* On April 12, 2013, GMPFC's property was sold for approximately $5 million. Opp'n at 1; Reply at 4. The validity and priority of the liens on the property transferred to the proceeds of the sale. Opp'n at 1.

      Inamax requests that the Court grant it lien priority over MPFC-IV and BNYM as to the proceeds of the property sale. MLP at 4. Inamax acknowledges that the liens of MPFC-IV and BNYM were filed before Inamax's lien. *Id.* However, Inamax maintains that it should have lien priority because MPFC-IV and BNYM obtained the liens in violation of Georgia law prohibiting fraud on creditors. *Id.* Thomas A. Seaman ("Receiver"), the Court-appointed permanent receiver in this case, opposes Inamax's motion.

## II. ANALYSIS

### A. Was the transfer of GMPFC's security interest fraudulent as to Inamax under O.C.G.A. §18-2-75(b)?

Section 18-2-75(b) provides:

> A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

O.C.G.A. §18-2-75(b).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 09–0818 DOC (RNBx)                          Date: July 1, 2014
                                                                                                 Page 3

       Inamax's claim arose at the latest on July 8, 2009, when it obtained a default judgment for money owed under its contract with GMPFC. Mot. for Lien Priority at 3. This was before the transfer of GMPFC's security interest on July 13, 2009. *Id.* Additionally, the transfer was made to an insider for an antecedent debt—the $19.71 million loan owed to MPFC-IV. Opp'n at 3. Because O.C.G.A. § 18-2-71(7) provides a non-exhaustive list of insiders, "the types of entities that may be insiders is broader than the entities and relationships specifically identified." *In re Moskowitz*, 10-73348-WLH, 2011 WL 6176210, at *4 (Bankr. N.D. Ga. Nov. 29, 2011).

       "To determine whether a non-statutory insider relationship exists, the Eleventh Circuit considers two factors: the closeness of the relationship between the creditor and the debtor; and whether the transaction between the creditor and the debtor was conducted at arm's length." *Id.* Factors relevant in determining the closeness of the relationship between the creditor and debtor include:

> whether the parties maintained 'frequent' contact; testimony that demonstrated a close relationship; whether the parties had a personal friendship; whether the creditor had the ability to coerce the debtor to enter into transactions not in the debtor's interest; whether the parties shared the same office space; whether the creditor had actual control over the debtor; whether the parties were involved in a joint venture to share profits.

*Id*. at *5. As Inamax points out, the Receiver does not dispute that MPFC-IV is an insider, presumably because it clearly qualifies as either a statutory or non-statutory insider. Mot. for Lien Priority at 5; Reply at 2.

       Instead, the Receiver argues that the "real" transferee of the security interest was BNYM, a non-insider, and that MPFC-IV was a mere "conduit." Opp'n at 2. In determining whether a recipient of a transfer is the "initial transferee," the Eleventh Circuit has adopted a "control" or "conduit" test. *In re Pony Exp. Delivery Servs., Inc.*, 440 F.3d 1296, 1300 (11th Cir. 2006). "Under this test, a recipient of an avoidable transfer is an initial transferee only if they exercise legal control over the assets received, such that they have the right to use the assets for their own purposes, and not if they merely served as a conduit for assets that were under the actual control of the debtor-transferor or the real initial transferee." *Id.*

       *Whitacre Sunbelt* is analogous to this case. *See In re Whitacre Sunbelt, Inc.*, 200 B.R. 422, 426 (N.D. Ga. 1996). In *Whitacre Sunbelt*, the debtor owed a creditor over $300,000 in unpaid invoices and over $900,000 in future commitments. *Id*. at 424. To pay off some of this debt, the debtor issued a check for $325,000 payable to David Whitacre, an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 09–0818 DOC (RNBx)                                     Date: July 1, 2014
                                                                                                                 Page 4

insider of the debtor. *Id*. The same day, Whitacre exchanged this check for another $325,000 check payable to the creditor. *Id*. The debtor subsequently filed for bankruptcy. *Id*. at 423. The trustee brought suit, contending, *inter alia*, that the creditor was the "initial transferee" and Whitacre was a mere "conduit." *Id*. at 425. To support this theory, the trustee submitted an affidavit of Whitacre indicating that during the transaction, it was always his intent to forward the funds to the creditor. *Id*. Based on this evidence, the trustee contended that Whitacre did not receive the $325,000 check "for his personal account" and, thus, was a mere conduit. *Id*. The court disagreed with the trustee and emphasized that the check was made payable to Whitacre and he directly received it. *Id*. at 426. The court used the plain, dictionary meaning to define an initial transferee as "the entity who received the transfer in question directly from the debtor." *Id*. In making this distinction, the court emphasized the difference between a "one-step" and "two-step" transaction.

