DAVID R. ZARO (BAR NO. 124334)
MICHAEL R. FARRELL (BAR NO. 173831)
EDWARD G. FATES (BAR NO. 227809)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
515 South Figueroa Street, Ninth Floor
Los Angeles, California 90071-3309
Phone:  (213) 622-5555
Fax:  (213) 620-8816
E-Mail:  dzaro@allenmatkins.com
         mfarrell@allenmatkins.com
         tfates@allenmatkins.com

Attorneys for Receiver
THOMAS A. SEAMAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>              Plaintiff,<br><br>      v.<br><br>MEDICAL CAPITAL HOLDINGS, INC.; MEDICAL CAPITAL CORPORATION; MEDICAL PROVIDER FUNDING CORPORATION VI; SIDNEY M. FIELD; and JOSEPH J. LAMPARIELLO,<br><br>              Defendants. | Case No. SA CV09-0818 DOC (RNBx)<br><br>RECEIVER'S SIXTY-THIRD REPORT TO THE COURT |

Thomas A. Seaman ("Receiver"), the court-appointed Permanent Receiver for

Medical Capital Holdings, Inc., Medical Capital Corporation, Medical Provider

Funding Corporation VI, and their subsidiaries and affiliates (collectively the

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1000454.01/LA

-1-

Receiver's Sixty-Third
Report to the Court

1 "Receivership Entities"), submits herewith the Receiver's Sixty Third Report to the

2 Court.

3 Dated:  October 10, 2014                         ALLEN MATKINS LECK GAMBLE
4                                                                  MALLORY & NATSIS LLP

5

6                                                                  By: */s/ Michael R. Farrell*
7                                                                       Michael R. Farrell
                                                                         Attorneys for Receiver
8                                                                       THOMAS A. SEAMAN

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION


SECURITIES AND EXCHANGE COMMISSION

vs.

MEDICAL CAPITAL HOLDINGS, INC.;
MEDICAL CAPITAL CORPORATION;
MEDICAL CAPITAL PROVIDER FUNDING CORPORATION VI;
SIDNEY M. FIELD; and JOSEPH LAMPARIELLO


RECEIVER'S SIXTY-THIRD REPORT
For the Honorable David O. Carter

Thomas Seaman, CFA
Thomas Seaman Company
3 Park Plaza, Suite 550
Irvine, California 92614
Tel: (949) 222-0551
Fax: (949) 222-0661
tom@thomasseaman.com

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................... 5

II.    SUMMARY OF RECEIVER'S ACTIONS ......................................... 5

III.   INVENTORY OF KEY ASSETS ...................................................... 8

IV.    RECEIVER'S ACCOUNTING AS OF SEPTEMBER 30, 2014 ........................ 8

## <u>EXHIBITS</u>

Exhibit A – Medical Capital Receivership Inventory of Significant Assets
Exhibit B – Financial Statements for the Receivership Estate through September 30, 2014

## I.      INTRODUCTION

This sixty-third report was prepared by Thomas Seaman, Permanent Receiver ("Receiver") for Medical Capital Holdings, Inc. ("MCH"), Medical Capital Corporation ("MCC"), Medical Provider Funding Corporation VI ("MPFC VI"), and their subsidiaries and affiliates (collectively, the "Receivership Entities," "Medical Capital" or "MedCap").  At the hearing on September 8, 2009, the Court ordered that the Receiver submit monthly reports, on or before the 10th day of each month, to address the status of the receivership estate and its assets. The Receiver submits this report per the Court's order.

## II.      SUMMARY OF RECEIVER'S ACTIONS

During the preceding month, the Receiver continued to administer a high volume of inquiries regarding the first interim distribution to claimants which was made in February 2014. The Receiver also worked to recover funds from Medical Capital's assets, including collection efforts on various loan and other debt obligations owed by Medical Capital's borrowers and marketing and sale of the remaining assets.  The Receiver's actions more specifically include the following:

- During September, 2014, the Receiver collected $7,343.86 which is comprised of accounts receivable collections of $1,050.00, income tax refunds of $3793.86 and interest income of $81.01.  Since the inception of the case through September 30, 2014, the Receiver has collected $176,423,270.92, which is comprised of the following sources:

  | | | |
  |---|---|---:|
  | o | Accounts Receivable collections | $ 2,670,922.60 |
  | o | Loan payments | $ 15,002,013.43 |
  | o | NHBC revenue | $ 20,787,479.75 |
  | o | Viva Vision Revenue | $ 1,147,361.49 |
  | o | Perfect Game revenue | $ 1,393,662.91 |
  | o | Insurance proceeds | $ 201,404.38 |
  | o | Rental income | $ 561,519.34 |
  | o | Asset sales | $ 115,840,807.69 |
  | o | Settlement proceeds | $ 1,981,572.50 |
  | o | Turnover /seizure of bank accounts | $ 4,550,029.73 |
  | o | Income tax returns | $ 11,580,994.29 |
  | o | Property tax refunds | $ 501,184.58 |
  | o | Interest income | $ 204,318.23 |

- The Receiver and his team continue to pursue collection of debts from various borrowers. Most of the loans are impaired or otherwise non-performing.

- The Lavipharm loan remains in default and the Receiver continues to explore alternatives for the disposition of the Lavipharm assets, including foreclosure.

- The Receivership Entities own 12,700,000 shares of Single Touch Interactive Systems and the Receiver is evaluating disposition strategies.

- Pursuant to authority previously granted by the Court, the Receiver filed a complaint on May 2, 2011 against the firm of Sedgwick LLP, former counsel to various Medical Capital entities, for $200,000,000 in damages arising out of the prior representation. After significant motion practice relating to prior complaints, the Receiver filed his Third Amended Complaint on July 30, 2013, and Sedgwick answered the complaint on August 15, 2013. The Court issued a scheduling order on December 4, 2013 setting the matter for a jury trial on March 3, 2015. Per the order, the discovery cut-off was September 25, 2014, however some depositions have not yet been completed.

- The Receiver was also granted Court approval to bring an action against other former counsel for Medical Capital, which matter was pending in private arbitration and being prosecuted on a contingent fee basis. The parties have reached an agreement to resolve the matter subject to Court approval. Papers seeking the appropriate approvals have been filed with the Court.

- As previously reported, the Receiver conducted a forensic accounting of the sources and uses of all Medical Capital funds. There were over twenty billion dollars of transactions in 258 separate bank accounts to account for, covering the period from November 2003 through the time of the Receiver's appointment. Over 15,000 bank statements were input and reconciled. The Receiver filed his Forensic Accounting Report in December, 2011. The accounting is organized in a relational database and allows the Receiver to account for and identify assets and recipients of ill-gotten gains for the purpose of recovering funds for the benefit of the receivership estate. A summary level sources and uses funds analysis excerpted from the forensic accounting follows.

- **Summary Sources and Uses of Funds**

|  |  | (in $ millions) |
|---|---|---:|
| • | Amount raised from note holders | 1,760.5 |
| • | Interest income | 8.2 |
| • | Total Cash In | 1,768.7 |
| • | Use of Funds: |  |
| • | Principal returned to note holders | 682.9 |
| • | Administrative Fees paid to MCC | 329.3 |
| • | Administrative Fees recycled to the MPFCs | (62.2) |
| • | Interest paid to note holders | 309.8 |
| • | Money lost on lending and investing activity | 298.6 |
| • | Cash paid to pre MPFC money raising entities | 186.3 |
| • | Payments to or on behalf of defendants | 12.1 |
| • | Servicing Fees | 4.8 |
| • | Operating expenses and miscellaneous | 2.4 |
| • | Commissions | 1.2 |
| • | Trustee fees | .6 |
| • | Sub-total | 1,765.8 |
| • | Ending Cash Balance | 2.9 |

## III.   INVENTORY OF KEY ASSETS

Exhibit A provides an inventory of some of the largest and most significant assets of the Receivership Entities, together with individual summaries more fully describing each asset. The summaries included in the Receiver's prior report will remain in each report until disposition of the asset and updates will be provided as appropriate. It should be noted that the Receiver's investigation is continuing, and that this Report should be considered preliminary and subject to change.

## IV.   RECEIVER'S ACCOUNTING AS OF SEPTEMBER 30, 2014

Exhibit B provides financial statements for the receivership estate through September 30, 2014. An Income and Expense Statement, Balance Sheet and General Ledger are provided. To date, the estate has received funds in the amount of $176,414,317.94, including interest income of $204,150.91. The Receiver has disbursed funds in the amount of $169,830,733.47, including $117,822,447.77 to claimants and $52,598,424.81 for operating expenses of Receivership Entities and expenses of administering the receivership estate. The cash being held by the Receiver is $5,993,663.47 as of September 30, 2014.

Dated:  October 10, 2014                   Respectfully submitted


                                           THOMAS A. SEAMAN, as Receiver for
                                           MEDICAL CAPITAL HOLDINGS, INC.

# EXHIBIT A

## Medical Capital Receivership
## Inventory of Significant Assets

| Asset | Description | (in $ millions) Amount owed to or invested in by MedCap | Exhibit A Page |
|-------|-------------|---------|------|
| Acct. Rec. Loans | Accounts receivable loans to medical care providers | 82.4 | 10 |
| Parkway Hospital | Non-operating hospital in New York | 76.0 | 12 |
| Perfect Game | Completed film | 18.1 | 16 |
| Other Assets | Variety of loans and investments in non-medical ventures | | 21 |

## Medical Accounts Receivable

| Medical Capital Stated Value of A/R Accounts | 104 Accounts | $625,332,141.00[1] |
|---|---|---|
| **Verifiable Accounts Receivable** | **42 Accounts** | **$80,637,383.00** |
| –   A/R aged under 180 days | 6 Accounts | 6,114,233.00 |
| –   A/R aged more than 180 days | 39 Accounts | 74,523,150.00 |
| **Non-Existent Accounts Receivable** | **53 Accounts** | **$ 542,894,528.00** |
| –   Accounts that no longer exist | 46 Accounts | 450,987,914.00 |
| –   Accounts with a negative balance | 3 Accounts | 1,597,491.00 |
| –   Accounts with collateral transferred to term loans | 4 Accounts | 90,209,123.33 |
| **Judgments on Accounts Receivable** | **9 Accounts** | **$1,800,230.00** |

*Status as of September 8, 2009:*

o   The Receiver has identified and contacted all of the Providers who are parties to an active medical receivable Purchase Agreement.  In each case the Receiver has ascertained the status of the Purchase Agreement and payments due thereunder.  Demand has been made for payments where due and collections are proceeding using re-hired employees of Medical Capital.

