DAVID R. ZARO (BAR NO. 124334)
MICHAEL R. FARRELL (BAR NO. 173831)
TED FATES (BAR NO. 227809)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
515 South Figueroa Street, Ninth Floor
Los Angeles, California 90071-3309
Phone: (213) 622-5555
Fax: (213) 620-8816
E-Mail: dzaro@allenmatkins.com
        mfarrell@allenmatkins.com
        tfates@allenmatkins.com

Attorneys for Receiver Thomas A. Seaman

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>MEDICAL CAPITAL HOLDINGS, INC.; MEDICAL CAPITAL CORPORATION; MEDICAL PROVIDER FUNDING CORPORATION VI; SIDNEY M. FIELD; and JOSEPH J. LAMPARIELLO,<br><br>Defendants. | Case No. 8:09-cv-0818-DOC (RNBx)<br><br>**NOTICE OF MOTION AND MOTION FOR APPROVAL OF SALE OF STOCK IN SITO MOBILE, LTD.; AND AUTHORIZATION TO PAY COMMISSION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: April 27, 2015<br>Time: 8:30 a.m.<br>Ctrm: 9D<br>Judge: Hon. David O. Carter |

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1011306.01/LA

**TO ALL INTERESTED PARTIES:**

PLEASE TAKE NOTICE that on April 27, 2015, at 8:30 a.m., in Courtroom 9D of the above-entitled Court located at 411 West Fourth Street, Santa Ana, California 92701, a hearing will be held on the motion of Thomas A. Seaman ("Receiver"), Court-appointed permanent receiver for Medical Capital Holdings, Inc., Medical Capital Corporation, Medical Provider Funding Corporation VI, and their subsidiaries and affiliates (collectively, "Medical Capital" or the "Receivership Entities"), for approval of the sale of stock in SITO Mobile, Ltd. and to pay GlassRatner Securities a consulting fee and commission ("Motion").

The Motion is based on the Memorandum of Points and Authorities, the Declaration of Thomas A. Seaman and the Declaration of Adam Meislik filed herewith. The Motion and supporting papers are available at the Receiver's website, http://www.medicalcapitalreceivership.com, or may be reviewed at the Clerk's Office during normal business hours at 411 West Fourth Street, Santa Ana, California 92701.

**Procedural Requirements:** If you oppose this Motion, you are required to file your written opposition with the Office of the Clerk, United States District Court, 411 West Fourth Street, Santa Ana, California 92701, and serve the same on the undersigned not later than twenty-one (21) calendar days prior to the hearing. IF YOU FAIL TO FILE AND SERVE A WRITTEN OPPOSITION by the above date, the Court may grant the requested relief without further notice.

**Requested Relief:** The relief requested is discussed in detail in the Memorandum of Points and Authorities below. To briefly summarize, the Receiver requests an order approving the sale of stock in SITO Mobile, Ltd., formerly known as Single Touch Systems, Inc. (symbol SITO) (the "Company") to Stream Works Technologies, Inc. (the "Buyer"), for a purchase price of $2,540,000 cash (the "Purchase Price"). The Receiver will sell these shares free and clear and without representation or warranty except to warrant the Receiver's authority to sell (subject

to Court approval) and that the shares are free and clear of encumbrances. Pursuant to the Common Stock Purchase Agreement and Escrow Agreement, the Buyer has deposited the Purchase Price with the escrow agent, Continental Stock Transfer and Trust Company.

In addition, the Receiver seeks authorization and approval to pay GlassRatner Securities a consulting fee of $20,000 plus a 7% commission with regard to the sale of the stock.

This Motion is made following the conference of counsel pursuant to L.R. 7-3. Counsel for the Securities and Exchange Commission, Mr. Bulgozdy, advised that he does not oppose the Motion.

WHEREFORE, the Receiver requests that the Court grant the relief requested herein and such other relief as may be appropriate under the circumstances.

