DAVID R. ZARO (BAR NO. 124334)
MICHAEL R. FARRELL (BAR NO. 173831)
TED FATES (BAR NO. 227809)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
515 South Figueroa Street, Ninth Floor
Los Angeles, California 90071-3309
Phone: (213) 622-5555
Fax: (213) 620-8816
E-Mail: dzaro@allenmatkins.com
        mfarrell@allenmatkins.com
        tfates@allenmatkins.com

Attorneys for Receiver Thomas A. Seaman

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>MEDICAL CAPITAL HOLDINGS, INC.; MEDICAL CAPITAL CORPORATION; MEDICAL PROVIDER FUNDING CORPORATION VI; SIDNEY M. FIELD; and JOSEPH J. LAMPARIELLO,<br><br>Defendants. | Case No. 8:09-cv-0818-DOC (RNBx)<br><br>**DECLARATION OF THOMAS A SEAMAN IN SUPPORT OF MOTION FOR APPROVAL OF SALE OF STOCK IN SITO MOBILE, LTD.; AND AUTHORIZATION TO PAY COMMISSION**<br><br>Date: April 27, 2015<br>Time: 8:30 a.m.<br>Ctrm: 9D<br>Judge: Hon. David O. Carter |

I, Thomas A. Seaman, declare as follows:

1. I am the Court-appointed permanent receiver for Medical Capital Holdings, Inc., Medical Capital Corporation, and Medical Provider Funding Corporation VI, and their subsidiaries and affiliates (collectively, "Medical Capital" or the "Receivership Entities"). The following facts are within my personal knowledge and if called as a witness I would testify to them under oath.

2. Attached hereto as <u>Exhibit A</u> is a true and correct copy of my Curriculum Vitae.

3. SITO Mobile Ltd, formerly known as Single Touch Interactive, Inc. (stock symbol SITO), ("the Company"), borrowed $2.5 million from MPFC III on August 18, 2006. On November 2, 2006, MPFC III loaned the Company an additional $2.5 million. Thereafter, MPFC III sold these loans to MPFC IV. The collateral securing the loans was 25.4 million shares of SITO stock. No payments were made on the loans. Thereafter, MPFC IV negotiated with the Company to address the defaulted loans and on October 30, 2007, MPFC IV forgave the loans in exchange for the 25.4 million shares of SITO stock.

4. As part of the Receiver's investigation and collection efforts with regard to the Receivership Entities, I also learned that MPFC IV loaned $10 million to an entity called TEEM whose principal was Anthony Macaluso. Mr. Macaluso was the Chief Executive Officer of the Company. Just as the Company failed to repay its loans, TEEM failed to repay its loan. In my capacity as Receiver, I sued TEEM and entered into a settlement agreement in July 2012 (Mr. Macaluso did not sign until February 2013.) As part of my efforts to monetize these SITO shares, the settlement agreement provided, in part, that Mr. Macaluso would purchase the SITO shares at prices from $.20 to $1.0125 per share for a total of approximately $7.5 million to the receivership. The settlement also provided that TEEM repay a discounted principal balance of $7.6 million over two years with interest. Macaluso

made payments of $137,446.10 and then defaulted on the settlement agreement. He was subsequently removed from any role at the Company.

5. On August 8, 2008, there was a 2:1 reverse split which reduced the number of shares owned by MPFC IV to 12.7 million. In the years following MPFC IV's receipt of the SITO stock, the Company issued an extraordinary number of additional shares thereby diluting the value of shares owned by MPFC IV. The Company also issued various preferred and convertible debt securities which had the effect of further diluting the value per share. From 2007 to 2014, the number of shares outstanding went from 7,273,500 to 150,728,628 shares. Attached hereto as Exhibit B, is a chart reflecting the number of shares of SITO stock outstanding since the shares were provided as collateral for the loans and other financial metrics. The Company has never turned a profit in its history. In 2014, the sales were $9.8 million and the Company lost $4.5 million. The earnings were a $.03 per share loss. The current book value per share (i.e. the stock holders' equity divided by the number of shares outstanding) is $.02. Since the time of my appointment as Receiver in 2009, the stockholders' equity per share has ranged from a negative $.13 per to share to the current $.02.

