DAVID R. ZARO (BAR NO. 124334)
MICHAEL R. FARRELL (BAR NO. 173831)
EDWARD G. FATES (BAR NO. 227809)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
515 South Figueroa Street, Ninth Floor
Los Angeles, California 90071-3309
Phone: (213) 622-5555
Fax: (213) 620-8816
E-Mail: dzaro@allenmatkins.com
        mfarrell@allenmatkins.com
        tfates@allenmatkins.com

Attorneys for Receiver
THOMAS A. SEAMAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>MEDICAL CAPITAL HOLDINGS, INC.; MEDICAL CAPITAL CORPORATION; MEDICAL PROVIDER FUNDING CORPORATION VI; SIDNEY M. FIELD; and JOSEPH J. LAMPARIELLO,<br><br>Defendants. | Case No. SA CV09-0818 DOC (RNBx)<br><br>TWENTY-SECOND INTERIM FEE APPLICATION OF THOMAS SEAMAN, RECEIVER<br><br>Date: August 10, 2015<br>Time: 8:30 a.m.<br>Ctrm: 9D Judge:Hon. David O. Carter<br>Judge: Hon. David O. Carter |

Thomas A. Seaman (the "Receiver"), the court-appointed Permanent Receiver for Medical Capital Holdings, Inc., Medical Capital Corporation, Medical Provider Funding Corporation VI and their subsidiaries and affiliates, (collectively the "Receivership Entities") submits this twenty-second interim application for approval and payment of fees. This application covers the period February 1, 2015, through April 30, 2015 (the "Twenty-Second Application Period").

During the Twenty-Second Application Period, the Receiver and his staff spent 360.8 hours executing the duties set forth in the Temporary Restraining Order and Order Appointing Receiver and the subsequent Preliminary Injunction and Order Appointing Permanent Receiver, and subsequent orders of the Court. By this Twenty-Second Interim Fee Application, Thomas Seaman seeks approval of $63,703.50 in fees which were incurred at a weighted average hourly rate of $177 per hour. The Receiver seeks approval to pay 90% of this amount, or $57,333.15. The Receiver does not seek reimbursement of any expenses.

## I.  PROCEDURAL OVERVIEW OF THE RECEIVERSHIP CASE.

On July 16, 2009, the SEC commenced an enforcement action against Medical Capital Holdings, Inc., Medical Capital Corporation, Medical Provider Funding Corporation VI, Sidney M. Field and Joseph J. Lampariello ("Defendants"), alleging various violations of securities laws. On the same day, the SEC filed an Ex Parte Application for Temporary Restraining Order ("TRO") and Orders: (1) Freezing Assets; (2) Appointing a Temporary Receiver; (3) Prohibiting the Destruction of Documents; (4) Granting Expedited Discovery, and (5) Requiring Accountings; and Order to Show Cause Re: Preliminary Injunction and Appointment of a Permanent Receiver. On July 20, 2009, the Court granted the TRO, however, the TRO was vacated the following day at the request of the Defendants, and further briefing was submitted.

Thereafter, on August 3, 2009 (the "Appointment Date"), the Court entered the TRO, appointing Thomas A. Seaman as temporary receiver for the Receivership Entities. On August 17, 2009, the Court confirmed the appointment of the Receiver and entered the Preliminary Injunction and Order Appointing a Permanent Receiver ("Appointment Order"), by which Mr. Seaman was appointed as the Permanent Receiver for the Receivership Entities.

## II. WORK PERFORMED BY THE RECEIVER.

The Receiver has set forth the scope of the case in detail in his twenty-one previous fee applications, and will omit it from this application in the interest of brevity given the late stage of the receivership and out of respect for the significant time and judicial resources this Court has devoted to this case.

During the Twenty-Second Fee Application Period 6% of the Receiver's work involved managing and supporting the Receiver's litigation against former corporate counsel. 34% of the bill for the Twenty-Second Application Period was spent supporting investor and claimant inquiries concerning claims arising from the first distribution of $117,500,000 which was paid to nearly 9,000 recipients. The Receiver's staff also assisted the note holder plaintiff's distribution of the settlement proceeds from the bond indenture trustees.

The Receiver also monitored and collected revenue from the film, monitored and collected loan and accounts receivable payments, and marketed other debt and equity positions of the Receivership Entities, enforced judgments, as well as monthly reporting to the parties and the Court.

While the vast majority of significant assets have been liquidated, there are numerous problem loans and other assets in which the Receivership Entities holds an interest. Many have been converted to a judgment or a bankruptcy claim, a handful require continued legal action, much of which is being done for little or no cost by local counsel. Some of these loans have a prospect of at least some

recovery. The Receiver continues his efforts to collect on the TEEM loan, the Pyramid/Mavusi judgment, the Valley/Kroop matters, and the Lavipharm investment. The Single Touch equity position was marketed during the Twenty-Second Application Period and the sale closed in April 2015.