> In a one-step transaction, the debtor's payment is made directly to the insider's creditor. The creditor is the initial transferee, and the insider is the entity for whose benefit the transfer is made. In a two-step transaction, the debtor gives a check to the insider, who then uses the funds to pay his own creditor. In the two-step transaction, the insider is the initial transferee and his creditor is the subsequent transferee.

*Id*. The court concluded that the transfer was a two-step transaction, with Whitacre as the insider and initial transferee and the creditor as the subsequent transferee. *Id*.

Inamax has the stronger position on this issue. In characterizing the insider as the initial transferee, the court in *Whitacre Sunbelt* emphasized that the debtor made the check payable to the insider and delivered it directly to him. It was immaterial that the insider intended to immediately forward the funds to the creditor. Similar reasoning applies here. The Deed was given directly to MPFC-IV and explicitly listed it as the grantee. As evidenced by the Deed to Secure Debt, MPFC-IV had legal control over the security interest it obtained, however brief that time may have been. Fountain Decl., Ex. D. The assignment to BNYM occurred shortly thereafter, but not simultaneously, as Receiver suggests. Opp'n at 2. In addition, whether one has exercised legal control over an asset is not determined by how quickly one chooses to assign that asset (itself an exercise of legal control).

Finally, GMPFC was insolvent at the time of the transfer. Section 18-2-72(b) provides: "A debtor who is generally not paying his or her debts as they become due is presumed to be insolvent." O.C.G.A. § 18-2-72(b). Because GMPFC was not paying its

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No. SACV 09–0818 DOC (RNBx)                                                      Date: July 1, 2014
                                                                                                            Page 5

debts as they were due (as evidenced by its letter acknowledging indebtedness), it is presumed to have been insolvent at the time that it transferred a security interest to MPFC-IV. The transfer occurred just several days after Inamax was awarded a default judgment against MPFC-IV, strengthening this inference. The Receiver has offered no evidence to rebut this presumption. The Court also finds that, as an insider, MPFC-IV would have had reasonable cause to believe GMPFC was insolvent, given the close relationship between the entities. *See also Anand v. Nat'l Republic Bank of Chicago*, 239 B.R. 511, 518 (N.D. Ill. 1999) ("[D]ebtors generally do not collateralize an antecedent debt unless they are in default, and under pressure from the creditor to provide security for the loan."); *cf. In re Moskowitz*, 10-73348-WLH, 2011 WL 6176210, at *13 (Bankr. N.D. Ga. Nov. 29, 2011) ("A transferee does not act in good faith if he has sufficient knowledge to place him on inquiry notice of the debtor's possible insolvency.").

Thus, the Court finds that under § 18-2-75(b), GMPFC's transfer of a security interest to MPFC-IV was fraudulent.

### B. Was the transfer fraudulent under O.C.G.A. § 18-2-75(a) and § 18-2-74(a)(2)?

Section 18-2-75(a) provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

O.C.G.A. § 18-2-75(a). The key difference between §18-2-75(a) and § 18-2-75(b), discussed above, is that the debtor-transferor must have *received* a reasonably equivalent value from the transferee in exchange for the interest transferred. If not, the transfer is fraudulent to a creditor with a pre-existing claim. The debtor also need not be insolvent at the time—if the transfer causes the debtor to become insolvent, that is sufficient. Section 18-2-74(a)(2) similarly provides that the debtor must have received "reasonably equivalent value in exchange for the transfer." O.C.G.A. § 18-2-74(a)(2).

Inamax argues that the only value received by GMPFC was the consideration recited in the Deed in the nominal amount of ten dollars. Mot. for Lien Priority at 7;

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 09–0818 DOC (RNBx)                          Date: July 1, 2014
                                                                                                  Page 6

Fountain Decl., Ex. D. The Receiver argues that GMPFC received reasonably equivalent value because the transfer secured an antecedent debt. Opp'n at 3.