Significant obstacles to collections of accounts receivable exist.

o   Some Providers are diverting collections in order to survive following MedCap's cessation of receivables purchases under its Purchase Agreement and several Providers are now defunct or insolvent.

o   Of the 104 medical accounts receivable clients listed on the various NCCR reports by Medical Capital, 53 of these accounts (totaling $542,894,528) are not viable or no longer exist.  In other words, it appears these 53 accounts may have been valid accounts at one time many years ago, but this is no longer the case.  The Receiver has identified numerous instances where MedCap manipulated the external reporting to leave out the age of the batch of receivables, which obfuscated the value of same.  In some cases, the actual amount of the batch has been inflated in MedCap's records.  There are no MediTrak reports to support such accounts as MediTrak reports either indicate that the accounts are closed or do not list the accounts at all.  There are no active UCC-1 filings for these accounts.  There have been no collections or advances on these accounts for

---

[1]      The value of assets in the company's financial records is vastly less than the amounts set forth in the Net Collateral Coverage Ratio report which formed the basis for payment of Administrative fees by the MPFC trusts to MCC.

many years.  It is unlikely the Receiver will make significant collections on these accounts.

o   MCC may have been collecting receivables it did not fund.  MCC ran out of cash in early May 2009, and therefore stopped lending money and purchasing accounts receivable as required under its Purchase Agreements with Providers.  Several Providers are asserting claims for moneys that MCC collected while in default under Purchase Agreements.

o   Of the verifiable accounts receivable, many Providers have stale and aged receivables.  Of the 104 accounts listed on the various NCCR reports by Medical Capital, 39 have severely aged receivables.  Of the 39 accounts with aged receivables, 31 report that the newest receivables were purchased between 2002 and 2006, totaling $52,055,679.  Only two of these accounts show any accounts receivable purchased in 2008.  There were no batches purchased in 2009 for any of these 39 accounts.  Thirty-three of the accounts were aged well beyond 180 days prior to their subsequent purchase via InterCompany Transfer.  Given the age of those receivables, it is unclear how much, if any, can be collected on these accounts.  Of the $80,637,383 of real accounts receivable, a mere $6,114,233 are under 180 days old and therefore potentially collectible.

## Parkway Hospital

*Description:*

A non-operating hospital located in Queens, New York.

*The Receivership Entities Interest:*

MPFC III.2 and MPFC IV.2 provided Debtor-in-Possession ("DIP") financing to the hospital to allow it to exit bankruptcy and additional loans and lines of credit for operating capital and to acquire an ambulance company post-bankruptcy. The loans were secured by, among other things, real property, stock in the hospital's operating company and a personal guaranty by the company's owner, Dr. Aquino. The total loans and lines of credit extended to Parkway Hospital and Dr. Aquino totaled over $65 million.

*Status as of August 3, 2009*

The loans were in default, with an outstanding balance, including interest, of approximately $76 million. The hospital ceased operating in November 2008, upon the expiration of its operating license, pursuant to the recommendation of the Berger Commission and implementation by the New York State Department of Health ("DOH"), under a plan to streamline capacity and resources of the New York State healthcare system. Prior to the Receivership, MedCap had retained counsel to assist with getting a new Certificate of Need, which is a prerequisite to operate the hospital. The counsel's fees had not been paid.

*Status as of September 8, 2009:*

The Receiver had communicated with all interested parties and secured the hospital. The Receiver was investigating how best to maximize the value of this asset, including the possibility of either foreclosing on the collateral or taking a deed in lieu of foreclosure. The Receiver was also investigating whether to resume the application process for the necessary regulatory approvals to re-open the hospital.

*Status as of October 9, 2009:*

The Receiver confirmed that the collateral is insured. The Receiver was in discussions with representatives of the borrower who has filed suit in U.S. District Court seeking a preliminary injunction to force the State of New York Department of Health to restore Parkway Hospital's operating certificate. The Receiver reviewed Parkway's pleadings and considered intervening in the action, and considered other means of assisting the hospital in its efforts to obtain a new Certificate of Need. Obtaining the certificate would increase the likelihood the loan will be repaid. Alternatively, the value of the hospital would be maximized if foreclosure becomes necessary. The Receiver was also in the process of hiring New York counsel for a potential foreclosure action in the event such action was deemed appropriate.

*Status as of November 9, 2009:*

Borrower's motion for injunctive relief was denied by the U.S. District Court; however, Parkway has informed the Receiver that it intends to renew the motion based on newly discovered evidence.  The Receiver has retained New York counsel to commence a foreclosure action in the event Parkway is unsuccessful in its renewed motion for preliminary injunction or an acceptable proposal for workout of the loans is not received.

*Status as of December 10, 2009:*

The foreclosure action was proceeding.

*Status as of January 11, 2010:*

The Receiver was investigating sale of the note and was in discussions with one potential buyer.  The Receiver's counsel was working through complications with respect to foreclosure of the property.

*Status as of April 12, 2010:*

The Receiver continued to engage in discussions for the sale of MedCap's interest in Parkway, while simultaneously pursuing foreclosure of the real property.

*Status as of June 10, 2010:*

The Receiver was working with the trustee to obtain the necessary documentation to proceed with foreclosure.  The Receiver visited the property and took steps to maintain appropriate insurance on this asset.  The Receiver anticipated commencing foreclosure within the next 30-60 days.

*Status as of October 11, 2010:*

The Receiver's team continued to investigate and address title and bankruptcy issues that have prevented foreclosure proceedings from going forward, and expected foreclosure to be commenced shortly.  The Receiver received and was considering a proposal for a discounted loan payoff, and engaged in discussions with third parties as to the potential sale of MedCap's interest in Parkway.

*Status as of November 10, 2010:*

The Receiver's counsel filed appropriate papers in the pertinent bankruptcy actions seeking relief from stay to proceed with foreclosure.  Court action was expected in December.

*Status as of December 10, 2010:*

The bankruptcy court granted relief from stay, and foreclosure proceedings were to commence shortly.

*Status as of March 10, 2011:*

The foreclosure complaint was filed.  The Receiver continued discussions with potential purchasers of the loans or property.

*Status as of April 11, 2011:*

In the foreclosure action, the Receiver filed motions to dismiss and/or strike counterclaims filed by Parkway Acquisition.  As to the potential sale of the loans, the Receiver selected a stalking horse buyer and expected to enter into a Letter of Intent in the near future at a proposed sales price of $5,050,000.

*Status as of May 10, 2011:*

The Receiver entered into a Letter of Intent with the stalking horse buyer.  The Receiver negotiated a settlement with Century Ambulance concerning a deposit of MedCap funds made by Dr. Aquino for the purchase of licenses.  The Receiver expected to seek Court approval of the settlement, which would net $168,000 to the receivership estate, shortly.   The Receiver also filed an action in Nevada against Dr. Aquino on April 14, 2011.

*Status as of July 10, 2011:*

A new stalking horse buyer has been selected and has executed a Letter of Intent.  The Receiver expects to seek Court approval of the sale in the coming weeks.  The Court approved the Receiver's settlement concerning Century Ambulance, and the net proceeds should be received shortly.

*Status as of September 12, 2011:*

Proceeds of $168,000 were received as to the settlement with Century Ambulance.

*Status as of October 11, 2011:*

Due to delays caused by the prospective buyer, a Purchase and Sale Agreement has not yet been executed.  The Receiver continues discussions with the prospective buyer and other interested parties.

*Status as of January 10, 2012:*

The Receiver identified another buyer and a Purchase and Sale Agreement (subject to Court approval) was being negotiated at a purchase price of $6.2 with no due diligence period and a non-refundable deposit of $1 million due upon execution of the agreement.

*Status as of February 10, 2012:*

The Purchase and Sale Agreement has been completed and executed.  The Receiver has filed a motion for an order approving the sale, set to be heard on March 5, 2012, as well as an ex parte application for approval of overbid procedures.

*Status as of April 10, 2012*:

An overbid in the amount of $6.5 million was received, and there was no further bidding.  At the hearing on March 5, 2012, the Court approved the sale of the Parkway Hospital note to the overbidder.  An Amended Order approving the sale was entered on March 7, 2012.  The sale is expected to close within the next sixty days.

*Status as of March 11, 2013:*

The sale transaction closed on May 8, 2012, with the remaining $5.39 million of the purchase price deposited with the Receiver.  Dr. Aquino, against whom the Receiver obtained a default judgment in the amount of $26,000,000, declared bankruptcy on April 16, 2012.

*Status as of April 10, 2013:*

In the bankruptcy of related entity Capitol Health, a hearing was set for April 12, 2013 on a distribution motion.  The Receiver expected to receive a distribution of funds if the motion is granted.

*Current Status:*

In mid-April 2013, the Receiver received distributions from the Capitol Health bankruptcy estate totaling approximately $271,000.  One additional distribution is expected sometime in 2014.

## The Perfect Game

*Description:*

The Perfect Game is a feature film relating to a Little League team from Mexico that won the Little League World Series in 1957.

*The Receivership Entities' Interest:*

The film is owned by The Perfect Game, LLC ("TPG").  MPFC IV owns an approximate 39.3% economic interest in TPG and holds certain priority rights as to distribution of profits.  MCH holds 75% of the voting rights (separate from the economic interest held by MPFC IV) in TPG. MPFC IV also made loans to TPG in the approximate total amount of over $18 million, secured by all of TPG's assets, including its rights in the film.

*Status as of August 3, 2009:*

The film was completed in 2008 and attempts were made to distribute it in the summer of 2008, which did not occur.  Various efforts to distribute the film thereafter also failed.  Continuing efforts to market and distribute the film had been undertaken by Christian Tureaud and David Salzburg, who are affiliated with High Road Entertainment Group, Inc. (an entity in which Medical Capital also holds a stake).  As of August 3rd, various entities and individuals claimed an interest in the film, and/or had claims related to the film.  In addition, money was needed to make prints and pay for advertising to facilitate domestic distribution.  A Mexican company that had certain distribution rights and possessed copies of the film was threatening to unilaterally release the film in Mexico if it was not paid certain amounts owed by TPG, which would likely have had a material adverse effect on the value of domestic distribution rights.