Dated: March 23, 2015

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By: /s/ David R. Zaro
DAVID R. ZARO
Attorneys for Receiver
Thomas A. Seaman

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

The Receivership Entities own 12,700,000 shares of stock (the "SITO Shares") in SITO Mobile, Ltd., formerly known as Single Touch Systems, Inc. (symbol SITO) (the "Company"), whose business is to provide cell phone messaging and advertising used to connect retailers and businesses with consumers or customers. The SITO Shares were obtained by the exercise of the Receivership Entities' rights under their loan agreements following the Company's defaults on the loans in October 2007.

During Medical Capital's ownership of the SITO Shares, the value of the stock has been adversely impacted by a 2:1 reverse stock split (which reduced the shares from 25.4 million to 12.7 million), the severe dilution of value due to the issuance of more shares, growing company debts and the performance of the Company. *See Declaration of Thomas Seaman in Support of Motion For Approval of Sale of Stock in SITO Mobile, Ltd.* ("Seaman Declaration"), ¶ 5-9.

Subject to Court approval, the Receiver has agreed to sell the Receivership Entities' stock in the Company to Stream Works Technologies, Inc. (the "Buyer") for a purchase price of $2,540,000. This reflects a share price of $.20 per share. These shares are thinly traded and a public trade of significant size would likely cause the sale price to plummet. *Seaman Declaration* ¶ 5; *Declaration of Adam Meislik in Support of Motion For Approval of Sale of Stock in SITO Mobile, Ltd.* ("Meislik Declaration") ¶ 4-5. Accordingly, the proposed sale is a private transaction and not subject to overbid.

The Receiver and his retained broker-dealer, GlassRatner Securities ("GlassRatner"), have analyzed the Company's financial condition and the market for the stock and, based on their analysis and business judgment, believe that the proposed sale will produce the highest and best recovery for the receivership estate. *Seaman Declaration*, ¶ 12; *Meislik Declaration* ¶ 6.

## II.   FACTS

### A.   Background

The Company borrowed $2.5 million from MPFC III on August 18, 2006. On November 2, 2006, MPFC III loaned the Company an additional $2.5 million. Thereafter, MPFC III sold these loans to MPFC IV. The collateral securing the loans was 25.4 million shares of SITO stock. No payments were made on the loans and they went into default. Thereafter, MPFC IV negotiated with the Company to address the defaulted loans and on October 30, 2007, MPFC IV forgave the loans in exchange for the 25.4 million shares of SITO stock.

On August 8, 2008, there was a 2:1 reverse split which reduced the number of shares owned by MPFC IV to 12.7 million. In the years following MPFC IV's receipt of the SITO stock, the Company issued an extraordinary number of additional shares thereby diluting the value of shares owned by MPFC IV. For example, from 2009 to 2014 the number of shares outstanding went from 7,273,500 to 150,728,628 shares. *Seaman Declaration* ¶ 5, Exhibit B.

As part of the Receiver's investigation and collection efforts with regard to the Receivership Entities, the Receiver also learned that MPFC IV loaned $10 million to an entity called TEEM whose principal was Anthony Macaluso. Mr. Macaluso was the Chief Executive Officer of the Company. Just as the Company failed to repay its loans, TEEM failed to repay its loan. The Receiver sued TEEM and entered into a settlement agreement in July 2012 (Mr. Macaluso did not sign until February 2013.) As part of the Receiver's effort to monetize these SITO shares, the settlement agreement provided that Mr. Macaluso would purchase the SITO shares at prices ranging from $.20 to $1.0125 per share for a total of approximately $7.5 million to the receivership. *Seaman Declaration* ¶ 4. The settlement also provided that TEEM repay a discounted principal balance of $7.6 million over two years with interest. Macaluso made payments of $137,446.10, however, defaulted

on the settlement agreement. He was subsequently removed from any role at the Company. *Seaman Declaration* ¶ 7.