6. Given the foregoing information taken from the Company's public filings with the SEC, a price of $.20 per share implies that the Company's value is in excess of $30,000,000 versus its stated book value of $2,656,000, implying that the value of the Company's intangible assets is approximately $27.5 million higher than their stated value of $2.2 million on their recent balance sheet.

7. In addition to attempting to sell these shares to Mr. Macaluso in accordance with the failed settlement agreement, I made numerous efforts to locate buyers and to sell the shares. I have been attempting to monetize the shares since my appointment in 2009. Locating a buyer for the SITO shares has been difficult. The shares were restricted and very thinly traded, thus the market for them is illiquid and extremely volatile. Moreover, the Company was continuously issuing new

securities which increased the supply of shares even further and making it even more difficult for me liquidate the receivership estate's shares. In addition, the volume of trading would not support the sale of 12,700,000 shares without driving the price down. As such, it would be difficult, if not impossible, to sell them on the open market or at an auction and expect any sort of reasonable return. That is, any sale of shares of significance would cause the stock price to plummet.

8. In an effort to understand the alternatives available to me to dispose of the shares and in order to maximize the return to the receivership estate, in September 2014, I retained the services of GlassRatner Securities LLC, a FINRA supervised securities broker dealer and GlassRatner Advisory and Capital Group, LLC (collectively, "GlassRatner") to assist in developing a strategy for marketing and sale of the SITO stock and removal of the legend lifting the restriction on the sale of the shares. Attached hereto as Exhibit C is a contract with GlassRatner for their services. Pursuant to this Agreement, GlassRatner is to receive a consulting fee of $20,000 to advise on value and alternatives for disposition, and a success fee of equal to 7% of the sale proceeds if a sale was recommended and completed, subject to court approval.

9. GlassRatner has analyzed the trading dynamics, shareholder base and company fundamentals in an effort to overcome the potential impediments to a stock sale. GlassRatner then explored the marketplace and engaged in discussions with company insiders and market participants about their interest in the stock.

10. The Receiver and GlassRatner attempted to sell the shares to affiliates of the Company. After significant negotiations, the highest price that was offered was $.15 per share, which is significantly less than the proposed sale price of the shares to the below described Buyer.

11. Ultimately GlassRatner was able to locate Stream Works Technologies, Inc. (the "Buyer"), who agreed to purchase 12,700,000 shares for $.20 per share and meet the Receiver's requirements for sale. GlassRatner believes the sale is the

highest and best price for MPFC IV's entire position at the present time and has recommended I conclude the sale.

12. In considering whether to proceed with this sale, I considered advice from GlassRatner and other publicly available information regarding the Company. Based upon the foregoing, and my experience operating and selling stock in publically held and other closely-held companies, I believe that the proposed sale to the Buyer will generate the highest and best recovery for the receivership estate.

13. Based on the foregoing, and subject to Court approval, I executed a Stock Purchase Agreement ("Agreement") with the Buyer. Attached hereto as Exhibit D is a true and correct copy of the Agreement. Pursuant to the Agreement, the Buyer will pay $2,540,000 for the stock. The entire $2,540,000 has already been deposited into escrow pursuant to the Escrow Agreement entered into by Continental Stock Transfer and Trust Company ("Escrow Agent"), Buyer and Receiver. A true and correct copy of the Escrow Agreement is attached hereto as Exhibit E.

14. Buyer has agreed to purchase the stock without any representation or warranty other than with regard to the Receiver's authority to sell the stock, (subject to Court approval), and that such sale will be free and clear of encumbrances.

15. The delay and expense associated with obtaining independent appraisals of the SITO shares is not warranted. The Company's financial statements are filed with SEC and are a matter of public record. As a Chartered Financial Analyst I have the ability to evaluate the value of a stock. The appraisal process would be costly and it is unlikely to provide any additional valuable information. Moreover, it would delay the sale process by six weeks or more. This delay and expense is not warranted and could result in the loss of the Buyer who can withdraw from the proposed sale if it is not approved by April 30, 2015.

I declare under penalty of perjury that the foregoing is true and correct.
Executed on March 19, 2015, at Irvine, California.

*signature*

Thomas A. Seaman

*/s/ Thomas A. Seaman*

Thomas A. Seaman

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1012247.01/LA