The inception-to-date gross receipts grew in the Twenty-Second Application Period to $208,993,708.62 and the Receiver was holding cash of $36,624,854.61 on April 30, 2015.

The Receiver's fees for the Twenty-Second Application Period are summarized by month are as follows:

|  |  |
|---|---|
| February 2015 | $14,877.50 |
| March 2015 | $19,977.50 |
| April 2015 | <u>$28,848.50</u> |
| Total | $63,703.50 |

The fees incurred by the Receiver for the duration of the receivership are 2.5% of inception to date gross revenue, and 2.2% net of the holdback, i.e., the portion of previously approved fees that have not been paid.

The Receiver's fees in the Twenty-Second Application Period were 3% more than in the Twenty-First Interim Fee Application, but are 82% less than the First Interim Fee Application. The Receiver expects the next fee application to decline significantly as the conclusion of the matter approaches.

### III.  ANALYSIS OF RECEIVER'S FEES AND RELATED METRICS.

Exhibit A provides a detailed listing of each and every time entry comprising the Receiver's fees. In order to assist the Court in its review and analysis of the Receiver's fees, the Receiver has prepared three separate analyses. The first is a breakdown by timekeeper setting forth the amount of time spent by the Receiver and his agents at their respective hourly rate. The next summary is a breakdown of work

by functional area including debt collection, accounting, forensic accounting, business management, asset sales, litigation support, and investor relations, among others. The third breakdown is by significant asset or loan.

### A. Charges by Timekeeper

Exhibit B provides a breakdown by timekeeper setting forth the amount of time spent by the Receiver and his agents at their respective hourly rates. The Receiver personally expended 66.7 hours, or less than 5.6 hours per week, for the Twenty-Second Application Period for a total cost of $26,680.00. During the Twenty-Second Application Period the Receiver spent 14% of his time working on the Medical Capital receivership.

In order to manage the receivership in a cost effective manner, the Receiver delegates some assignments to agents who are billed at hourly rates ranging from $60 to $175 per hour. These agents perform accounting, financial analysis, business management, forensic accounting, investor relations and claims management, debt collection, litigation support, real estate management, management of asset disposition and other services required by the receivership estate. During the Twenty-Second Application Period, the Receiver's agents expended 294.1 hours at a cost of $37,023.50, or $126 per hour, thus reducing the weighted average hourly rate to $177 during the Twenty-Second Application Period. The Receiver believes that the hourly rates charged by the Receiver are fair and reasonable given the requirements of the receivership estate.

The Receiver expects the number of hours necessary to administer the receivership estate to continue to decline in the next and subsequent fee applications.

B. **Charges by Task**

Exhibit C provides a monthly breakdown by tasks performed by the Receiver and his agents, including graphs for total costs for each task by month. The total hours and cost by task for the billing period are as follows:

| Task | Hours | Rate | Amount |
|---|---|---|---|
| A/R and other Debt Collections | 1.5 | $175 | $262.50 |
| Accounting and Reporting | 10.8 | $158 | $1,705.00 |
| Administration | 3.2 | $65 | $208.00 |
| Investor Relations | 188.1 | $115 | $21,645.00 |
| Litigation & Support | 9.7 | $377 | $3,655.00 |
| Project Management | 32.4 | $175 | $5,670.00 |
| Receiver | 52.9 | $400 | $21,160.00 |
| Receivership Administration | 54.7 | $127 | $6,950.00 |
| Sell Liquidate Assets | 7.5 | $326 | $2,448.00 |
| Totals | 360.8 | $177 | $63,703.50 |

The Receiver did not charge for the cost of preparing the fee applications, which took 6.7 hours to prepare during the Twenty-Second Application Period at a cost savings to the receivership estate of $1,139.00. To date, this has saved the estate $88,685.00.

TWENTY-SECOND INTERIM FEE
APPLICATION OF RECEIVER

(5)

## CONCLUSION.

The Receiver believes his fees are fair and reasonable in view of the circumstances encountered by and results achieved by the Receiver. The Receiver has worked diligently to perform his duties in an efficient and cost effective manner. Therefore, the Receiver respectfully requests an order:

Approving fees totaling $63,703.50 for the Twenty-Second Application Period;

    1.    Authorizing the Receiver to pay 90% of such sum, or $57,333.15, out of assets of the receivership estate; and

    2.    For other and further relief as is appropriate.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 7th day of July, 2015, at Irvine, California.

*/s/ Thomas L. Seaman*
THOMAS A. SEAMAN

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

TWENTY-SECOND INTERIM FEE
APPLICATION OF RECEIVER