       Under § 18-2-73(a), "Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied." O.C.G.A. §18-2-73(a). This section is analogous to § 548(d)(2)(A) of the Bankruptcy Code and seems nonsensical on its face. *Kipperman v. Onex Corp.*, 411 B.R. 805, 828 (N.D. Ga. 2009); *See also Anand v. Nat'l Republic Bank of Chicago*, 239 B.R. 511, 518 n.5 (N.D. Ill. 1999) ("[A] debtor that secures or pays an antecedent debt is deemed to receive reasonably equivalent value. At first glance, that result seems illogical. The debtor receives nothing tangible by securing or paying its debts; rather, it gives away tangible collateral or cash."). However, a security interest transferred on account of an antecedent debt clearly constitutes reasonably equivalent value under §18-2-73(a) and case law construing that provision. *In re Northlake Foods, Inc.*, 483 B.R. 247, 253 (M.D. Fla. 2012) *aff'd*, 715 F.3d 1251 (11th Cir. 2013). Inamax attempts to draw a distinction, arguing that the Receiver has confused "value" with "reasonably equivalent value." Reply at 4. However, "[b]y definition, a security interest is pegged to the value of the secured assets; a high degree of equivalence between the two values is, therefore, a safe assumption." *Anand*, 239 B.R. at 518 ; *see also* Unif. Fraudulent Transfer Act § 3 cmt. 3 (1984) ("[A] transfer for security is ordinarily for a reasonably equivalent value notwithstanding a discrepancy between the value of the asset transferred and the debt secured, since the amount of the debt is the measure of the value of the interest in the asset that is transferred."). Thus, Inamax has failed to offer sufficient evidence that GMPFC did not receive reasonably equivalent value in exchange for transfer of the security interest. Accordingly, the transfer was not fraudulent under § 18-2-75(a) and § 18-2-74(a)(2).

### C. Was the transfer fraudulent under § 18-2-74(a)(1)?

       Under § 18-2-74(a)(1), a transfer is fraudulent if the debtor made the transfer "with actual intent to hinder, delay or defraud any creditor of the debtor." O.C.G.A. § 18-2-74(a)(1). Section 18-2-74(b) provides:

> In determining actual intent . . . consideration may be given, among other factors, to whether:
> (1) The transfer or obligation was to an insider;
> (2) The debtor retained possession or control of the property transferred after the transfer;
> (3) The transfer or obligation was disclosed or concealed;

Case 8:09-cv-00818-DOC-RNB Document 1187 Filed 07/01/14 Page 7 of 7 Page ID #:27539

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 09–0818 DOC (RNBx)            Date: July 1, 2014
                                                                                          Page 7

(4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
(5) The transfer was of substantially all the debtor's assets;
(6) The debtor absconded;
(7) The debtor removed or concealed assets;
(8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
(9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
(10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and
(11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

O.C.G.A. § 18-2-74(b). Here, of the eleven listed, factors (1), (2), (4), (5), (9), and (10) suggest that the transfer was actually fraudulent. As previously discussed, MPFC-IV was an insider and presumed to have been insolvent. GMPFC had also been sued shortly prior to the transfer, and the interest encumbered GMPFC's most substantial asset.

       The Receiver argues that GMPFC had no actual intent to hinder, delay or defraud Inamax because it was merely preferring certain creditors over Inamax. Opp'n at 3. Although a debtor *may* prefer one creditor over another under Georgia law, this right is not absolute. O.C.G.A. § 18-2-40. "The right . . . is subject to the qualification that a conveyance for that purpose must not be tainted with any intention to hinder, delay, or defraud others, such conveyance being judged by the intention with which it is made and accepted, and not by its consideration or effect." *Williams v. Russell*, 82 Ga. App. 529, 531 (1950). Thus, because these factors suggest that the transfer of the security interest was intended to defraud Inamax, the Court finds that the transfer was fraudulent under § 18-2-74(a)(1).

## III.     DISPOSITION

       For the reasons explained above, the Court GRANTS Inamax's Motion for Lien Priority.

       The Clerk shall serve this minute order on the parties.