*Status as of September 8, 2009:*

The Receiver had communicated with the various parties claiming rights in the film and/or attempting to secure its distribution.  An investor was located to pay off the Mexican entity and avoid unilateral distribution in Mexico, thereby preserving the value of the domestic distribution rights, in exchange for foreign distribution rights.  The investor entity was also attempting to raise the money needed for prints and advertising necessary for domestic distribution.  The Receiver retained a consultant with extensive experience in the production and distribution of independent films to advise him as to all actions necessary to fully exploit the film and maximize the film's profits.

*Status as of October 9, 2009:*

The Receiver's team engaged in various discussions concerning exploitation of the film going forward.  The Receiver retained two individuals previously involved in the production of the film to provide continuing services for the film, including completion of production (i.e. finalizing prints, music, soundtrack, etc.), distribution and marketing.  The Receiver also negotiated an amendment to a prior agreement that addresses securing prints and advertising funds and domestic distribution of the film.  The Receiver anticipated finalizing the amendment and filing appropriate pleadings seeking Court approval of the amendment.  If sufficient prints and advertising money is timely raised, it is anticipated that foreign and domestic theatrical distribution of the film will occur in late spring 2010.

*Status as of December 10, 2009:*

The Receiver filed an ex parte application seeking Court approval of the amendment to the contract for prints and advertising funds and domestic distribution, which was granted.  The Receiver continued consulting with potential new sources of prints and advertising funds and domestic distribution and addressing various issues for finalizing and marketing the film.  The Receiver, with the assistance of his consultants, continued to work toward a spring 2010 release of the film.

*Status as of January 11, 2010:*

The Receiver was negotiating the terms of a domestic distribution agreement, which also addresses the funding of prints and advertising.  The Receiver anticipated executing the distribution agreement this week and seeking court approval of the agreement.  The film's release date of April 2, 2010 has been set.

*Status as of February 10, 2010:*

The Receiver completed negotiations and executed a Distribution Agreement.  The Distribution Agreement was approved by the Court and the Receiver's team continued to work toward the theatrical release of the film in April, 2010.

*Status as of March 10, 2010:*

The film remained on track to be released on April 2, 2010 in Mexico and April 16, 2010 in the United States.  The film was expected to be shown initially in approximately 450-525 theaters, with potential expansion thereafter, and previews of the film have been showing on over 1000 screens since December.  The Receiver and Coca Cola entered into a promotion and marketing agreement pursuant to which Coke will be permitted to use the name of the film and promote the film in its beverage sales, sales of Ole' Taco chips and other Coke-affiliated products.  The Receiver was also in discussions with certain merchandizing companies who have an interest in using the film to promote their products.  These agreements provide a cost free means of promoting and marketing the film and enhancing its success.

*Status as of April 12, 2010:*

The film held its World Premiere in Monterrey, Mexico on March 21, 2010, and was released in Mexico on April 2, 2010.  As of April 5, 2010, the film had box office receipts of over 10 million pesos in Mexico [note, this figure was erroneously identified as dollars in the prior report].  The U.S. Premiere was held on April 5, 2010 in Los Angeles, California, and the film will be released in the U.S. and Canada on April 16, 2010.  In addition to the previously mentioned marketing agreement with Coke, the Receiver's team has continued discussions with certain merchandizing companies who have an interest in using the film to promote their products.

*Status as of May 10, 2010:*

The film was released in the United States and Canada on April 16, 2010.  While box office receipts did not meet projections, the film was well received by critics.  The film continued to be shown in many theatres.  The distribution team is currently investigating and negotiating potential deals with a number of major distributors to exploit the film in the home entertainment market.

*Status as of June 30, 2010:*

Box office receipts did not meet projections and the Receiver does not expect a return from the theatrical sales of the film.  The distribution team continued to investigate and negotiate potential deals with a number of distributors to exploit the film in the home entertainment market in Mexico and domestically.

*Status as of July 12, 2010:*

The Receiver, amid concerns as to MIP Films' performance under the Court-approved Distribution Agreement, engaged in detailed discussions with MFP as to prints and advertising expenditures, box office receipts, unpaid vendor invoices and related issues.  The Receiver provided notice of his exercise of audit rights under the Distribution Agreement and planned to conduct an audit beginning on July 16, 2010.  The Receiver's team continued to work with MFP to explore home entertainment distribution options, including a conference call with MFP's proposed domestic DVD distributor.  Discussions as to home entertainment distribution were ongoing.

*Status as of August 10, 2010:*

The Receiver conducted an audit of MFP's books and records on July 16, 2010.  On July 26, 2010, based on the results of the audit and various other information concerning breaches of the Distribution Agreement, the Receiver provided notice of the termination of the agreement to MFP.  All rights in the film have reverted to TPG and the Receiver's team is evaluating various options for further exploitation of the film.

*Status as of October 11, 2010:*

Due to the failure of MFP to make certain payments due to the writer of the film, who also owns the life story rights of the individuals depicted in the film, TPG's right to exploit such life story rights via the film expired and reverted to the writer. The Receiver's team was negotiating with the writer concerning future exploitation of the film. TPG also filed a demand for arbitration against MFP concerning the termination of the Distribution Agreement.

*Status as of November 10, 2010:*

The Receiver was proceeding with the arbitration against MFP, which filed a counterclaim against TPG. An arbitrator was appointed and the claims were being finalized. The Receiver's team continued to negotiate with the writer and explore options for future exploitation of the film.

*Status as of January 10, 2011:*

TPG filed an answer to the counterclaim and participated in a scheduling conference with the Arbitrator. The arbitration hearing was set to begin on February 15, 2011. The parties were to conduct appropriate discovery in advance of the hearing. The Receiver's team continued to take all other necessary actions to protect the estate's interests in the film.

*Status as of April 11, 2011:*

On January 11, 2011, the Receiver filed an ex parte application seeking Court approval of new distribution agreements with Image Entertainment and Camelot Distribution Group, as well as a Reaquisition of Rights Agreement with the film's writer pursuant to which TPG acquired the life story rights of the individuals depicted in the film. The Court approved the application. With respect to the pending arbitration, MFP provided the Receiver with a written acknowledgment that TPG's July 26, 2010 termination of the Distribution Agreement based on MFP's breaches thereof was valid and effective. MFP also withdrew its answer to TPG's demand for arbitration, and dismissed its counterclaim against TPG (seeking damages of over $5 million) with prejudice. Based on MFP's unqualified acknowledgment as to the validity of the termination, the withdrawal of its answer and the dismissal of its counterclaim, the arbitrator determined that TPG had obtained all of the relief it sought, and dismissed the arbitration as moot. The arbitrator awarded TPG all of the costs it had incurred with respect to the arbitration.

*Status as of June 10, 2011:*

Home entertainment distribution of the film is expected to commence this summer. The Receiver's team has been forced to take various actions to protect the receivership estate's interest in the film, including actions in Mexico to prevent a terminated sub-distributor from distributing the film in the Mexican home entertainment market.

*Status as of July 10, 2011:*

The film is currently available to the home entertainment market in Mexico, and a domestic home entertainment release was expected in August.

*Status as of August 10, 2011:*

The film was released in the U.S. home entertainment market on August 2, 2011.  The final minimum guarantee payment from Image Entertainment is expected to be received shortly. Nominal additional revenues from the film have been received.

*Status as of December 12, 2011:*

The final minimum guarantee payment was received from Image Entertainment.  Recently, the Receiver's counsel obtained formal resolutions from the appropriate Mexican agency recognizing the Receiver's rights in the film.

*Status as of July 10, 2013:*

The final minimum guarantee payment for sub-distribution rights in Mexico was received from Camelot Distribution Group.

*Current Status:*

In July 2013, after issuing several letters to Camelot Distribution Group regarding its failure to provide quarterly reports and pay amounts due to TPG under the Distribution Agreement, the Receiver terminated the Distribution Agreement with Camelot.

## Other Assets Under Review

### Lavipharm

MPFC III made a loan of $30 million to Lavipharm Corporation/Lavipharm Laboratories, Inc. secured by stock warrants, patents, inventory and equipment, among other things. Lavipharm is a pharmaceutical company that has developed a patented patch for the delivery of medication that is pending FDA approval. A lump sum payment of $4.5 million was due on March 31, 2010 or five days after FDA regulatory approval, whichever is earlier. The Receiver entered into a forbearance agreement with Lavipharm. In September 2010, Lavipharm made the final of its six equal installment payments of $750,000, which payments have reduced the principal balance from $30 million to $25.5 million. Pursuant to the terms of the forbearance agreement, the Repayment Period Commencement Date shall not be later than the date which is first to occur of (a) 90 days following the Commercial Launch Date, or (b) July 1, 2011. The first of ten equal installment payments to pay off the balance of the note shall then be due 180 days after the Repayment Period Commencement Date and subsequent payments due every 180 days thereafter. The Repayment Period Commencement Date may be extended for up to four three month periods upon the payment of $750,000 on the first day of each three month period extension. On January 3, 2012, Lavipharm paid $750,000, thereby extending the Repayment Period Commencement Date. Due to issues with the FDA approval process, Lavipharm has wound up its operations. The Receiver is actively marketing the loan for sale and considering various asset disposition alternatives.

### E Mark

MPFC III made a loan to this internet advertising company. The Receiver has found evidence that MedCap was allowing payments to be made to an account not controlled by MedCap. Subpoenas to banks were issued and numerous documents were produced and analyzed by the Receiver. The Receiver's investigation into this asset is ongoing.

### Pyramid Technologies, Inc.

MPFC IV made a loan to Pyramid Technologies secured by, among other things, stock and personal guaranties. The loan is in default and there is an outstanding principal balance of approximately $14 million. The Receiver filed a Complaint against Pyramid and various individuals on January 20, 2010. The Receiver filed a Motion for Partial Summary Judgment which was granted by the Court. The remaining claims were subsequently dismissed by the Court pursuant to the parties' stipulation. The defendants filed a Notice of Appeal contesting various court rulings. The appeal was subsequently dismissed for failure to file an opening brief. The individual defendants filed bankruptcy, and the Receiver is pursuing an adversary action in the bankruptcy to declare the debt non-dischargeable. Debtors' motion for summary judgment was denied by the bankruptcy court and the matter is set for trial on January 22, 2015.