In addition to his attempt to sell the SITO shares to Mr. Macaluso, the Receiver has made numerous efforts to sell the shares to third parties. *Seaman Declaration* ¶ 7. The sale of the SITO shares has proven to be extraordinarily challenging. The shares cannot be sold on the open market because the shares are very thinly traded and thus any sale of shares, much less a sale of 12.7 million shares, would cause the stock price to plummet thereby eliminating any recovery. *Id*.; *Meislik Declaration* ¶ 4-5. Moreover, in light of the Company's performance over the past 5 years, it does not appear likely that the Company will demonstrate sufficient growth such that a sale of shares on the open market will be practical alternative at any point in the near future. *Id*.

After trying to market and facilitate a sale of the shares himself, in September 2014, Receiver retained the services of GlassRatner Securities LLC, a FINRA supervised securities broker dealer and GlassRatner Advisory and Capital Group, LLC, to develop a strategy for marketing and sale of the SITO stock and to locate a potential purchaser for the SITO stock. *Seaman Declaration* ¶ 8-9. Pursuant to the Receiver's agreement, GlassRatner is to receive a consulting fee of $20,000 plus a success fee or commission of 7% upon the closing of the stock sale (subject to Court approval). *Id*.

GlassRatner analyzed the trading dynamics, shareholder base and company fundamentals in an effort to overcome the potential impediments to a stock sale. GlassRatner explored the marketplace and engaged in discussions with company insiders and market participants about their interests in the stock. *Id*. The Receiver and GlassRatner engaged the Company in discussions regarding the possibility of the Company or current management buying back the stock. After significant negotiations, the highest price that the Company would offer was approximately

$.15 per share, which is significantly less than the proposed sale of the shares to the Buyer. *Seaman Declaration* ¶ 10.

Ultimately GlassRatner was able to locate the Buyer, Stream Works, who was willing to purchase the stock and meet the Receiver's requirements for sale. The sale price to Buyer reflects a share price of approximately $.20 per share or $2,540,000. GlassRatner and the Receiver believe the sale price is the highest and best price for MPFC IV's entire position at the present time. *Seaman Declaration* ¶ 12.

The Receiver reviewed the reports of GlassRatner as well as the Company's revenues, sales, and other publicly available information. The Receiver has also considered the marketplace and value of the Company and the shares based on his expertise as a CFA and his experience in operating and selling stock in other privately-held companies. In light of all of the foregoing, Receiver believes that the sale to Buyer will generate the highest and best recovery for the receivership estate. *Seaman Declaration*, ¶ 15.

### B. The Stock Purchase Agreement

Based on the foregoing, and subject to Court approval, the Receiver executed a Stock Purchase Agreement ("Agreement") with Stream Works Technologies, Inc. ["Buyer"], which Agreement is attached to the *Seaman Declaration* as <u>Exhibit D</u>. As reflected in the Agreement, Buyer will pay $2,540,000 for the Stock. The entire $2,540,000 has been deposited into escrow pursuant to the Escrow Agreement entered into by Continental Stock Transfer and Trust Company ("Escrow Agent"), Buyer and Receiver. A true and correct copy of the Escrow Agreement is attached to the *Seaman Declaration* as <u>Exhibit E</u>.

The Buyer has agreed to purchase the stock without any representation or warranty from the Receiver regarding, among other things, the value of the stock or the Company, except with regard to the authority of the Receiver to sell the stock

(subject to Court approval) and that such sale will be free and clear of encumbrances.

### III.   ARGUMENT

"The power of a district court to impose a receivership or grant other forms of ancillary relief does not in the first instance depend on a statutory grant of power from the securities laws. Rather, the authority derives from the inherent power of a court of equity to fashion effective relief." *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980). The "primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir 1986). As the appointment of a receiver is authorized by the broad equitable powers of the court, any distribution of assets must also be done equitably and fairly. *See S.E.C. v. Elliot*, 953 F.2d 1560, 1569 (11th Cir. 1992).