## EXHIBIT B

**Financial Statements for the Receivership Estate**
**Through September 30, 2014**

## Medical Capital Holdings, Inc.
# Monthly Profit & Loss
### September 2014

Cash Basis

|  | Sep 14 |
|---|---|
| **Ordinary Income/Expense** | |
| **Income** | |
| Account Receivable Collection | 1,050.00 |
| Income Tax Refunds | 3,793.86 |
| Loan Collections | 2,500.00 |
| **Total Income** | 7,343.86 |
| **Gross Profit** | 7,343.86 |
| **Expense** | |
| Bank Service Charges | 263.18 |
| **Business Operating Expenses** | |
| Outside Services | 38.90 |
| Rent Expense | 2,801.40 |
| Utilities | 495.35 |
| **Total Business Operating Expenses** | 3,335.65 |
| Computer and Internet Expenses | 1,178.50 |
| Insurance Expense | 3,242.00 |
| **Payroll Expenses** | |
| ADP Payroll Service | 126.00 |
| **Total Payroll Expenses** | 126.00 |
| **Professional Fees** | |
| Consultant/legal fees (misc) | 492.50 |
| Litigation Expense -Sedgwick | 116,282.29 |
| Receiver's expenses | 212.30 |
| Receiver's fees | 107,442.00 |
| Receiver's IT Consultant | 52,301.76 |
| **Total Professional Fees** | 276,730.85 |
| **Total Expense** | 284,876.18 |
| **Net Ordinary Income** | -277,532.32 |
| **Other Income/Expense** | |
| **Other Income** | |
| Interest Income | 81.01 |
| **Total Other Income** | 81.01 |
| **Net Other Income** | 81.01 |
| **Net Income** | **-277,451.31** |

# Medical Capital Holdings, Inc.
# ITD Profit & Loss
## August 3, 2009 through September 30, 2014

Cash Basis

| | Aug 3, '09 - Sep 30, 14 |
|---|---|
| **Ordinary Income/Expense** | |
| **Income** | |
| Account Receivable Collection | 2,670,922.60 |
| Income Tax Refunds | 11,580,994.29 |
| Insurance Proceeds | 201,404.38 |
| Loan Collections | 15,002,013.43 |
| **Operating Company Revenue** | |
| NHBC Revenue | 20,787,479.75 |
| Perfect Game Revenue | 1,393,662.91 |
| Viva-Vision Revenue | 1,147,361.49 |
| **Total Operating Company Revenue** | 23,328,504.15 |
| Property Tax Refunds | 501,184.58 |
| Rental Income | 561,519.34 |
| Sale of Assets/Disposition | 115,840,807.69 |
| Settlement Proceeds | 1,981,572.50 |
| Turnover/Seizure | 4,550,029.73 |
| **Total Income** | 176,218,952.69 |
| **Gross Profit** | 176,218,952.69 |
| **Expense** | |
| Advertising and Promotion | 69,009.88 |
| Annual registration / renewal | 425.00 |
| Appraisal Fees | 126,614.34 |
| Bank Service Charges | 95,289.00 |
| BMS Distribution funding | 0.00 |
| **Business Operating Expenses** | |
| Business Licenses and Permits | 279,430.62 |
| Consulting services | 166,984.19 |
| Management fees | 209,518.48 |
| Outside Services | 1,122,335.01 |
| Rent Expense | 854,695.61 |
| Repair & Maintenance | 523,107.29 |
| Supplies | 29,214.12 |
| Utilities | 1,430,433.10 |
| **Total Business Operating Expenses** | 4,615,718.42 |
| Computer and Internet Expenses | 83,804.80 |
| Cost of sales | 3,500.00 |
| **Distributions to Claimants** | |
| Non-Priority -Employee Claimant | 38,682.80 |
| Non-Priority -Noteholders | 114,877,990.13 |
| Non-Priorty -Creditor | 1,703,807.95 |
| Priority -Creditors | 930,345.15 |
| Priority -Employee Claimants | 271,621.74 |
| **Total Distributions to Claimants** | 117,822,447.77 |
| Dues and Subscriptions | 6,868.95 |
| Employee moral | 1,450.00 |
| Home Stretch Other | 20,187.60 |
| Homestretch Slip rental | 93,221.47 |
| Homestretch Utilities | 24,297.47 |
| Insurance Expense | 820,074.00 |
| Liens & Debt payments | 2,379,055.21 |
| Moving & Storage | 12,466.92 |
| Office Supplies | 18,062.72 |
| **Operating Company Expense** | |
| NHBC - Direct Expenses | |
| Client fees | 1,069,844.83 |
| Client refunds | 61,531.22 |
| Commissions | 355,602.08 |
| Network fees | 6,829,526.29 |
| Office Expense | 83,817.23 |
| PEPM Network fee | 1,929,699.74 |
| **Total NHBC - Direct Expenses** | 10,330,021.39 |
| Perfect Game Operating Expenses | |

# Medical Capital Holdings, Inc.
# ITD Profit & Loss
## August 3, 2009 through September 30, 2014

Cash Basis

|  | Aug 3, '09 - Sep 30, 14 | |
|---|---|---|
| Consultants - Entertainment | 343,981.06 | |
| Consultants - Legal | 54,948.27 | |
| Copyright & Licenses | 126,136.14 | |
| Distribution Expenses | 379,554.26 | |
| Materials | 10,387.00 | |
| Operating Expenses | 24,385.31 | |
| Rent | 88,136.43 | |
| **Total Perfect Game Operating Expenses** | 1,027,528.47 | |
| Viva Vision Revenue Sharing | 534,319.22 | |
| **Total Operating Company Expense** | | 11,891,869.08 |
| Operating Expenses | | 431,577.76 |
| Payroll Expenses | | |
| 401K | 223,667.89 | |
| ADP Payroll Service | 51,016.13 | |
| Medical Capital Payroll taxes | 1,804.97 | |
| Medical Insurance | 628,984.48 | |
| Payroll and Taxes | | |
| Homestretch Crew | 91,717.00 | |
| MCC | 2,677,714.44 | |
| NHBC | 7,457,025.24 | |
| Trace | 797,902.29 | |
| Viva Vision | 321,879.39 | |
| Payroll and Taxes - Other | 51,708.51 | |
| **Total Payroll and Taxes** | 11,397,946.87 | |
| **Total Payroll Expenses** | | 12,303,420.34 |
| Postage and Delivery | | 88,589.15 |
| Printing and Reproduction | | 176,368.97 |
| Professional Fees | | |
| Consultant/legal fees (misc) | 1,212,708.95 | |
| Litigation Expense -Manatt | 11,670.34 | |
| Litigation Expense -Sedgwick | 221,687.19 | |
| Receiver's Counsel | 8,962,645.57 | |
| Receiver's expenses | 82,268.88 | |
| Receiver's fees | 4,328,406.57 | |
| Receiver's IT Consultant | 2,673,693.68 | |
| Tax professionals | 223,179.60 | |
| **Total Professional Fees** | | 17,716,260.78 |
| Radiation Monitoring | | 2,712.89 |
| Security Services | | 104,600.01 |
| Taxes | | |
| Corporate Taxes | 222,567.89 | |
| Property tax | 1,419,174.73 | |
| **Total Taxes** | | 1,641,742.62 |
| Telephone Expense | | 758.05 |
| Travel Expense | | 5,536.88 |
| Trustee fees & Expenses | | 149,818.68 |
| **Total Expense** | | 170,705,748.76 |
| **Net Ordinary Income** | | 5,513,203.93 |
| Other Income/Expense | | |
| Other Income | | |
| Interest Income | | 204,318.23 |
| **Total Other Income** | | 204,318.23 |
| **Net Other Income** | | 204,318.23 |
| **Net Income** | | **5,717,522.16** |

# Medical Capital Holdings, Inc.
# Balance Sheet
## As of September 30, 2014

Cash Basis

| | Sep 30, 14 |
|---|---|
| **ASSETS** | |
| **Current Assets** | |
| **Checking/Savings** | |
| **BMS_RABO** | |
| RABO_Pay Agent Turnover_2872 | 302,405.60 |
| **Total BMS_RABO** | 302,405.60 |
| | |
| **EW Savings** | |
| EW MPFC 3, Series II | 41,210.11 |
| EW MPFC 5 | 41,240.90 |
| **Total EW Savings** | 82,451.01 |
| | |
| **ML_CDARS** | |
| ML MCH CDARS | 4,999,947.51 |
| **Total ML_CDARS** | 4,999,947.51 |
| | |
| **Wells Fargo** | |
| WF MCC/MCH Operating Acct. | 331,408.04 |
| **Total Wells Fargo** | 331,408.04 |
| | |
| **Total Checking/Savings** | 5,716,212.16 |
| | |
| **Total Current Assets** | 5,716,212.16 |
| | |
| **Other Assets** | |
| MCH Security Deposit | 1,310.00 |
| **Total Other Assets** | 1,310.00 |
| | |
| **TOTAL ASSETS** | **5,717,522.16** |
| | |
| **LIABILITIES & EQUITY** | |
| **Equity** | |
| Retained Earnings | 124,808,987.47 |
| Net Income | -119,091,465.31 |
| **Total Equity** | 5,717,522.16 |
| | |
| **TOTAL LIABILITIES & EQUITY** | **5,717,522.16** |