District courts have the broad power of a court of equity to determine the appropriate action in the administration and supervision of an equity receivership. *See SEC v. Capital Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005). The Ninth Circuit explained:

> A district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad. The district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership. The basis for this broad deference to the district court's supervisory role in equity receiverships arises out of the fact that most receiverships involve multiple parties and complex transactions. A district court's decision concerning the supervision of an equitable receivership is reviewed for abuse of discretion.

*Id.* (citations omitted); *see also Commodities Futures Trading Comm'n. v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1115 (9th Cir. 1999) ("This court affords 'broad deference' to the court's supervisory role, and 'we generally uphold reasonable procedures instituted by the district court that serve th[e] purpose' of orderly and efficient administration of the receivership for the benefit of creditors.").

Accordingly, the Court has broad equitable powers and discretion in formulating procedures, schedules and guidelines for administration of the receivership estate and disposition of receivership assets.

### A. The Proposed Sale

It is generally conceded that a court of equity having custody and control of property has power to order a sale of the same in its discretion. *See, e.g., S.E.C. v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992) (the District Court has broad powers and wide discretion to determine relief in an equity receivership). "The power of sale necessarily follows the power to take possession and control of and to preserve property." *See also S.E.C. v. American Capital Invest., Inc.*, 98 F.3d 1133, 1144 (9th Cir. 1996), *cert. denied* 520 U.S. 1185 (decision abrogated on other grounds) (*citing* 2 Ralph Ewing Clark, *Treatise on Law & Practice of Receivers* § 482 (3d ed. 1992) (citing *First Nat'l Bank v. Shedd*, 121 U.S. 74, 87 (1887)). "When a court of equity orders property in its custody to be sold, the court itself as vendor confirms the title in the purchaser." 2 Ralph Ewing Clark, *Treatise on Law and Practice of Receivers* § 487).

"A court of equity, under proper circumstances, has the power to order a receiver to sell property free and clear of all encumbrances." *Miners' Bank of Wilkes-Barre v. Acker*, 66 F.2d 850, 853 (2d Cir. 1933). *See also*, 2 Ralph Ewing Clark, *Treatise on Law & Practice of Receivers* § 500 (3rd ed. 1992). To that end, a federal court is not limited or deprived of any of its equity powers by state statute. *Beet Growers Sugar Co. v. Columbia Trust Co.*, 3 F.2d 755, 757 (9th Cir. 1925) (state statute allowing time to redeem property after a foreclosure sale not applicable in a receivership sale).

Generally, when a court-appointed receiver is involved, the receiver, as agent for the court, should conduct the sale of the receivership property. *Blakely Airport Joint Venture II v. Federal Sav. and Loan Ins. Corp.*, 678 F. Supp. 154, 156 (N.D. Tex. 1988). The receiver's sale conveys "good" equitable title enforced by an

injunction against the owner and against parties to the suit. *See* 2 Ralph Ewing Clark, *Treatise on Law and Practice of Receivers* §§ 342, 344, 482(a), 487, 489, 491 (3d ed. 1992). "In authorizing the sale of property by receivers, courts of equity are vested with broad discretion as to price and terms." *Gockstetter v. Williams*, 9 F.2d 354, 357 (9th Cir. 1925).

Here, the proposed purchase price reflects what the Receiver believes to be the fair market value of the SITO shares under the facts and circumstances of this case. The Receiver and GlassRatner have sought to market the SITO shares. With the assistance of the GlassRatner, the Receiver has contacted potential buyers and promptly responded to all inquiries. The Receiver also sought to sell the SITO shares to Company as well as the former CEO (as part of a failed settlement.)

The Receiver has analyzed the financial condition of the Company as well as the actual market place for these shares. In particular, both GlassRatner and the Receiver have recognized how thinly the stock is traded and therefore share value is extremely volatile. As such, a public auction of the 12.7 shares is not a viable option. Based on his experience and expertise as a CFA and a federal and state court receiver, including in selling the stock of other privately-held companies, the Receiver believes that the proposed sale price will generate the highest and best recovery for the receivership estate. As such, the Receiver requests the Court to approve the sale which will provide a gross return to the receivership estate of approximately $2,540,000 million in cash.