# Medical Capital Holdings, Inc.
## Monthly General Ledger
### As of September 30, 2014

Cash Basis

| Type | Date | Num | Name | Memo | Debit | Credit | Balance |
|------|------|-----|------|------|-------|--------|---------|
| **Bank of America - NHBC** | | | | | | | 0.00 |
| Total Bank of America - NHBC | | | | | | | 0.00 |
| **BMS_BNY BANK** | | | | | | | 0.00 |
| **BMS_MPFC 2_3771** | | | | | | | 0.00 |
| Total BMS_MPFC 2_3771 | | | | | | | 0.00 |
| **BMS_MPFC 3, Series I_3768** | | | | | | | 0.00 |
| Total BMS_MPFC 3, Series I_3768 | | | | | | | 0.00 |
| **BMS_MPFC 3, Series II_3769** | | | | | | | 0.00 |
| Total BMS_MPFC 3, Series II_3769 | | | | | | | 0.00 |
| **BMS_MPFC 6_3770** | | | | | | | 0.00 |
| Total BMS_MPFC 6_3770 | | | | | | | 0.00 |
| **BMS_MPFC_5_3767** | | | | | | | 0.00 |
| Total BMS_MPFC_5_3767 | | | | | | | 0.00 |
| **BMS_Operating Account** | | | | | | | 0.00 |
| Total BMS_Operating Account | | | | | | | 0.00 |
| **BMS_Pay Agent Turnover_3772** | | | | | | | 0.00 |
| Total BMS_Pay Agent Turnover_3772 | | | | | | | 0.00 |
| **BMS_BNY BANK - Other** | | | | | | | 0.00 |
| Total BMS_BNY BANK - Other | | | | | | | 0.00 |
| Total BMS_BNY BANK | | | | | | | 0.00 |
| **BMS_RABO** | | | | | | | 302,405.60 |
| **RABO-MCC/MCH Holding Acct_2873** | | | | | | | 0.00 |
| Total RABO-MCC/MCH Holding Acct_2873 | | | | | | | 0.00 |
| **RABO-Payroll Account** | | | | | | | 0.00 |
| Total RABO-Payroll Account | | | | | | | 0.00 |
| **RABO Payroll Account _2874** | | | | | | | 0.00 |
| Total RABO Payroll Account _2874 | | | | | | | 0.00 |
| **RABO_MPFC 2_2871** | | | | | | | 0.00 |
| Total RABO_MPFC 2_2871 | | | | | | | 0.00 |
| **RABO_MPFC 3, Series I_2868** | | | | | | | 0.00 |
| Total RABO_MPFC 3, Series I_2868 | | | | | | | 0.00 |
| **RABO_MPFC 3, Series II_2869** | | | | | | | 0.00 |
| Total RABO_MPFC 3, Series II_2869 | | | | | | | 0.00 |
| **RABO_MPFC 5_2867** | | | | | | | 0.00 |
| Total RABO_MPFC 5_2867 | | | | | | | 0.00 |
| **RABO_MPFC 6_2870** | | | | | | | 0.00 |
| Total RABO_MPFC 6_2870 | | | | | | | 0.00 |
| **RABO_Operating Account_2866** | | | | | | | 0.00 |
| Total RABO_Operating Account_2866 | | | | | | | 0.00 |
| **RABO_Pay Agent Turnover_2872** | | | | | | | 302,405.60 |
| Total RABO_Pay Agent Turnover_2872 | | | | | | | 302,405.60 |
| **BMS_RABO - Other** | | | | | | | 0.00 |
| Total BMS_RABO - Other | | | | | | | 0.00 |
| Total BMS_RABO | | | | | | | 302,405.60 |
| **CNB** | | | | | | | 0.00 |
| Total CNB | | | | | | | 0.00 |

# Medical Capital Holdings, Inc.
## Monthly General Ledger
### As of September 30, 2014

Cash Basis

| Type | Date | Num | Name | Memo | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|
| Comerica | | | | | | | 0.00 |
| Total Comerica | | | | | | | 0.00 |
| EW Savings | | | | | | | 506,021.58 |
| EW MPFC 3, Series II | | | | | | | 253,010.79 |
| Check | 9/30/2014 | Wire | KPMG LLP | Invs 8000344353 & 80003... | | 105,947.50 | 147,063.29 |
| Check | 9/30/2014 | 1003 | Medical Capital Holdi... | To transfer funds to Wells... | | 105,863.29 | 41,200.00 |
| Check | 9/30/2014 | debit | East West Bank | fee for KPMG wire | | 30.00 | 41,170.00 |
| Deposit | 9/30/2014 | | | Interest | 40.11 | | 41,210.11 |
| Total EW MPFC 3, Series II | | | | | 40.11 | 211,840.79 | 41,210.11 |
| EW MPFC 5 | | | | | | | 253,010.79 |
| Check | 9/30/2014 | 1003 | Medical Capital Holdi... | To transfer funds to Wells... | | 211,810.79 | 41,200.00 |
| Deposit | 9/30/2014 | | | Interest | 40.90 | | 41,240.90 |
| Total EW MPFC 5 | | | | | 40.90 | 211,810.79 | 41,240.90 |
| EW Savings - Other | | | | | | | 0.00 |
| Total EW Savings - Other | | | | | | | 0.00 |
| Total EW Savings | | | | | 81.01 | 423,651.58 | 82,451.01 |
| ML_CDARS | | | | | | | 4,999,947.51 |
| ML MCH CDARS | | | | | | | 4,999,947.51 |
| Total ML MCH CDARS | | | | | | | 4,999,947.51 |
| ML MPFC 2, CDARS | | | | | | | 0.00 |
| Total ML MPFC 2, CDARS | | | | | | | 0.00 |
| ML MPFC 3, Series I, CDARS | | | | | | | 0.00 |
| Total ML MPFC 3, Series I, CDARS | | | | | | | 0.00 |
| ML MPFC 3, Series II, CDARS | | | | | | | 0.00 |
| Total ML MPFC 3, Series II, CDARS | | | | | | | 0.00 |
| ML MPFC 5, CDARS | | | | | | | 0.00 |
| Total ML MPFC 5, CDARS | | | | | | | 0.00 |
| ML_CDARS - Other | | | | | | | 0.00 |
| Total ML_CDARS - Other | | | | | | | 0.00 |
| Total ML_CDARS | | | | | | | 4,999,947.51 |
| Wells Fargo | | | | | | | 185,288.78 |
| WF MCC/MCH Operating Acct. | | | | | | | 185,288.78 |
| Deposit | 9/3/2014 | | | Deposit | 3,793.86 | | 189,082.64 |
| Deposit | 9/4/2014 | | | Deposit | 2,500.00 | | 191,582.64 |
| Check | 9/9/2014 | 2150 | Reid Litigation Techn... | multiple invoices | | 3,260.00 | 188,322.64 |
| Check | 9/10/2014 | 2148 | Paychex of New York... | Invoice 2014082800, Clie... | | 126.00 | 188,196.64 |
| Check | 9/10/2014 | 2149 | Thomas Seaman | Expense reimbursement -... | | 212.30 | 187,984.34 |
| Check | 9/10/2014 | 2151 | Martin Investment Co... | Unit # 001006-11-CU, Se... | | 1,360.00 | 186,624.34 |
| Check | 9/11/2014 | | | Service Charge | | 233.18 | 186,391.16 |
| Check | 9/15/2014 | 2152 | Huron Consulting Gro... | Inv# 1039642, services re... | | 52,301.76 | 134,089.40 |
| Check | 9/15/2014 | 2153 | Irvine Self Storage | Unit C196 Oct 2014 | | 81.40 | 134,008.00 |
| Check | 9/15/2014 | 2154 | Southern California E... | Acct# 2-31-868-1665 | | 281.13 | 133,726.87 |
| Check | 9/15/2014 | 2155 | City of Santa Ana | Act # 1-0720.306, 1502 s... | | 32.29 | 133,694.58 |
| Check | 9/15/2014 | 2156 | WTI Communications | Account #90190 9/1/14 in... | | 181.93 | 133,512.65 |
| Check | 9/15/2014 | 2157 | Thomas Seaman Co... | 18th Interim Fee Application | | 107,442.00 | 26,070.65 |
| Check | 9/16/2014 | 2158 | Thomas Seaman Co... | August PACER Reimb | | 38.90 | 26,031.75 |
| Check | 9/18/2014 | 2159 | Orange County Netw... | Multiple invoices | | 617.50 | 25,414.25 |
| Check | 9/19/2014 | 2160 | Constant Contact, Inc. | Inv # FFXRICDAB26214 ... | | 561.00 | 24,853.25 |
| Check | 9/23/2014 | 2161 | Martin Investment Co... | Unit # 001006-11-CU, Oct... | | 1,360.00 | 23,493.25 |
| Deposit | 9/24/2014 | | | Deposit | 2,767.50 | | 26,260.75 |
| Check | 9/24/2014 | online | The Hartford | Act # 10857037; BO & U... | | 3,242.00 | 23,018.75 |
| Deposit | 9/29/2014 | | | Deposit | 1,050.00 | | 24,068.75 |
| Check | 9/30/2014 | 2162 | Veritext | multiple invoices | | 4,778.40 | 19,290.35 |
| Check | 9/30/2014 | 2163 | Jams, Inc. | Reference # 1200047342,... | | 5,556.39 | 13,733.96 |
| Check | 9/30/2014 | 1003 | Medical Capital Holdi... | To transfer funds to Wells... | 105,863.29 | | 119,597.25 |
| Check | 9/30/2014 | 1003 | Medical Capital Holdi... | To transfer funds to Wells... | 211,810.79 | | 331,408.04 |
| Total WF MCC/MCH Operating Acct. | | | | | 327,785.44 | 181,666.18 | 331,408.04 |