### B. Waiver of Appraisal Requirement

28 U.S.C. § 2004 requires that sales of personal property be conducted in accordance with 28 U.S.C. § 2001, "unless the court orders otherwise." 28 U.S.C. § 2004. This language grants the Court discretion to waive the general requirement under 28 U.S.C. § 2001(b) to obtain three independent appraisals of property being sold by private sale. *See Tanzer v. Huffines*, 412 F.2d 221, 222-23 (3d Cir. 1969)

(court did not abuse its discretion in approving private sale of stock without strict adherence to 28 U.S.C. § 2001(b)).

Considering the relatively low overall value of the SITO shares and the lack of any market for this volume of shares, a private sale is warranted. GlassRatner and the Receiver assert that auction sale would likely generate either no bidders or bids at a substantially lower price.

Moreover, the time and cost associated with obtaining three independent appraisals, is not warranted. *Seaman Declaration* ¶ 15. Obtaining such appraisals would likely yield no relevant information beyond that which has already been considered by the Receiver. *Id*. Moreover, it would delay the sale, which could cause the Buyer to walk away from the transaction. *Id*. The Receiver is qualified to evaluate the company, the offers received, and determine the highest and best recovery . Accordingly, the Court should exercise its discretion under 28 U.S.C. § 2004 to waive the appraisal requirement.

## IV.   CONCLUSION

WHEREFORE, the Receiver requests entry of an order granting the Motion and approving the Agreement.

Dated:  March 23, 2015                    ALLEN MATKINS LECK GAMBLE
                                          MALLORY & NATSIS LLP

                                          By: /s/ David R. Zaro
                                               DAVID R. ZARO
                                               Attorneys for Receiver
                                               Thomas A. Seaman

# PROOF OF SERVICE

*Securities and Exchange Commission v. Medical Capital Holdings, Inc., et al.*
USDC, Central District of California – Case No. 8:09-cv-0818-DOC (RNBx)

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 515 S. Figueroa Street, 9th Floor, Los Angeles, California 90071-3398.

A true and correct copy of the foregoing document(s) described below will be served in the manner indicated below:

**NOTICE OF MOTION AND MOTION FOR APPROVAL OF SALE OF STOCK IN SITO MOBILE, LTD.; AND AUTHORIZATION TO PAY COMMISSION; MEMORANDUM OF POINTS AND AUTHORITIES**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – the above-described document will be served by the Court via NEF. On **March 23, 2015**, I reviewed the CM/ECF Mailing Info For A Case for this case and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- **Panteha Abdollahi**
  pantehaabdollahi@paulhastings.com,deniseerkens@paulhastings.com
- **David E Azar**
  dazar@milberg.com,cchaffins@milberg.com,jconte@milberg.com,ckiyotoki@milberg.com
- **John W Berry**
  berryj@sec.gov,irwinma@sec.gov
- **Edward K Blodnick**
  eblodnick@bcfdlaw.com
- **James F Bogan**
  jbogan@Kilpatrickstockton.com
- **Brent W Brougher**
  bbrougher@kilpatrickstockton.com
- **John B Bulgozdy**
  bulgozdyj@sec.gov,LAROFiling@sec.gov,berryj@sec.gov,irwinma@sec.gov
- **Michiyo Michelle Burkart**
  Michelle.Burkart@doj.ca.gov,mkupillas@milberg.com
- **Gary O Caris**
  gcaris@mckennalong.com,comeara@mckennalong.com
- **Kenneth Joseph Catanzarite**
  kcatanzarite@catanzarite.com,ncatanzarite@catanzarite.com,jdevera@catanzarite.com
- **Hester H Cheng**
  hcheng@garciagurney.com