# Medical Capital Holdings, Inc.
## Monthly General Ledger
### As of September 30, 2014

**Cash Basis**

| Type | Date | Num | Name | Memo | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|
| **WF MCC/MCH Payroll Acct.** | | | | | | | 0.00 |
| Total WF MCC/MCH Payroll Acct. | | | | | | | 0.00 |
| **WF MPFC 1** | | | | | | | 0.00 |
| Total WF MPFC 1 | | | | | | | 0.00 |
| **WF MPFC 2** | | | | | | | 0.00 |
| Total WF MPFC 2 | | | | | | | 0.00 |
| **WF MPFC 2_Treasury** | | | | | | | 0.00 |
| Total WF MPFC 2_Treasury | | | | | | | 0.00 |
| **WF MPFC 3, Series I_#5647** | | | | | | | 0.00 |
| Total WF MPFC 3, Series I_#5647 | | | | | | | 0.00 |
| **WF MPFC 3, Series II_#5654** | | | | | | | 0.00 |
| Total WF MPFC 3, Series II_#5654 | | | | | | | 0.00 |
| **WF MPFC 4, Series I_#5613** | | | | | | | 0.00 |
| Total WF MPFC 4, Series I_#5613 | | | | | | | 0.00 |
| **WF MPFC 4, Series II_5621** | | | | | | | 0.00 |
| Total WF MPFC 4, Series II_5621 | | | | | | | 0.00 |
| **WF MPFC 5** | | | | | | | 0.00 |
| Total WF MPFC 5 | | | | | | | 0.00 |
| **WF MPFC 6** | | | | | | | 0.00 |
| Total WF MPFC 6 | | | | | | | 0.00 |
| **WF NHBC - AP Disbursement Act** | | | | | | | 0.00 |
| Total WF NHBC - AP Disbursement Act | | | | | | | 0.00 |
| **WF NHBC - Operating Acct.** | | | | | | | 0.00 |
| Total WF NHBC - Operating Acct. | | | | | | | 0.00 |
| **WF NHBC - Payroll** | | | | | | | 0.00 |
| Total WF NHBC - Payroll | | | | | | | 0.00 |
| **WF Viva-Vision Operating Acct.** | | | | | | | 0.00 |
| Total WF Viva-Vision Operating Acct. | | | | | | | 0.00 |
| **Wells Fargo - Other** | | | | | | | 0.00 |
| Total Wells Fargo - Other | | | | | | | 0.00 |
| Total Wells Fargo | | | | | 327,785.44 | 181,666.18 | 331,408.04 |
| **WF MPFC 3, Series I_Treasury** | | | | | | | 0.00 |
| Total WF MPFC 3, Series I_Treasury | | | | | | | 0.00 |
| **WF MPFC 3, Series II_Treasury** | | | | | | | 0.00 |
| Total WF MPFC 3, Series II_Treasury | | | | | | | 0.00 |
| **WF MPFC 4, Series I_Treasury** | | | | | | | 0.00 |
| Total WF MPFC 4, Series I_Treasury | | | | | | | 0.00 |
| **WF MPFC 5_Treasury** | | | | | | | 0.00 |
| Total WF MPFC 5_Treasury | | | | | | | 0.00 |
| **WF NHBC - Cigna Holding account** | | | | | | | 0.00 |
| Total WF NHBC - Cigna Holding account | | | | | | | 0.00 |
| **WF Viva-Vision AP disbursement** | | | | | | | 0.00 |
| Total WF Viva-Vision AP disbursement | | | | | | | 0.00 |
| **WF Viva-Vision Payroll Acct.** | | | | | | | 0.00 |
| Total WF Viva-Vision Payroll Acct. | | | | | | | 0.00 |

# Medical Capital Holdings, Inc.
## Monthly General Ledger
### As of September 30, 2014

**Cash Basis**

| Type | Date | Num | Name | Memo | Debit | Credit | Balance |
|------|------|-----|------|------|-------|--------|---------|
| **Accounts Receivable** | | | | | | | 0.00 |
| Total Accounts Receivable | | | | | | | 0.00 |
| **BMS_Transfer Clearing Account** | | | | | | | 0.00 |
| Total BMS_Transfer Clearing Account | | | | | | | 0.00 |
| **Earnest Money Deposit Refund** | | | | | | | 0.00 |
| Total Earnest Money Deposit Refund | | | | | | | 0.00 |
| **NOT USED - MPFC 5, Loan to NHBC** | | | | | | | 0.00 |
| Total NOT USED - MPFC 5, Loan to NHBC | | | | | | | 0.00 |
| **Undeposited Funds** | | | | | | | 0.00 |
| Total Undeposited Funds | | | | | | | 0.00 |
| **Accumulated Depreciation** | | | | | | | 0.00 |
| Total Accumulated Depreciation | | | | | | | 0.00 |
| **Furniture and Equipment** | | | | | | | 0.00 |
| Total Furniture and Equipment | | | | | | | 0.00 |
| **MCC Loan to MPFC 3, I** | | | | | | | 0.00 |
| Total MCC Loan to MPFC 3, I | | | | | | | 0.00 |
| **MCC Loan to MPFC 4, I** | | | | | | | 0.00 |
| Total MCC Loan to MPFC 4, I | | | | | | | 0.00 |
| **MCC Loan to MPFC 4, II** | | | | | | | 0.00 |
| Total MCC Loan to MPFC 4, II | | | | | | | 0.00 |
| **MCH Security Deposit** | | | | | | | 1,310.00 |
| Total MCH Security Deposit | | | | | | | 1,310.00 |
| **MPFC 2, Loan to MCC** | | | | | | | 0.00 |
| Total MPFC 2, Loan to MCC | | | | | | | 0.00 |
| **MPFC 2, Loan to MPFC 4, II** | | | | | | | 0.00 |
| Total MPFC 2, Loan to MPFC 4, II | | | | | | | 0.00 |
| **MPFC 3, I Loan to MCC** | | | | | | | 0.00 |
| Total MPFC 3, I Loan to MCC | | | | | | | 0.00 |
| **MPFC 3, II Loan to MCC** | | | | | | | 0.00 |
| Total MPFC 3, II Loan to MCC | | | | | | | 0.00 |
| **MPFC 4, I Loan to MPFC 4, II** | | | | | | | 0.00 |
| Total MPFC 4, I Loan to MPFC 4, II | | | | | | | 0.00 |
| **MPFC 5, Loan to MPFC 4, II** | | | | | | | 0.00 |
| Total MPFC 5, Loan to MPFC 4, II | | | | | | | 0.00 |
| **MPFC 5, Loan to NHBC** | | | | | | | 0.00 |
| Total MPFC 5, Loan to NHBC | | | | | | | 0.00 |
| **NHBC Loan to MCC** | | | | | | | 0.00 |
| Total NHBC Loan to MCC | | | | | | | 0.00 |
| **Utility Security Deposit** | | | | | | | 0.00 |
| Total Utility Security Deposit | | | | | | | 0.00 |
| **Accounts Payable** | | | | | | | 0.00 |
| Total Accounts Payable | | | | | | | 0.00 |
| **MCC loan from MPFC 2** | | | | | | | 0.00 |
| Total MCC loan from MPFC 2 | | | | | | | 0.00 |
| **MCC loan from MPFC 3 I** | | | | | | | 0.00 |
| Total MCC loan from MPFC 3 I | | | | | | | 0.00 |

# Medical Capital Holdings, Inc.
# Monthly General Ledger
### As of September 30, 2014

**Cash Basis**

| Type | Date | Num | Name | Memo | Debit | Credit | Balance |
|------|------|-----|------|------|-------|--------|---------|
| **MCC loan from MPFC 3 II** | | | | | | | 0.00 |
| Total MCC loan from MPFC 3 II | | | | | | | 0.00 |
| **MCC Loan from NHBC** | | | | | | | 0.00 |
| Total MCC Loan from NHBC | | | | | | | 0.00 |
| **MPFC 3, I Loan from MCC** | | | | | | | 0.00 |
| Total MPFC 3, I Loan from MCC | | | | | | | 0.00 |
| **MPFC 4, I Loan from MCC** | | | | | | | 0.00 |
| Total MPFC 4, I Loan from MCC | | | | | | | 0.00 |
| **MPFC 4, II Loan from MCC** | | | | | | | 0.00 |
| Total MPFC 4, II Loan from MCC | | | | | | | 0.00 |
| **MPFC 4, II Loan from MPFC 2** | | | | | | | 0.00 |
| Total MPFC 4, II Loan from MPFC 2 | | | | | | | 0.00 |
| **MPFC 4, II Loan from MPFC 4, I** | | | | | | | 0.00 |
| Total MPFC 4, II Loan from MPFC 4, I | | | | | | | 0.00 |
| **MPFC 4, II Loan from MPFC 5** | | | | | | | 0.00 |
| Total MPFC 4, II Loan from MPFC 5 | | | | | | | 0.00 |
| **NHBC Loan from MPFC 5** | | | | | | | 0.00 |
| Total NHBC Loan from MPFC 5 | | | | | | | 0.00 |
| **Payroll Liabilities** | | | | | | | 0.00 |
| Total Payroll Liabilities | | | | | | | 0.00 |
| **Pre-Paid Legal Fees** | | | | | | | 0.00 |
| Total Pre-Paid Legal Fees | | | | | | | 0.00 |
| **Security deposits held** | | | | | | | 0.00 |
| Total Security deposits held | | | | | | | 0.00 |
| **Capital Stock** | | | | | | | 0.00 |
| Total Capital Stock | | | | | | | 0.00 |
| **Dividends Paid** | | | | | | | 0.00 |
| Total Dividends Paid | | | | | | | 0.00 |
| **Opening Balance Equity** | | | | | | | 0.00 |
| Total Opening Balance Equity | | | | | | | 0.00 |
| **Retained Earnings** | | | | | | | -124,808,987.47 |
| Total Retained Earnings | | | | | | | -124,808,987.47 |
| **Account Receivable Collection** | | | | | | | -13,341.80 |
| Deposit | 9/29/2014 | 2351 | Mobile Medic/Haidar | 22nd Payment | | 1,050.00 | -14,391.80 |
| Total Account Receivable Collection | | | | | 0.00 | 1,050.00 | -14,391.80 |
| **Brooklin Psychiatric Center INC** | | | | | | | 0.00 |
| Total Brooklin Psychiatric Center INC | | | | | | | 0.00 |
| **Commission Income** | | | | | | | 0.00 |
| Total Commission Income | | | | | | | 0.00 |
| **Film Proceeds** | | | | | | | 0.00 |
| Total Film Proceeds | | | | | | | 0.00 |
| **Income Tax Refunds** | | | | | | | -111,737.34 |
| Deposit | 9/3/2014 | 3857... | Oregon Department o... | NHBC 2012 Tax Year | | 3,793.86 | -115,531.20 |
| Total Income Tax Refunds | | | | | 0.00 | 3,793.86 | -115,531.20 |
| **Insurance Proceeds** | | | | | | | 0.00 |
| Total Insurance Proceeds | | | | | | | 0.00 |