1012377.01/LA

- 1 -

| | |
|---|---|
| 1 | - **Nicholas S Chung** chungni@sec.gov |
| 2 | - **Frank A Cialone** fcialone@sflaw.com |
| 3 | - **Randall J Clement** randy@clementandholaw.com |
| 4 | - **Jesse J Contreras** jcontreras@mrllp.com,stotin@mrllp.com,jesse.contreras@outlook.com |
| 5 | |
| 6 | - **Daniel J Cooper** djc@dcooperlaw.com |
| 7 | - **Joseph Winters Cotchett** jcotchett@cpmlegal.com |
| 8 | - **John Michael Devine** jdevinet@aol.com |
| 9 | - **Lawrence A Diamant** larrydiamant@yahoo.com |
| 10 | - **Marc S T Dworsky** marc.dworsky@mto.com |
| 11 | |
| 12 | - **Michael R Farrell** mfarrell@allenmatkins.com |
| 13 | - **Edward G Fates** tfates@allenmatkins.com,bcrfilings@allenmatkins.com,jbatiste@allenmatkins.com |
| 14 | - **Jesse S Finlayson** jfinlayson@ftrlfirm.com,wmills@ftrlfirm.com |
| 15 | - **Philip Andrew Gasteier** pag@lnbyb.com |
| 16 | - **Mark John Geragos** mark@geragos.com,geragos@geragos.com |
| 17 | - **Alan Greenberg** agreenberg@ggtriallaw.com,lrodriguez@ggtriallaw.com |
| 18 | |
| 19 | - **Wayne R Gross** wgross@ggtriallaw.com,lkibota@ggtriallaw.com |
| 20 | - **Edward Han** edwardhan@paulhastings.com,nanettecosentino@paulhastings.com |
| 21 | - **Lesley Anne Fleetwood Hawes** lhawes@mckennalong.com,comeara@mckennalong.com |
| 22 | - **Christopher D Holt** cholt@klinedinstlaw.com,cgagne@klinedinstlaw.com |
| 23 | - **Cathy Ann Hongola** chongola@allenmatkins.com |
| 24 | - **Robert G Johnson , Jr** rjohnson@robertgreyjohnson.com,tcarter@robertgreyjohnson.com |
| 25 | |
| 26 | - **Babak Lalezari** blalezari@gibsondunn.com |
| 27 | - **Gary Y Leung** LeungG@sec.gov,larofiling@sec.gov,berryj@sec.gov,irwinma@sec.gov |
| 28 | - **Adriene Plescia Lynch** adriene.lynch@alston.com,heather.thai@alston.com |

- **Matthew A Macdonald**
  matthew.macdonald@mto.com,joannette.driver-moore@mto.com
- **Ronald Hayes Malone**
  rmalone@sflaw.com,calendar@sflaw.com
- **David Thomas Mara**
  vflores@turleylawfirm.com
- **Issa Kalani Moe**
  Issa.Moe@lawmoss.com,Andrea.Montan@lawmoss.com,Tiffany.Baker@lawmoss.com,John.Rossman@lawmoss.com
- **Mark Cotton Molumphy**
  mmolumphy@cpmlegal.com,rbarghi@cpmlegal.com,obacigalupi@cpmlegal.com,bpayne@cpmlegal.com,jacosta@cpmlegal.com
- **Tom R Normandin**
  tnormandin@pnbd.com,kgodeke@pnbd.com,jwade@pnbd.com,cjones@pnbd.com
- **Loraine L Pedowitz**
  lpedowitz@allenmatkins.com
- **Michael A Piazza**
  piazzam@gtlaw.com
- **Thomas J Prenovost , Jr**
  TPrenovost@pnbd.com
- **Benjamin Patrick Pugh**
  bpugh@enterprisecounsel.com
- **David A Robinson**
  drobinson@enterprisecounsel.com
- **Karel Rocha**
  krocha@pnbd.com
- **James A Rubenstein**
  Rubenstein@moss-barnett.com
- **Francis Norman Scollan**
  fscollan@allenmatkins.com
- **Randall G Sommer**
  randall.sommer@mto.com,deborah.laws@mto.com
- **Diane Carter Stanfield**
  diane.stanfield@alston.com
- **Peter M Stone**
  peterstone@paulhastings.com,janellesahouria@paulhastings.com,deniseerkens@paulhastings.com
- **Jordanna G Thigpen**
  jthigpen@abtahilaw.com
- **William Turley**
  bturley@turleylawfirm.com
- **Wm. Randolph Turnbow**
  rturnbow@dcipa.com,jgiers@dcipa.com,hmason@dcipa.com,efisher@dcipa.com
- **Ryan Thomas Waggoner**
  rwaggoner@allenmatkins.com,dandrzejewska@allenmatkins.com
- **Jennifer L Waier**
  USACAC.SACriminal@usdoj.gov,jennifer.waier@usdoj.gov