# Medical Capital Holdings, Inc.
## Monthly General Ledger
### As of September 30, 2014

Cash Basis

| Type | Date | Num | Name | Memo | Debit | Credit | Balance |
|------|------|-----|------|------|-------|--------|---------|
| **Loan Collections** | | | | | | | -62,446.10 |
| Deposit | 9/4/2014 | 1649... | OCWEN Loan Servici... | Re Laurel/Ladlad Illinois P... | | 2,500.00 | -64,946.10 |
| Total Loan Collections | | | | | 0.00 | 2,500.00 | -64,946.10 |
| **Operating Company Revenue** | | | | | | | -202,257.83 |
| **NHBC Revenue** | | | | | | | 0.00 |
| Total NHBC Revenue | | | | | | | 0.00 |
| **Perfect Game Revenue** | | | | | | | -202,257.83 |
| Total Perfect Game Revenue | | | | | | | -202,257.83 |
| **Viva-Vision Revenue** | | | | | | | 0.00 |
| Total Viva-Vision Revenue | | | | | | | 0.00 |
| **Operating Company Revenue - Other** | | | | | | | 0.00 |
| Total Operating Company Revenue - Other | | | | | | | 0.00 |
| Total Operating Company Revenue | | | | | | | -202,257.83 |
| **Property Tax Refunds** | | | | | | | 0.00 |
| Total Property Tax Refunds | | | | | | | 0.00 |
| **Rental Income** | | | | | | | 0.00 |
| Total Rental Income | | | | | | | 0.00 |
| **Royalties - Perfect Game** | | | | | | | 0.00 |
| Total Royalties - Perfect Game | | | | | | | 0.00 |
| **Sale of Assets/Disposition** | | | | | | | 0.00 |
| Total Sale of Assets/Disposition | | | | | | | 0.00 |
| **Services Income** | | | | | | | 0.00 |
| Total Services Income | | | | | | | 0.00 |
| **Settlement Proceeds** | | | | | | | -665,000.00 |
| Total Settlement Proceeds | | | | | | | -665,000.00 |
| **Turnover/Seizure** | | | | | | | 0.00 |
| Total Turnover/Seizure | | | | | | | 0.00 |
| **Unclassified Income** | | | | | | | 0.00 |
| Total Unclassified Income | | | | | | | 0.00 |
| **Revenue Sharing - Viva Vision** | | | | | | | 0.00 |
| Total Revenue Sharing - Viva Vision | | | | | | | 0.00 |
| **Advertising and Promotion** | | | | | | | 0.00 |
| Total Advertising and Promotion | | | | | | | 0.00 |
| **Annual registration / renewal** | | | | | | | 0.00 |
| Total Annual registration / renewal | | | | | | | 0.00 |
| **Appraisal Fees** | | | | | | | 0.00 |
| Total Appraisal Fees | | | | | | | 0.00 |
| **Automobile Expense** | | | | | | | 0.00 |
| Total Automobile Expense | | | | | | | 0.00 |
| **Bank Service Charges** | | | | | | | 2,277.98 |
| Check | 9/11/2014 | | East West Bank | Service Charge | 233.18 | | 2,511.16 |
| Check | 9/30/2014 | debit | East West Bank | fee for KPMG wire | 30.00 | | 2,541.16 |
| Total Bank Service Charges | | | | | 263.18 | 0.00 | 2,541.16 |
| **BMS Distribution funding** | | | | | | | 0.00 |
| Total BMS Distribution funding | | | | | | | 0.00 |
| **Business Analyst Consulting** | | | | | | | 0.00 |
| Total Business Analyst Consulting | | | | | | | 0.00 |

# Medical Capital Holdings, Inc.
## Monthly General Ledger
### As of September 30, 2014

Cash Basis

| Type | Date | Num | Name | Memo | Debit | Credit | Balance |
|------|------|-----|------|------|-------|--------|---------|
| **Business Operating Expenses** | | | | | | | 28,056.08 |
| **Business Licenses and Permits** | | | | | | | 1,199.00 |
| Total Business Licenses and Permits | | | | | | | 1,199.00 |
| **Consulting services** | | | | | | | 0.00 |
| Total Consulting services | | | | | | | 0.00 |
| **Management fees** | | | | | | | 0.00 |
| Total Management fees | | | | | | | 0.00 |
| **Outside Services** | | | | | | | 2,929.03 |
| Check | 9/16/2014 | 2158 | Thomas Seaman Co... | August 2014 PACER Fes... | 38.90 | | 2,967.93 |
| Total Outside Services | | | | | 38.90 | 0.00 | 2,967.93 |
| **Rent Expense** | | | | | | | 10,539.49 |
| Check | 9/10/2014 | 2151 | Martin Investment Co... | Unit # 001006-11-CU, Se... | 1,360.00 | | 11,899.49 |
| Check | 9/15/2014 | 2153 | Irvine Self Storage | Unit C196 Oct 2014 | 81.40 | | 11,980.89 |
| Check | 9/23/2014 | 2161 | Martin Investment Co... | Unit # 001006-11-CU, Oct... | 1,360.00 | | 13,340.89 |
| Total Rent Expense | | | | | 2,801.40 | 0.00 | 13,340.89 |
| **Repair & Maintenance** | | | | | | | 1,198.64 |
| Total Repair & Maintenance | | | | | | | 1,198.64 |
| **Supplies** | | | | | | | 0.00 |
| Total Supplies | | | | | | | 0.00 |
| **Utilities** | | | | | | | 12,189.92 |
| Check | 9/15/2014 | 2154 | Southern California E... | Acct# 2-31-868-1665 | 281.13 | | 12,471.05 |
| Check | 9/15/2014 | 2155 | City of Santa Ana | Act # 1-0720.306, 1502 s... | 32.29 | | 12,503.34 |
| Check | 9/15/2014 | 2156 | WTI Communications | Account #90190 9/1/14 in... | 181.93 | | 12,685.27 |
| Total Utilities | | | | | 495.35 | 0.00 | 12,685.27 |
| **Business Operating Expenses - Other** | | | | | | | 0.00 |
| Total Business Operating Expenses - Other | | | | | | | 0.00 |
| Total Business Operating Expenses | | | | | 3,335.65 | 0.00 | 31,391.73 |
| **Computer and Internet Expenses** | | | | | | | 7,853.76 |
| Check | 9/18/2014 | 2159 | Orange County Netw... | Invoice 7801 | 142.50 | | 7,996.26 |
| Check | 9/18/2014 | 2159 | Orange County Netw... | Invoice 7798 | 142.50 | | 8,138.76 |
| Check | 9/18/2014 | 2159 | Orange County Netw... | Invoice 7795 | 142.50 | | 8,281.26 |
| Check | 9/18/2014 | 2159 | Orange County Netw... | Invoice 7786 | 190.00 | | 8,471.26 |
| Check | 9/19/2014 | 2160 | Constant Contact, Inc. | Inv # FFXRICDAB26214 ... | 561.00 | | 9,032.26 |
| Total Computer and Internet Expenses | | | | | 1,178.50 | 0.00 | 9,032.26 |
| **Continuing Education** | | | | | | | 0.00 |
| Total Continuing Education | | | | | | | 0.00 |
| **Cost of sales** | | | | | | | 0.00 |
| Total Cost of sales | | | | | | | 0.00 |
| **Depreciation Expense** | | | | | | | 0.00 |
| Total Depreciation Expense | | | | | | | 0.00 |
| **Distributions to Claimants** | | | | | | | 117,622,447.77 |
| **Non-Priority -Employee Claimant** | | | | | | | 38,682.80 |
| Total Non-Priority -Employee Claimant | | | | | | | 38,682.80 |
| **Non-Priority -Noteholders** | | | | | | | 114,877,990.13 |
| Total Non-Priority -Noteholders | | | | | | | 114,877,990.13 |
| **Non-Priorty -Creditor** | | | | | | | 1,703,807.95 |
| Total Non-Priorty -Creditor | | | | | | | 1,703,807.95 |
| **Priority -Creditors** | | | | | | | 930,345.15 |
| Total Priority -Creditors | | | | | | | 930,345.15 |
| **Priority -Employee Claimants** | | | | | | | 71,621.74 |
| Total Priority -Employee Claimants | | | | | | | 71,621.74 |

# Medical Capital Holdings, Inc.
## Monthly General Ledger
### As of September 30, 2014

**Cash Basis**

| Type | Date | Num | Name | Memo | Debit | Credit | Balance |
|------|------|-----|------|------|-------|--------|---------|
| **Distributions to Claimants - Other** | | | | | | | 0.00 |
| Total Distributions to Claimants - Other | | | | | | | 0.00 |
| Total Distributions to Claimants | | | | | | | 117,622,447.77 |
| **Dues and Subscriptions** | | | | | | | 3,408.00 |
| Total Dues and Subscriptions | | | | | | | 3,408.00 |
| **Earnest Money Deposi** | | | | | | | 0.00 |
| Total Earnest Money Deposi | | | | | | | 0.00 |
| **Employee moral** | | | | | | | 0.00 |
| Total Employee moral | | | | | | | 0.00 |
| **Facility Maintenance** | | | | | | | 0.00 |
| Total Facility Maintenance | | | | | | | 0.00 |
| **Home Stretch Other** | | | | | | | 0.00 |
| Total Home Stretch Other | | | | | | | 0.00 |
| **Homestretch Slip rental** | | | | | | | 0.00 |
| Total Homestretch Slip rental | | | | | | | 0.00 |
| **Homestretch Utilities** | | | | | | | 0.00 |
| Total Homestretch Utilities | | | | | | | 0.00 |
| **Insurance Expense** | | | | | | | -4,789.74 |
| Check | 9/24/2014 | online | The Hartford | Act # 10857037; BO & U... | 3,242.00 | | -1,547.74 |
| Total Insurance Expense | | | | | 3,242.00 | 0.00 | -1,547.74 |
| **Interest Expense** | | | | | | | 0.00 |
| Total Interest Expense | | | | | | | 0.00 |
| **Legal Fees** | | | | | | | 0.00 |
| Total Legal Fees | | | | | | | 0.00 |
| **Liens & Debt payments** | | | | | | | 525,000.00 |
| Total Liens & Debt payments | | | | | | | 525,000.00 |
| **Movie Screening** | | | | | | | 0.00 |
| Total Movie Screening | | | | | | | 0.00 |
| **Moving & Storage** | | | | | | | 0.00 |
| Total Moving & Storage | | | | | | | 0.00 |
| **Office Supplies** | | | | | | | 988.00 |
| Total Office Supplies | | | | | | | 988.00 |
| **Operating Company Expense** | | | | | | | 20,264.60 |
| **NHBC - Direct Expenses** | | | | | | | -1.18 |
| **Client fees** | | | | | | | -1.18 |
| Total Client fees | | | | | | | -1.18 |
| **Client refunds** | | | | | | | 0.00 |
| Total Client refunds | | | | | | | 0.00 |
| **Commissions** | | | | | | | 0.00 |
| Total Commissions | | | | | | | 0.00 |
| **Network fees** | | | | | | | 0.00 |
| Total Network fees | | | | | | | 0.00 |
| **Office Expense** | | | | | | | 0.00 |
| Total Office Expense | | | | | | | 0.00 |
| **PEPM fees** | | | | | | | 0.00 |
| Total PEPM fees | | | | | | | 0.00 |