1012377.01/LA

Case 8:09-cv-00818-DOC-RNB   Document 1256   Filed 03/23/15   Page 15 of 16   Page ID #:28654

- **Stephen S Walters**
  swalters@allenmatkins.com
- **Morgan B Ward Doran**
  warddoranm@sec.gov
- **Alan Jay Weil**
  ajweil@kbkfirm.com,nphillis@kbkfirm.com,cklein@kbkfirm.com,bsulier@kbkfirm.com
- **Jeff S Westerman**
  jwesterman@jswlegal.com
- **Andrew David Wolfberg**
  andrew@wolfberglaw.com
- **David R Zaro**
  dzaro@allenmatkins.com

2. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL (indicate method for each person or entity served)**: On **March 23, 2015**, I served the following person(s) and/or entity(ies) in this case by placing a true and correct copy thereof in a sealed envelope(s) addressed as indicated below. I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it is deposited with the U.S. postal service on that same day in the ordinary course of business. I am aware that on motion for party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 (one) day after date of deposit for mailing in affidavit.

| | |
|---|---|
| Lawrence C. Barth<br>Mungle Tolle & Olson LLP<br>355 S. Grand Avenue, Suite 3500<br>Los Angeles, CA  90071-1560 | **Via U.S. Mail** |
| Edward K. Blodnick, Esq.<br>Edward K. Blodnick & Associates, PC<br>1325 Franklin Avenue, Suite 375<br>Garden City, NY  11530 | **Via U.S. Mail** |
| Marjorie Fuldner<br>822 N. Fort Thomas Avenue, Number 1 North<br>Fort Thomas, KY  41075 | **Via U.S. Mail** |
| Andre Guimond<br>1112 Montana Avenue<br>Santa Monica, CA  90403 | **Via U.S. Mail** |

1012377.01/LA

- 4 -

| | | |
|---|---|---|
| 1 | Richard W. Regen | **Via US. Mail** |
| 2 | 10 Hillside Road<br>Penfield, NY 14526 | |
| 3 | Susan K. Regen | **Via U.S. Mail** |
| 4 | 10 Hillside Road<br>Penfield, NY 14526 | |
| 5 | Gary Urbanowicz | **Via U.S. Mail** |
| 6 | 105 Kent Drive<br>Cortlandt Manor, NY 10567-6233 | |
| 7 | | |
| 8 | Dirk C. Visser | **Via U.S. Mail** |
| 9 | PO Box 2473<br>Missoula, MT 59806 | |
| 10 | Kimberlee P. Visser | **Via U.S. Mail** |
| 11 | PO Box 2473<br>Missoula, MT 59806 | |
| 12 | Maryanna Wortham | **Via U.S. Mail** |
| 13 | 7343 Ridgepoint Drive, Unit 105<br>Cincinnati, OH 45230 | |

I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on **March 23, 2015** at Los Angeles, California.

*Martha Diaz*
Martha Diaz

1012377.01/LA

- 5 -