# Medical Capital Holdings, Inc.
## Monthly General Ledger
### As of September 30, 2014

**Cash Basis**

| Type | Date | Num | Name | Memo | Debit | Credit | Balance |
|------|------|-----|------|------|-------|--------|---------|
| **PEPM Network fee** | | | | | | | 0.00 |
| Total PEPM Network fee | | | | | | | 0.00 |
| **NHBC - Direct Expenses - Other** | | | | | | | 0.00 |
| Total NHBC - Direct Expenses - Other | | | | | | | 0.00 |
| Total NHBC - Direct Expenses | | | | | | | -1.18 |
| **Perfect Game Operating Expenses** | | | | | | | 20,265.78 |
| **Consultants - Entertainment** | | | | | | | |
| Total Consultants - Entertainment | | | | | | | 0.00 |
| **Consultants - Legal** | | | | | | | 0.00 |
| Total Consultants - Legal | | | | | | | 0.00 |
| **Copyright & Licenses** | | | | | | | 0.00 |
| Total Copyright & Licenses | | | | | | | 0.00 |
| **Distribution Expenses** | | | | | | | 20,265.78 |
| Total Distribution Expenses | | | | | | | 20,265.78 |
| **Materials** | | | | | | | |
| Total Materials | | | | | | | 0.00 |
| **Operating Expenses** | | | | | | | 0.00 |
| Total Operating Expenses | | | | | | | 0.00 |
| **Rent** | | | | | | | 0.00 |
| Total Rent | | | | | | | 0.00 |
| **Perfect Game Operating Expenses - Other** | | | | | | | 0.00 |
| Total Perfect Game Operating Expenses - Other | | | | | | | 0.00 |
| Total Perfect Game Operating Expenses | | | | | | | 20,265.78 |
| **Viva Vision Revenue Sharing** | | | | | | | 0.00 |
| Total Viva Vision Revenue Sharing | | | | | | | 0.00 |
| **Operating Company Expense - Other** | | | | | | | 0.00 |
| Total Operating Company Expense - Other | | | | | | | 0.00 |
| Total Operating Company Expense | | | | | | | 20,264.60 |
| **Operating Expenses** | | | | | | | 0.00 |
| Total Operating Expenses | | | | | | | 0.00 |
| **Payroll Expenses** | | | | | | | 52,082.91 |
| **401K** | | | | | | | 0.00 |
| Total 401K | | | | | | | 0.00 |
| **ADP Payroll Service** | | | | | | | 185.40 |
| Check | 9/10/2014 | 2148 | Paychex of New York... | Invoice 2014082800, Clie... | 126.00 | | 311.40 |
| Total ADP Payroll Service | | | | | 126.00 | 0.00 | 311.40 |
| **Medical Capital Payroll taxes** | | | | | | | 0.00 |
| Total Medical Capital Payroll taxes | | | | | | | 0.00 |
| **Medical Insurance** | | | | | | | 0.00 |
| **Cobra** | | | | | | | 0.00 |
| Total Cobra | | | | | | | 0.00 |
| **Medical Insurance - Other** | | | | | | | 0.00 |
| Total Medical Insurance - Other | | | | | | | 0.00 |
| Total Medical Insurance | | | | | | | 0.00 |
| **Payroll and Taxes** | | | | | | | 51,897.51 |
| **Homestretch Crew** | | | | | | | 0.00 |
| Total Homestretch Crew | | | | | | | 0.00 |

# Medical Capital Holdings, Inc.
## Monthly General Ledger
### As of September 30, 2014

Cash Basis

| Type | Date | Num | Name | Memo | Debit | Credit | Balance |
|------|------|-----|------|------|-------|--------|---------|
| **MCC** | | | | | | | 189.00 |
| Total MCC | | | | | | | 189.00 |
| **NHBC** | | | | | | | 0.00 |
| Total NHBC | | | | | | | 0.00 |
| **Trace** | | | | | | | 0.00 |
| Total Trace | | | | | | | 0.00 |
| **Viva Vision** | | | | | | | 0.00 |
| Total Viva Vision | | | | | | | 0.00 |
| **Payroll and Taxes - Other** | | | | | | | 51,708.51 |
| Total Payroll and Taxes - Other | | | | | | | 51,708.51 |
| Total Payroll and Taxes | | | | | | | 51,897.51 |
| **Payroll Expenses - Other** | | | | | | | 0.00 |
| Total Payroll Expenses - Other | | | | | | | 0.00 |
| Total Payroll Expenses | | | | | 126.00 | 0.00 | 52,208.91 |
| **Postage and Delivery** | | | | | | | 8,511.92 |
| Total Postage and Delivery | | | | | | | 8,511.92 |
| **Pre-Receiver Expense** | | | | | | | 0.00 |
| Total Pre-Receiver Expense | | | | | | | 0.00 |
| **Printing and Reproduction** | | | | | | | 5,359.49 |
| Total Printing and Reproduction | | | | | | | 5,359.49 |
| **Professional Fees** | | | | | | | 1,597,626.69 |
| **Consultant/legal fees (misc)** | | | | | | | 39,310.33 |
| Check | 9/9/2014 | 2150 | Reid Litigation Techn… | Invoice 1713 -Aug Med C… | 140.00 | | 39,450.33 |
| Check | 9/9/2014 | 2150 | Reid Litigation Techn… | Invoice 1710 -July Med C… | 80.00 | | 39,530.33 |
| Check | 9/9/2014 | 2150 | Reid Litigation Techn… | Invoice 1709 -July Interst… | 3,040.00 | | 42,570.33 |
| Deposit | 9/24/2014 | 1539 | SBC | Reimbursement from SB… | | 2,767.50 | 39,802.83 |
| Total Consultant/legal fees (misc) | | | | | 3,260.00 | 2,767.50 | 39,802.83 |
| **Litigation Expense -Manatt** | | | | | | | 11,670.34 |
| Total Litigation Expense -Manatt | | | | | | | 11,670.34 |
| **Litigation Expense -Sedgwick** | | | | | | | 59,580.82 |
| Check | 9/30/2014 | Wire | KPMG LLP | Invs 8000344353 & 80003… | 105,947.50 | | 165,528.32 |
| Check | 9/30/2014 | 2162 | Veritext | Inv # SF2071911, Job # 1… | 797.00 | | 166,325.32 |
| Check | 9/30/2014 | 2162 | Veritext | Inv # SF2114360, Job # 1… | 1,159.50 | | 167,484.82 |
| Check | 9/30/2014 | 2162 | Veritext | Inv # SF2120306, Job # 1… | 1,204.80 | | 168,689.62 |
| Check | 9/30/2014 | 2162 | Veritext | Inv # SF2120310, Job # 1… | 1,617.10 | | 170,306.72 |
| Check | 9/30/2014 | 2163 | Jams, Inc. | Reference # 1200047342,… | 5,556.39 | | 175,863.11 |
| Total Litigation Expense -Sedgwick | | | | | 116,282.29 | 0.00 | 175,863.11 |
| **Receiver's Counsel** | | | | | | | 775,555.36 |
| Total Receiver's Counsel | | | | | | | 775,555.36 |
| **Receiver's expenses** | | | | | | | 7,122.71 |
| Check | 9/10/2014 | 2149 | Thomas Seaman | Expense reimbursement -… | 212.30 | | 7,335.01 |
| Total Receiver's expenses | | | | | 212.30 | 0.00 | 7,335.01 |
| **Receiver's fees** | | | | | | | 232,798.95 |
| Check | 9/15/2014 | 2157 | Thomas Seaman Co… | 18th Interim Fee Application | 107,442.00 | | 340,240.95 |
| Total Receiver's fees | | | | | 107,442.00 | 0.00 | 340,240.95 |
| **Receiver's IT Consultant** | | | | | | | 470,715.84 |
| Check | 9/15/2014 | 2152 | Huron Consulting Gro… | Inv# 1039642, services re… | 52,301.76 | | 523,017.60 |
| Total Receiver's IT Consultant | | | | | 52,301.76 | 0.00 | 523,017.60 |
| **Tax professionals** | | | | | | | 872.34 |
| Total Tax professionals | | | | | | | 872.34 |

# Medical Capital Holdings, Inc.
# Monthly General Ledger
### As of September 30, 2014

**Cash Basis**

| Type | Date | Num | Name | Memo | Debit | Credit | Balance |
|------|------|-----|------|------|-------|--------|---------|
| **Professional Fees - Other** | | | | | | | 0.00 |
| Total Professional Fees - Other | | | | | | | 0.00 |
| Total Professional Fees | | | | | 279,498.35 | 2,767.50 | 1,874,357.54 |
| **Radiation Monitoring** | | | | | | | 0.00 |
| Total Radiation Monitoring | | | | | | | 0.00 |
| **Security Services** | | | | | | | 0.00 |
| Total Security Services | | | | | | | 0.00 |
| **Taxes** | | | | | | | 1,497.19 |
| **Corporate Taxes** | | | | | | | 1,497.19 |
| Total Corporate Taxes | | | | | | | 1,497.19 |
| **Property tax** | | | | | | | 0.00 |
| Total Property tax | | | | | | | 0.00 |
| **Sanitary taxes** | | | | | | | 0.00 |
| Total Sanitary taxes | | | | | | | 0.00 |
| **Taxes - Other** | | | | | | | 0.00 |
| Total Taxes - Other | | | | | | | 0.00 |
| Total Taxes | | | | | | | 1,497.19 |
| **Telephone Expense** | | | | | | | 0.00 |
| Total Telephone Expense | | | | | | | 0.00 |
| **Travel Expense** | | | | | | | 0.00 |
| Total Travel Expense | | | | | | | 0.00 |
| **Trustee fees & Expenses** | | | | | | | 0.00 |
| Total Trustee fees & Expenses | | | | | | | 0.00 |
| **Asset Sales/Disposition** | | | | | | | 0.00 |
| Total Asset Sales/Disposition | | | | | | | 0.00 |
| **Interest Income** | | | | | | | -1,787.58 |
| Deposit | 9/30/2014 | | | Interest | | 40.90 | -1,828.48 |
| Deposit | 9/30/2014 | | | Interest | | 40.11 | -1,868.59 |
| Total Interest Income | | | | | 0.00 | 81.01 | -1,868.59 |
| **Ask My Accountant** | | | | | | | 0.00 |
| Total Ask My Accountant | | | | | | | 0.00 |
| **No accnt** | | | | | | | 0.00 |
| Total no accnt | | | | | | | 0.00 |
| **TOTAL** | | | | | 615,510.13 | 615,510.13 | 0.00 |